## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (No. VI)

MDL DOCKET NO. MDL 875

THIS DOCUMENT RELATES TO:
Cases listed on the
attached Exhibit "A"

## PLAINTIFF'S RESPONSE TO CERTAIN DEFENDANTS' MOTION TO COMPEL PRODUCTION OF CVLO'S ASBESTOS SCREENING PACKETS

NOW COME plaintiffs, by their attorney, Michael P. Cascino of Cascino Vaughan Law Offices, and submit the following Response to Certain Defendants' Motion to Compel Production of CVLO's Asbestos Screening Packets.

### INTRODUCTION

It is the custom and practice of Cascino Vaughan Law Offices (CVLO) to have retainer agreements executed contemporaneously with the client's completion of the screening packets. The screening packets state very clearly "Confidential attorney client work product". The screening packets are thus covered by the attorney-client privilege and the defense has not met its burden of proving otherwise. Defendants base their motion on the examples of two plaintiffs, Barry Wright and Robert O'Keefe. However, both Wright and O'Keefe are within the CVLO norm of having retainer agreements signed contemporaneously with the completion of the screening packets. The defense therefore is seeking privileged communications between the CVLO law firm and its clients. This court should deny the motion to compel.

-1-

## Statement of Facts

### Barry Wright

1. On May 12, 1996, Barry Wright signed an attorney client agreement with CVLO. (*See Exhibit "1"*).

2. On May 12, 1996, Barry Wright also filled out a "Privileged and Confidential Asbestos Exposure and Medical Background survey". (*See Exhibit "2"*).

3. On May 16, 1996, a chest x-ray was taken of Barry Wright. (*See Exhibit "3"*).


### Robert O'Keefe

1. On November 23, 2004, CT images of Robert O'Keefe reported "These findings are concerning for malignancy including lung cancer and mesothelioma." (*See Exhibit "4"*).

2. On November 30, 2004, a cytopathology report diagnosed Robert O'Keefe with small cell carcinoma. (*See Exhibit "5"*).

3. On September 29, 2005, Robert O'Keefe signed a retainer contract with CVLO. (*See Exhibit "6"*).

4. On October 12, 2005, plaintiff's attorneys received the signed documents back from Robert O'Keefe. (*See Exhibit "7H"*).

5. Plaintiff O'Keefe's asbestos screening packet was labeled "Confidential attorney client work product." The packet is not dated. (*See Exhibit "8"*).

**Argument**

I.    *CVLO Custom and Practice*

It was and is the custom and practice of CVLO to be retained by clients before an x-ray was taken.  It was and is the custom and practice of CVLO to require a signed retainer agreement and a completed work / medical history survey before opening a file. See the documents concerning Barry Wright (*Exhibits 1-3*) and the Affidavit of Tracy Speer attached as Exhibit "9".

II.    *The  Screening Packets Are Protected By Attorney Client Privilege*

The attorney-client privilege is the oldest of the common-law privileges. *Klitzman, Klitzman & Gallagher v. Krut,* 744 F.2d 955, 960 (3d Cir.1984).  The attorney-client privilege exists to protect one who is a client or a prospective client.  "The attorney-client privilege exists for the purpose of encouraging and promoting the full and frank consultation between a client and his or her legal advisor by removing the fear of compelled disclosure of information." *Pietro v. Marriott Senior Living Servs.,* 348 Ill. App. 3d 541, 551 (1st Dist. 2004) (citing *Consolidation Coal Co. v. Bucyrus-Erie Co.,* 89 Ill. 2d 103, 117-118 (1982)).  The elements of the privilege have been defined as follows: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. *People v. Adam,* 51 Ill. 2d

46, 48, 280 N.E.2d 205, 207 (1972).[1]

Illinois Supreme Court Rule 201 states "[a]ll matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure." Under Illinois law, it is not necessary that a client actually sign a retainer. The attorney-client relationship "can come into being during the initial contact between the layperson and the professional and appears to hinge on 'the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.' " *Marriage of Newton,* 955 N.E.2d 572, 582-83 (Ill. App. 2011).

It is the custom and practice of CVLO to have clients execute a retainer agreement contemporaneously with the completion of the screening packets. (*See Exhibits 1-3, 9).* The screening packet is a communication between the client and CVLO[2] for the purpose of obtaining legal advice regarding whether the client has a cause of action for asbestos disease. The screening packet clearly states it is "Confidential attorney client work product". (*See Exhibit "8").* The screening packet is submitted in confidence (again, the screening s packet states it is confidential) by the client of CVLO. The screening packets therefore are protected by the attorney client privilege.

---

[1]The defense motion applies Illinois law regarding the privilege and plaintiffs agree Illinois law should be applied. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861 (3rd Cir. 1994.) ("as the claims and defenses in issue in this action arise under state law, Federal Rules of Evidence 501 and 1101(c) provide that State law should be applied in determining the extent and scope of the attorney client privilege").

[2]Even if there is no retainer, the privilege applies to both clients and those who seek legal advice.

III.    *The Defense Fails To Show The Screening Packets Are Not Privileged*

"Before an attorney can be compelled to disclose client information, the party opposing

the attorney-client privilege must first establish that the information is not privileged. Only then

may the information be compelled." *In re Marriage of Decker*, 153 Ill. 2d 298, 321, 606 N.E.2d

1094, 1105 (1992).  Certain Defendants have not met this burden.

The defense contends the attorney client privilege does not apply by citing the deposition

of a single plaintiff, Barry Wright, who said he thought he had a screening through his union and

he later retained an attorney.  However, Mr. Wright signed his retainer agreement with CVLO

contemporaneously with his execution of the "Privileged and Confidential Asbestos Exposure

and Medical Background survey." (Exs 1-2).  Mr. Wright's recollections in his deposition

testimony, taken years later, do not change this fact.  As discussed above, this is a privileged

attorney client communication between Mr. Wright and his attorneys.

The defense makes a waiver argument when it discusses how, in the case of Robert

O'Keefe, it received a screening packet "pursuant to an authorization to obtain records from

plaintiff's medical providers."  Robert O'Keefe retained the CVLO law firm after he was

diagnosed with lung cancer.  (Exs 4-7.)  Defendants implicitly contend the O'Keefe survey is not

privileged because it was allegedly disclosed to the defense by O'Keefe's treating physician.

However, "the privilege belongs to the client, rather than the attorney, although the attorney

asserts the privilege on behalf of the client. Thus only the client may waive the privilege."

*Marriage of Decker*, 153 Ill. 2d at 313, 606 N.E.2d at 1101. Thus the disclosure of the screening

packet by Robert O'Keefe's medical provider does not waive the attorney client privilege

because the provider cannot waive the privilege.

Also, "inadvertent disclosure can never result in a waiver of the privilege because the client had no intention of waiving the privilege, and a client must knowingly waive the privilege." *People v. Murry*, 305 Ill. App. 3d 311, 316, 711 N.E.2d 1230, 1235 (2nd Dist. 1999). Mr. O'Keefe's signing an authorization for the release of medical records does not waive the attorney client privilege in his Asbestos Screening Packet because an authorization for the release of medical records does not indicate any intent to waive the privilege. Further, in a letter dated January 6, 2012, the CLVO law firm expressly stated any inadvertent disclosure of privileged information were not to be considered a waiver of the attorney client privilege.  (Defense brief exhibit I).

This court should disregard the defense's unstated assertion the supposed absence of any attorney client privilege in the Wright and O'Keefe cases applies generally to each and every one of the CVLO MDL 875 cases.  Mr. Wright and Mr. O'Keefe executed their screening packets contemporaneously with their retainer agreements, and as discussed above the screening packets therefore are privileged attorney client communications.  Apart from this, the defense overlooks that the attorney client privilege is client specific.

This court should disregard the defense's disingenuous smear of the CVLO law firm by comparing the CVLO screening program with a matter before the Florida Attorney General. (Defense brief at 4-5 and exhibit F.)  The defense provides no evidence that the CVLO law firm's conduct is the same as the conduct at issue in the Florida matter. Indeed, the only "evidence" of the conduct at issue in the Florida matter is a statement in an intra-office memorandum from the Attorney General's office that a company named Gulf Coast "utilized unlawful retainer

-6-

agreements which were not approved by the law firms for which Gulf Coast was working."
(Defense brief exhibit F.)  The CVLO law firm screening packets have nothing to do with the
unlawful retainer agreements supposedly at issue before the Florida Attorney General.

     This court should disregard the defense claim that a federal judge (Judge Jack) in silicosis
litigation in Texas ordered the production of documents similar to the CVLO law firm screening
packets.  (Defense brief at 8-9 and exhibit L.)  The order the defense cites simply orders the
production of "A sheets," which the defense claims are the same as the CVLO screening packets.
However, this order does not explain why this production was ordered, but plaintiffs submit it
was ordered because of the possible imposition of sanctions on counsel therein.  This order
contains no discussion of attorney client privilege issues, and as the case is from Texas, there
certainly is no discussion of Illinois law regarding the attorney client privilege.  As discussed
above the CVLO screening packets are protected by the Illinois attorney client privilege and are
not discoverable.

     Plaintiff O'Keefe was diagnosed with lung cancer before he retained the CVLO law firm.
(Exs 4-7.)  Plaintiff Wright was not x-rayed in shopping malls or Sizzler parking lots, as occurred
in the litigation before Judge Jack, but instead was treated at St. Anthony Medical Center in
Rockford, Illinois after he retained CVLO's legal services. Thereafter, unlike the cases before
Judge Jack, plaintiff Wright received further medical tests including pulmonary testing and hands
on physical examinations by a physician expert witness including the taking of a medical history
and an exposure history. See Dr. Sadek's report attached hereto as Exhibit 10.  Moreover,
plaintiff Wright's pleural physician is treating him for lung disease. Some of those records

indicate symptoms of asbestos disease in the treater records. (*See Exhibit 11*).  Again, the CVLO

MDL 875 cases have nothing to do with the silicosis litigation before Judge Jack.


## CONCLUSION

The CVLO screening packets are protected by Illinois attorney client privilege and are not

discoverable.  Plaintiffs ask this Honorable Court to deny certain defendants' motion to compel

production of CVLO's asbestos screening packets.



Dated: July 12, 2012


_____
Brian A. Schroeder

Brian A. Schroeder
Michael P. Cascino
Allen D. Vaughan
Attorneys for the Plaintiff
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, IL  60607
(312) 944 - 0600