**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | |
| | MDL DOCKET NO. MDL 875 |
| THIS DOCUMENT RELATES TO: | |
| All Cases Listed on the Attached Exhibit A | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTIONS TO STRIKE BASED ON UNTIMELY DISCOVERY RESPONSES**

Plaintiffs respond to and oppose various defendants' motions to strike relating to the timeliness of disclosures of coworkers and their testimony.[1]

Introduction

Defendants' position is that before the close of fact discovery, plaintiffs were required to disclose the identity of fact witnesses and the testimony each witness would provide about defendants' asbestos products. No scheduling order or administrative order issued by the court requires the disclosure of this information. Plaintiffs answer standard interrogatories agreed upon by the parties identifying persons with knowledge of products and exposures. No defendant filed a motion to compel requesting additional information beyond what was provided in the standard interrogatories. The case law supports discovery supplementation even after the

_____

[1] Attached as Exhibit B is an abbreviated time line outlining relevant CVLO MDL 875 events.

1

close of fact discovery.  The extreme sanction of striking evidence is permitted only for

violations of a discovery order.  The proper remedy is to cure any alleged prejudice is to issue

interrogatories or take depositions of persons disclosed as having knowledge.


I.      *Plaintiffs Can Supplement Product Exposure Discovery Responses*

        The primary theme of defense motions is plaintiffs cannot identify a person with

knowledge of product exposures or additional details of their testimony after the "fact discovery

close deadline" in the CVLO MDL 875 scheduling orders.  The case law rejects this argument.


Adding new witnesses

        Supplementation of witness disclosures in the Third Circuit is governed by *Meyers v*

*Pennypack Woods Home Ownership* Assoc., 559 F.2d 894 (3d. Cir. 1977).  In *Meyers* the Third

Circuit allowed new witnesses to be added just three weeks before trial.  This court should follow

*Meyers* in these cases.

        In *Meyers* two new fact witnesses were learned of fewer than three weeks before trial.

The Third Circuit reversed the ruling of the district court striking the witnesses.  559 F.2d at 904-

905.   The court of appeals noted plaintiff's counsel had "learned of potential new fact witnesses,

[and] sent a letter to defendant's counsel with copy to the trial judge informing him that he

wished to supplement the pretrial memorandum with the names of the...witnesses whom plaintiff

might call at trial[.]" *Id.* at 903.  In *Meyer*s the new witnesses were disclosed 6 weeks after the

deadline for disclosing witnesses, 4 weeks after the close of discovery, and 3 weeks after the

filing of a pretrial memorandum with a final list of witnesses.  *Id.*  Fewer than three weeks before

trial was to commence, plaintiff learned of potential new fact witnesses and informed defense

counsel and the court of his intent to add the witnesses to his pretrial memorandum. *Id.*

Defendant objected to the two potential witnesses on grounds of untimely disclosure, surprise,

and prejudice. 559 F.2d at 904.

     The district court agreed with defendant and excluded the witnesses.  The Third Circuit

reversed, concluding the district court abused its discretion in excluding the witnesses.  *Meyer,*

559 F.2d at 904-05.  The Third Circuit focused on the opportunity for a discovery deposition of

the witnesses in the remaining weeks before the trial.  The court also recognized:

> The excuse offered by Meyers for his failure to list the witnesses was apparently a bona
> fide representation that he had not discovered them until after the pretrial memorandum
> was filed.  We have recently held that the exclusion of critical evidence is an "extreme"
> sanction, Dudley v. South Jersey Metal, Inc., 555 F.2d 96, at 99 (3d Cir. 1977), not
> normally to be imposed absent a showing of willful deception or "flagrant disregard" of a
> court order by the proponent of the evidence.  In the instant case, neither the district court,
> nor Pennypack found or alleged such misconduct by Meyers.

559 F.2d at 905.

     *Meyers* rejects the fundamental defense position that identification of witnesses is fixed

and not subject to change after discovery closes.  Instead the court in *Meyers* focused on two

prongs: 1) the absence of any concealment by the plaintiff; and 2) whether the defendants had an

opportunity for discovery to cure an alleged prejudice.  The Third Circuit stated:

> More importantly there remained after the letter was sent almost three weeks before trial.
> Yet Pennypack made no effort to depose or serve interrogatories on the new witnesses or
> even to request Meyers' counsel to furnish additional information or written statements of
> the proposed testimony.  We believe that in these circumstances Pennypack had some
> obligation to take steps to minimize its alleged prejudice and surprise.

559 F.2d at 905.

     Likewise, defendants in the CVLO MDL 875 cases have not alleged intentional

3

concealment of witnesses and CVLO plaintiffs have not opposed allowing discovery of coworkers after the "fact discovery close" deadline[2].  Absent evidence of bad faith and lacking trial date settings in the CVLO MDL 875 cases, supplementation of discovery to identify a new person with product exposure knowledge is permitted under *Meyers* after the fact discovery close.

Defendants cannot exclude at the summary judgment stage evidence admissible at trial under *Meyers*.  Rule 56(c)(2) provides for "Objections to facts not supported by admissible evidence."  The Rule contains no provision for striking evidence simply based on the timing of a disclosure.  Defendants have the burden to show the evidence is not "admissible" at trial and cannot merely rest on assertions of the timing of the disclosure.

Supplementing testimony of disclosed persons with knowledge

The second component of the defense arguments is CVLO's discovery answers do not set forth sufficient details about the coworker's knowledge of products and exposures.  CVLO provided details of what was then known to the plaintiffs by answering "standard interrogatories."  The pertinent interrogatories asked for 1) a statement of the claims by product type and brand (Standard Interrogatory No. 19), names of coworkers (Standard Interrogatory No.

---

[2]In *Pleaugh v. A.W. Chesteron*, E.D. Pa. Case No. 11-CV-63519,  one of the Top Ten CVLO MDL 875 cases subject to the initial scheduling order, defendant Georgia-Pacific (GP) twice moved to add new fact witnesses and take their depositions after the close of fact discovery and after the fact witness deadline in the top ten cases scheduling order. (Exs 15, 17.) GP contended the witnesses were not learned of until after the deadlines.   Plaintiffs did not oppose the motions.  *Pleaugh* stands as an early precedent, consistent with *Meyers*, of the practice of allowing supplements to witness lists when witnesses became known after the fact discovery deadlines.  Plaintiffs relied on this defense desired precedent in understanding that supplementation of witnesses would be allowed. (Ex 42 at ¶ 4.)

18, 20), and the past testimony that may relate to the claims (Standard Interrogatory No. 29).  (Ex 40.)  CVLO initially compiled and provided answers to standard interrogatories by focusing on client interviews and certain coworkers known to the clients.  (Ex 42 at ¶ 12.)   In most instances the knowledge of the plaintiff about product exposures is minimal or nothing as the victims are deceased and the plaintiffs are spouses or other family members. (Ex 42 at ¶ 13.)

In response to this court's scheduling orders which converted the proceedings to trial preparation, CVLO hired a large number of additional staff - attorneys and legal assistants - to conduct interviews and depositions of coworkers[3].  (Ex 41.) As more coworkers were interviewed and depositions completed in of CVLO cases with common job sites, the amount of data and the reliability of the data collected by CVLO counsel increased (Ex 42 at ¶ 14.)  Many coworkers were interviewed on multiple instances about different products, job locations, possible fellow coworkers. (Ex 41 at ¶ 4.)  Some were deposed on multiple occasions.  During this ongoing interview and deposition process, CVLO developed a searchable database of information which could be used for any case. (Ex 42 at 15.)  Using this database, CVLO began in May, 2012, to disclose the attorney knowledge, as distinct from client knowledge, of persons who can testify about job site exposures, products, or conditions[4].  The quality and amount of the information available continues to grow, and CVLO supplements the disclosures of the attorney

---

[3] CVLO has nearly doubled the size of its attorney and legal assistant staff and devoted a high percentage of the CVLO personnel resources to MDL 875 cases in response to the scheduling orders entered by the Magistrate Judge.  (Ex 41.)

[4] The first disclosure of attorney knowledge information was made on a case by case basis in May, 2012 for cases with fact discovery closes in that time period.  A supplemental disclosure by email for all CVLO cases was made in CVLO cases on June 12, 2012. (Ex 38.)  The data is sorted by job site, which can be correlated to the disclosed list of job sites for each victim.

database information on an ongoing basis[5]. (Ex 42 at ¶16.)   CVLO took similar steps to compile

a database of past testimony by witnesses, job sites, and products. (Ex 42 at ¶ 17.)  The past

testimony database has also been disclosed to defendants in CVLO MDL 875 cases.

Defendants motions seek to preclude use of information learned about and added to the

attorney database after the fact discovery close dates.  *Meyers* is also instructive on this

argument.  If the addition of a completely new witness is permitted under *Meyers,* then *Meyers*

also permits the supplementation of the details of what an identified person with knowledge

knows.

To the extent *Meyers* holds the proper remedy is to allow for discovery of newly

disclosed witnesses, CVLO has not opposed additional depositions of witnesses who provide

supplemental information about products.  (*See Krik v. BP America*, E.D. Pa. Case No. 11-CV-

63473, Doc. No. 334 stating "Plaintiff does not oppose the relief of reopening the deposition for

allegedly new matters in the declaration").

The factors to be analyzed as set forth by the *Meyer*s court include: "(1) prejudice or

surprise in fact of the party against whom the excluded witnesses would have testified, (2) the

ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling

unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the

court, and (4) bad faith or willfulness in failing to comply with the district court's order." *Meyers*

at 904.

Applying the four factors, the court of appeals in *Meyers* found that plaintiff properly

---

[5] Since the June 12, 2012 supplementation of the lists of coworkes, plaintiffs have supplemented the database disclosures on about August 43 2012 for CVLO-4 cases and on August 24, 2012 for all CVLO cases.

cured the omission by sending the letter three weeks before trial.  *Id.* at 905.  Likewise, CVLO

plaintiffs have cured any non-disclosure by supplementing months, if not years, in advance of the

trial.  The *Meyers* court also weighed the case law disfavoring exclusion of the evidence against

alleged prejudice to defendant and possible disruptive effect. *Id.*  The court found that the alleged

prejudice to the defendant was not significant because of the timing of the letter sent by plaintiff

and the three weeks which remained prior to trial. *Id.*

As in *Meyers*, analysis of the four factors weighs in plaintiffs' favor in the CVLO cases.

*First,* there is no bad faith.  Plaintiffs' counsel provided information based on attorney

knowledge that related to site workers and prior testimony, when reliable and accurate data

became available and counsel learned of the potential case law obligations under FRCP 26.

*Second*, the prejudice to defendants is insignificant because they can depose any of the site

workers listed, although they historically have failed to do so.  *Third*, plaintiffs' counsel

attempted to cure the alleged prejudice by supplementing the information before the close of

discovery.  *Finally*, the trial of these cases will not be disturbed because no trial dates have been

assigned.

Third Circuit case law striking witnesses as untimely disclosed requires a finding of

intentional nondisclosure or violation of a court order.[6]  "The exclusion of critical evidence is an

---

[6] For bad faith, the knowledge of the disclosing party is generally governed by the standard of "knowing concealment."  "Before any duty arises for party to disclose newly discovered facts which render prior answer incorrect, it must be shown that failure to disclose new facts would amount to *knowing concealment*."  *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263 (8th Cir. 1975) (emphasis added).  Similarly, "Rule 26(e) is designed to prevent party from surprising his adversary in setting forth new acts *at trial* not disclosed during discovery; before any duty to supplement responses arises, it must be shown that failure to disclose new facts will amount to knowing concealment."  *PIC, Inc. v. Prescon Corp*., 485 F.Supp. 1299 (D.C. Del. 1980) (emphasis added).  The Third Circuit has imposed a similar "bad faith" standard: "Party's possible failure to provide names of two witnesses in its self-executing disclosures or to disclose them in response to interrogatories was not in bad faith and opponent knew

'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Quinn v. Consol. Freightways Corp. of Del*., 283 F.3d 572, 576 (3d Cir.2002) (quoting *Meyers v Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 (3d Cir.1977)).   Another example is the decision in *Sheehan v. Delaware & Hudson Railway Company, Inc*., 439 Fed. Appx. 130, 132 (3d Cir. 2011), which affirms the discretion of the trial court in allowing fact witness testimony at trial although the tendering party had not complied with discovery obligations in disclosing the testimony.   The court noted the lack of bad faith and found the "testimony would not disrupt the trial."  439 Fed. Appx. At 133.

District courts in the Third Circuit follow the *Meyers* ruling that the discovery sanction of striking witnesses requires violation of a court order.  In *Aguilar v. WEI Equipment*, 2003 WL 22120268 at *2 (E. D. Pa. 2003), Judge Robert F. Kelly rejected arguments that both fact and expert witnesses should be stricken for failure to comply with Rule 26(a), stating: "Since this Court has not issued any discovery orders in this matter, Plaintiff cannot be in violation of any such order, and thus, Defendant fails to present a cognizable claim under Rule 37(b)."

In *Taylor v. Amcor Flexibles, Inc.*, 2012 Dist. Lexis 13851 *9 (D.N.J., Feb 6, 2012), Judge Noel Hillman analyzed the four *Meyers* factors and allowed use of deposition testimony taken 2 years after the close of discovery.  The court noted that the striking the testimony "equates to a sanction of dismissal of Plaintiff's claim." 2012 Dist. Lexis 13851, at *12.  The court noted the "well settled preference of the Third Circuit is to decide cases on the merits."

---

names of witnesses and scope of their relevant knowledge well before trial."  *Newman v. GHS Orthopedic*, 60 F.3d 153 (3d Cir. 1995). There is no showing of any bad faith by the plaintiffs or CVLO counsel.

2012 Dist. Lexis 13851, at *12-13.

A example of circumstances where witnesses are excluded is *In re TMI Litigation*, 193 F.3d 613 (3d. Cir. 1999), a case cited by certain defendants and which applies the same factors as *Meyers*. In *TMI*, plaintiffs repeatedly made untimely filings of experts' reports and "covert" filings of expert reports. *TMI*, 193 F.3d at 721-22. Specific dates had been set by court order for the filings and discovery had been open for "nearly a decade." *Id. TMI* also involved moving a trial date if the untimely expert reports were allowed. *Id. TMI* is not analogous to the CVLO cases. By comparison discovery during the pretrial/trial phase in CVLO cases has only been open for a few months. The CVLO plaintiffs did not fail to meet a court ordered deadline for witness disclosures. No trial dates will need to be changed for CVLO cases because none have been set.

Other jurisdictions follow similar practices of extending discovery deadlines to depose late disclosed witnesses as opposed to excluding their testimony altogether. In *Lesser v. Camp Wildwood,* 2003 WL 22228757 (S. D. N. Y. 2003), the court ordered the reopening of fact discovery after defendant's counsel did not disclose two witnesses until the day before the close of fact discovery. Although the court criticized the conduct of the defendant's counsel and even stated counsel acted in bad faith, the court did not resort to the extraordinary sanction of excluding the defense witnesses. *(Lesser,* 2003 WL 22228757, at *8.)* The court allowed plaintiff to conduct additional discovery including depositions from the two witnesses and other witnesses that might be necessary. (Id.)

General Electric contends in the *Schurtz*[7] case briefing the supplements, based on attorney

---

[7] *Schurtz v. AC&S*, E.D. Pa. Case No. 08-CV-91742, Doc. No. 216 at 22.

9

knowledge, to the CVLO client discovery responses "appear to be in bad faith."  GE argues the

testimony disclosed in the CVLO attorney data lists are primarily from CVLO clients.   GE cites

to *Yugoslav-American Cultural Ctr., Inc. v. Parkway Bank & Trust Co.*, 682 N.E.2d 401, 407-08

(Ill. App. Ct. 1997), as imputing attorney knowledge to the client.  Plaintiff agrees, as discussed

above, that sanctions might be sought under case law requiring disclosure of attorney knowledge.

GE, however, never sought such sanctions or moved to compel the disclosure of CVLO attorney

knowledge.  Instead the CVLO clients pre-emptively acted to avoid such sanctions by

supplementing discovery responses to make the disclosures.  GE has failed to demonstrate

intentional concealment by plaintiffs.  By disclosing the attorney knowledge developed by

investigation after the cases were placed on scheduling orders, plaintiffs are doing exactly what

GE wants.


## II.  Plaintiffs Have Not Violated A Court Order

Defendants are unable to point to a scheduling order which has been violated by

plaintiffs.  Of the over 1,600 CVLO MDL 875 cases originally assigned scheduling orders, only

the first group of 10 cases ever had a court ordered "fact witness" disclosure deadline.  The

remaining cases do not and never had a "fact witness" deadline[8].  Defense contentions that

---

[8] On April 18, 2011, Judge Robreno reassigned the CVLO MDL 875 cases to Magistrate
Judge David R. Strawbridge as "Court Annexed Mediator" (Ex. 3.)  On June 9, 2011, the manner
in which CVLO MDL 875 cases were to be handled shifted drastically when Judge Robreno
modified the April 18, 2011 mediation referral order and directed Judge Strawbridge to "conduct
pretrial procedure, supervision of discovery, settlement conference, and preparation for trial."
(Ex. 4.)  As a result, case management and scheduling orders were entered for CVLO cases.  The
scheduling orders included deadlines for completing fact discovery, filing expert reports,
completing expert discovery, and filing, responding to, and replying to dispositive motions.  The
scheduling orders do not provide a date on which  plaintiffs' responses to standard interrogatories

plaintiffs are barred from using unnamed "fact witnesses" are in contravention of the absence of such deadline after the first ten cases.

Plaintiffs relied on the absence of fact witness deadlines in not providing such lists after the "Top Ten" cases. (Ex 42 at ¶ 3.)  As mentioned above, the parties in the CVLO MDL 875 cases adopted a document called "Standard Interrogatories" as the vehicle for providing information about "coworkers"with knowledge of claims.  No order was entered requiring the standard answers to be filed by a date certain after the cases shifted from the mediation mode under Judge Reed to trial preparation mode under Magistrate Strawbridge.  As a general practice, CVLO filed the standard interrogatory responses before the close of fact discovery in each CVLO group. (Ex 42.)   No motions to compel earlier answers to the standard interrogatories were filed.

Plaintiffs also have relied upon other rulings or statements during the proceedings in the CVLO MDL 875 cases as to the sufficiency of the attorney knowledge lists and other disclosures of the names of coworkers, site workers, and past testimony.  On May 4, 2012, over 9 months after scheduling orders had been entered in the CVLO cases, defendants made an oral request for plaintiffs to "disclose and narrow down their fact witness lst to those that they're actually going

---

are due.  Plaintiffs counsel understood the standard interrogatory answers could be provided and supplemented until, at a minimum, the date fact discovery closes because interrogatory answers are a part of fact discovery. No scheduling order sets trial dates for any CVLO cases.

The first case grouping in which scheduling orders was entered is the "Top Ten."  In addition to the deadlines set forth above, the Top Tem scheduling order set a deadline for "fact witness disclosures."  (Ex. 5.)

In July of 2011, a scheduling order was entered in next group of CVLO cases, referred as CVLO-1.  In contrast to the Top Ten scheduling order, the CVLO-1 order had no deadline for "fact witness disclosures."  (Ex 8.)  The only deadline was a "fact discovery close." The same pattern was followed for the remaining groups 2 through 7 of the CVLO cases.  (*See* Exhibit B, Exs 5-14, 29-38.)

to use at trial." (Ex 26 at 6.)  Magistrate Strawbridge rejected the request coming so late in the

time frame of the scheduling orders.  "I'm not going to do anything to disturb the orders as the

order now stands. . . . . If that's considered a motion, I'm not going to order that."  (Ex 26 at 27.)


Mediation orders are not applicable

Certain defendants contend CVLO has violated a mediation order entered by Judge Reed.

The CVLO MDL 875 cases were assigned to Judge Reed for purposes of medication. (Ex 3.)  In

October of 2010 Judge Reed issued an order regarding answering "standard" interrogatories (Ex.

1.)  Paragraph 10 of this order states "In lieu of a plaintiff's signature to the answers, a signed

certification to the accuracy of a plaintiff's answers to the mediation interrogatories by plaintiff's

counsel of record will be adequate for purposes of mediation only." (Ex 1.)

Defendants fail to acknowledge that two wholly different proceedings have taken place.

Beginning in 2009 over 4,000 CVLO MDL 875 cases were place on a mediation docket.   In

June, 2011, the remaining 1,600 (now less than 300) CVLO cases were changed to a trial

preparation track.  These two separate types of proceedings are completely distinguishable and

the orders are not interchangeable.

Judge Reed's order was entered in his capacity as a mediator.  The order only required

signatures by plaintiffs' counsel, and not plaintiffs themselves. (Ex 2.) The signature of counsel

was not provided due to "data processing" errors which plaintiffs' counsel advised the mediator

and all parties of during a transcribed status hearing. (Ex 42 at ¶ 6.)  Judge Reed's mediation

rules included a confidentiality order which stated: "All documents produced, orders or the

mediator and statements made at mediation and management conferences with the mediator as

12

well as statements made and other documents issued to facilitate settlement shall be kept

confidential[.]" (Ex 2 at 3.)  Additionally, Third Circuit Local Appellate Rule 33.5(c) states:

> Confidentiality of Mediation Proceedings.   The mediator will not disclose to anyone
> statements made or information developing during the mediation process.   The
> attorneys and other persons attending the mediation are likewise prohibited from
> disclosing statements made or information developed during the mediation process
> to anyone other than clients, principals or co-counsel, and then, only upon receiving
> due assurances that the recipients will honor the confidentiality of the information.
> Similarly, **the parties are prohibited from using any information obtained as a
> result of the mediation process as a basis for any motion or argument to any
> court.**  The mediation proceedings are considered compromise negotiations under
> Rule 408 of the Federal Rules of Evidence. . . .

(Emphasis added.)  Plaintiffs' unsigned standard interrogatory answers during mediation were

provided with the expectation of such confidentiality and prohibition as to future use at trial.

The standard interrogatory answers provided since the proceedings were converted to trial

preparation are not confidential and subject to the signature requirement of Rule 33.  The

unsigned answers generated during mediation were generated under a different set of rules and

have no legal effect or application to pretrial and trial proceedings.


Defense cases are distinguishable

Defendants cite several cases as striking fact witness testimony when the witness was not

properly disclosed.  These cases are distinguishable.

Owens -Illinois cites *Shine v. Owens-Illinois*, 979 F.2d 93 (7th Cir. 1992), which was an

asbestos case.  During a period of about 3 ½ years, the plaintiff in *Shine* failed to comply with

three separate orders to disclose trial witnesses and "specific asbestos-containing products the

witness planned to identify." 979 F.2d at 95.  One order said failure to comply will result in the

witness being barred.   In the CVLO cases, no such  orders were entered and defendants do not claim an order was violated.

Certain defendants also cite *Hadley v. Pfizer*, Civil Action No. 08-1440 (E.D. Pa 2009). Defendants incorrectly contend the *Hadley* court struck a witness.  No witnesses were stricken in the case.   In *Hadley* the plaintiff failed to identify a witness with "discoverable or relevant information" until the "last day of a six-month discovery period." *(Hadley v. Pfizer*, Civil Action No. 08-1440, at *3.)  Rather than exclude the witness, the court extended the discovery deadline in order to allow the defense to depose the witness.  (Id.)   The court also noted, consistent with 26(e) and principles of fairness, supplementation of discovery is required when a party learns a disclosure is incorrect.  (Id.)

Other defendants cite the ruling of this court (Judge Robreno) in *Morgan v. 3M Company*, 2011 U.S. Dist. Lexis 151791 (E.D. Pa. 2011).  *Morgan* involved a scheduling order deadline for initial disclosures.  A witness was identified after both the disclosure deadline and the discovery close.  The court noted the importance of the Rule 26(a) disclosures in striking the affidavit of the undisclosed witness.  *Morgan* can be distinguished from the scheduling orders in the CVLO cases which do not set disclosure deadlines for fact witnesses.  As discussed above, the scheduling order in the CVLO cases did not provide for Rule 26(a) disclosures or any deadline for fact witness disclosures.  Absent violation of a scheduling order, the exclusionary sanction imposed in *Morgan* is not proper under the *Meyers* decision and other Third Circuit precedent.

Several defendants also cite to Magistrate Strawbridge's order in *Unzicker v. A.W. Chesterton*, E.D. Pa. Case No. 11-CV-66288, dated May 31, 2012.   The original *Unzicker* order, which applied only to a single case, struck lists of living site or coworkers and past testimony,

14

which had been prepared from the knowledge of counsel and organized based on job sites.  In

dicta, the Magistrate Judge initially characterized the lists as an "untimely data dump."  In a later

order dated July 17, 2012,  the Magistrate Judge limited the scope of the *Unzicker* ruling to

situations where the client had not signed the answers before the close of fact discovery.  If the

clients had singed the standard interrogatories, Magistrate Strawbridge refused to strike the same

attorney knowledge lists of site of coworkers and past testimony.  The July 17, 2012 order, which

applied to numerous cases, held the supplemental attorney knowledge disclosure was proper to

avoid potential sanctions under Rule 37.


III.    *FRCP 26 Is Not Determinative*

Under the Federal Rules of Civil Procedure, defendants could have requested the court to

order a Rule 26(a) type disclosure of the details of information known by persons with

knowledge as to products.  No such order was entered and defendants did not request the entry of

such order until a hearing on May 4, 2012. (*See* Ex 26.) This request was long after the

scheduling orders had been entered and was denied by Magistrate Strawbridge.  (Ex 26 at 6-7,

27.)

Some of the defendants cite to  FRCP 26(a)(1)(A), which is entitled "Initial Disclosures"

as the basis for striking the lists of persons with knowledge.  Rule 26(a)(1)(A) states: "a party

must, without awaiting a discovery request, provide to the other parties: (i) the name and, if

known, the address and telephone number of each individual likely to have discoverable

information--along with the subjects of that information--that the disclosing party may use to

support its claims or defenses."  Defendants reliance on Rule 26(a)(1) is misplaced for three

reasons.  First, the rule does not require the disclosure of "fact witnesses."  Second, defendants did not seek and the court did not order a deadline for Rule 26(a)(1) disclosures.  Defendants themselves have not made Rule 26(a)(1) disclosures.  Rule 26(a)(1)(C-D) states the disclosures are to be made within 14 days of the FRCP 26(f) scheduling conference.  No Rule 26(f) scheduling conference was held for the CVLO MDL 875 cases.

Fourth, the only disclosure document apart from expert witnesses is the standard interrogatories discussed above.  If the standard interrogatories are considered analogous to the Rule 26(a)(1) disclosures, no specific deadline was set for answering the standard interrogatories. The only deadline for the standard interrogatory answers is in the August 4, 2011 deposition protocol entered by Magistrate Strawbridge.  (Ex 38 at ¶ 11.)  Such deadline is two weeks before depositions, if any, of coworkers in a case.  (Id.)

Defendants did not file a motion to set a deadline before the fact discovery close for the standard interrogatory answers.  Defendants also did not file a motion to compel more definite answers to the standard interrogatory answers that were provided.  Defendants cannot lay in the weeds and challenge after the close of discovery what was accepted when provided.  Absent such motions to compel in advance of the discovery close and any orders from the court compelling additional responses, the court should not strike plaintiff's evidence on the basis that answers to standard interrogatories are now claimed to be deficient or untimely.

*IV.      FRCP 26(e) Requires Plaintiffs to Supplement Interrogatory Answers*

By making and continuously updating disclosures of persons with knowledge and the past

testimony lists, CVLO is complying with Rule 26(e).  To strike such required supplemental

disclosures is contrary to Rule 26(e) which states the parties "must supplement or correct its

disclosure or response" when counsel "learns the response is incomplete or incorrect."

As discussed in Section II above, the CVLO client disclosure of lists of coworkers and

past testimony based on attorney knowledge was an evolving process.  The process began in the

spring of 2012 when CVLO first learned of federal case law about disclosure of attorney

knowledge.   The second step in the process was to create databases with reliable information to

be able to disclose the knowledge of counsel.  Once these events occurred, CVLO made a timely

supplemental disclosure of attorney knowledge to go with the standard interrogatory answers.

The reasons for the supplementation were explained in the July 12, 2012, transmittal

email from a CVLO attorney.

> CVLO provides the attached lists of 1) Site Workers by Job Site for IL & WI Jobsites and
> 2) Site Worker Witness Past Testimony by Job Site for IL & WI Jobsites as responses to
> standard interrogatory nos. 16-18 and 20 that ask for persons "including the persons who
> worked with you or at the same job site, and their current or last known addresses" as the
> injured person, and to standard interrogatory no. 29 which asks about "the existence of
> any statements" relating to the injured person's claims.  These lists provide CVLO's
> attorney knowledge of such answers. . . . The information in the database has been
> reviewed and corrected during ongoing investigation of the MDL cases.  Plaintiff's
> attorneys now believe the information on the site workers  and past testimony relating to
> job sites, although not completely accurate, is now reliable enough to warrant disclosure
> under the case law.  These lists are made by CVLO and not by clients.   As such they are
> signed by CVLO as counsel.

(Ex 39.)

The defense motions to strike do not contest that CVLO counsel first learned of the

obligation to disclose attorney knowledge in about March of 2012.  The motions to strike similarly do not contest that CVLO needed time to compile and assemble its knowledge in a format that could be produced to the defense.  This tacit acceptance of the factual underpinnings regarding the supplementation of the standard interrogatories defeats the defense claims that the supplementations were untimely.

The duty to supplement discovery continues after any deadline for the close of discovery. The ability to use witnesses cannot be frozen in time as of the date of the close of discovery.  But this is what the defense is asking the court to do.  The defense motions to strike are asking the court to ignore the duty to supplement under Rule 26(e) The defense is asking the court to sanction plaintiffs for plaintiffs' compliance with Rule 26(e).  The sanction of striking a witness is not appropriate for supplementation required by the rules.


V.     *Attorney Knowledge Answers Can Be Signed By Counsel*

Defendants also seek to strike plaintiffs' standard interrogatory responses as untimely for noncompliance with the signature requirements of Federal Rule of Civil Procedure 33. Defendants contend the plaintiff's or client's signature is always required even when the disclosed information is based solely on the knowledge of counsel.  Contrary to defendants' argument, the express language of Rule 33(b)(5) provides "the person who makes the answers must sign them."  When the answers are based solely on counsel's knowledge, the attorney is making the answers and is the proper signatory.  Alternatively, numerous courts have provided parties with additional time to obtain signatures required by 33(b)(5) in lieu of striking the interrogatories.

Examples of attorney knowledge are discussed above such as the lists of coworkers and past testimony.  In cases brought by widows or children of deceased victims, even the statement of claims is often solely a matter within the knowledge of counsel.

Rule 33 uses two distinct words - "party" and "person."   Rule 33(b)(1)(a) requires the interrogatories to be answered "by the party to whom they are directed."  Rule 33(b)(5) places the signature requirement on "the person making the answer."

The Federal Rules of Civil Procedure do not include a definitions section.  However, a basic principle of statutory interpretation is that "Congress used two terms because it intended each term to have a separate, nonsuperfluous meaning."  *Bailey v. United States*, 516 U.S. 137, 146 (1995).  *Bailey* is instructive here.  In that case, the Supreme Court rejected an interpretation that made "use" and "carries" redundant in a criminal statute involving using or carrying a firearm in commission of an offense.  Similarly, according to the rules of statutory interpretation in *Bailey*, the distinct terms "person" and "party" in Rule 33 must have distinct meanings.  If the terms have distinct meanings, defendants are wrong in contending the "party" is always the 'person" who must sign.

Consistent with the distinction based on the person making the answers being different than the party, courts have held attorneys may sign when clients or parties lack knowledge to sign.  Examples include corporations, minors, and Indian tribes.  In *Fernandes v. United Fruit Company*, 50 F.R.D. 82 (D. Md. 1970), the court overruled objections based on the fact the attorney signed for the defendant corporation.   The court wrote, "Attorney for corporate defendant may sign and swear to answers to interrogatories addressed to it if he makes oath that to the best of his knowledge, information and belief answers are true and contain all information

19

which is available to corporation on interrogatories which are being answered." *Id.  See also*, *Segarra v. Waterman S.S. Corp.*, 41 F.R.D. 245 (D.P.R. 1966) (stating "litigant's attorney can be considered its agent for purpose of answering and signing interrogatories where litigant is corporation"); *Jones v. Goldstein*, 41 F.R.D. 271 (D. Md. 1966) (stating "answers to interrogatories addressed for corporate defendant were properly signed by its attorneys").

The cases above are analogous to the instant case when the information is based on the knowledge collected by counsel from many sources.  Counsel representing a corporation may amass information from many persons in the corporation, and no one person from the corporation can sign as having "made " the answers.  that was otherwise too disorganized to be available to it.  Similarly, plaintiff's counsel in these MDL 875 cases has collected information about products, job sites, and coworkers from many sources that are unknown to the plaintiff or client. Therefore, it is proper for plaintiff's counsel to sign as the person making the answers.

Assuming the court determines the signature of counsel is alone not sufficient, additonal time should be allowed for the client signature.  The Third Circuit recognizes exclusion of evidence is an "extreme sanction" that is not normally imposed absent a showing of "willful deception or 'flagrant disregard' of a court order by the proponent of the evidence", and numerous courts have provided parties with additional time in lieu of striking interrogatories. *Canterna v. United States*, 319 Fed. Appx. 93, 98 (3rd Cir. 2008).  In *Howard v. United States*, 2010 U.S. Dist. LEXIS (W.D.N.Y. 2010), the court provided the plaintiff with an additional 30 days to sign the interrogatory in lieu of striking it.  Plaintiff's counsel contended it was still in the process of obtaining the signatures, a position the *Howard* court accepted.  *Id.*  Similarly, in *Stein v. Northern Assurance Company of America*, 2009 U.S. Dist. LEXIS 92358 (E.D.N.Y. 2009), the

court allowed two additional weeks for defendants to obtain signatures under Rule 33(b)(5).

Based on these cases the court should allow plaintiffs additional time to provide signatures for

the interrogatory answers.


<u>Relief Requested</u>

For the above mentioned reasons, plaintiffs pray this court enter an order denying the

defendants motions to strike discovery responses as untimely.

Dated: August 28, 2012

Respectfully submitted,


*/s/ Robert G. McCoy*
Attorney for Plaintiffs

Robert G. McCoy
Brian A. Schroeder
Chen Kasher
R. Matthew Schroeder
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Ave.
Chicago, Illinois 60607
312.944.0600