UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


IN RE:                          )   01-MD-875
                                )
     ASBESTOS PRODUCT LIABILITY.  )
                                )   Philadelphia, PA
                                )   May 4, 2012
                                )   9:48 a.m.



TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE DAVID R. STRAWBRIDGE
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs:      ALLAN VAUGHAN, ESQUIRE
                         ROBERT G. McCOY, ESQUIRE
                         CASCINO, VAUGHAN
                         220 South Ashland Avenue
                         Chicago, Illinois  60607

For the Defendants:

For General Electric:    JENNIFER STUDEBAKER, ESQUIRE
                         FOREMAN, PERRY, WATKINS,
                         KRUTZ & TARDY, LLP
                         City Center
                         200 South Lamar Street - Suite 100
                         Jackson Mississippi  39201

                         JOHN A. FONSTAD, ESQUIRE
                         SIDLEY AUSTIN
                         One south Dearborn
                         Chicago, Illinois  60603

For CBS Corporation:     RICHARD LAUTH, ESQUIRE
                         EVERETT WEATHERSBY & HOUFF
                         300 Piedmont Road
                         Atlanta, Georgia  30305

For Owens Illinois:      ED CASMERE, ESQUIRE
                         SCHIFF HARDIN, LLP
                         233 South Wacker Drive - Suite 6600
                         Chicago, Illinois  60606


EXHIBIT
26

(Appearances continued:)

For Georgia Pacific:        MICHAEL W. DRUMKE, ESQUIRE
                            HEPLERBROOM, LLC
                            150 North Wacker Drive - Suite 3100
                            Chicago, Illinois  60606

(Not noted):                TOBIN TAYLOR, ESQUIRE
                            HEYL ROYSTER VOELKER & ALLAN
                            Suite 600 - Chase Building
                            124 Southwest Adams Street
                            Peoria, IL  61602


Audio Operator:             CHRISTINA FRANZESE


                            Transcribed by:
                            DIANA DOMAN TRANSCRIBING
                            P.O. Box 129
                            Gibbsboro, New Jersey  08026-0129
                            Office:  (856) 435-7172
                            Fax:     (856)  435-7124
                            Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

Status Conference                                    3

1          (The following was heard in open court at 9:48 a.m.)

2                THE COURT:  All right.  Good morning, gentlemen and

3     ladies.

4                ALL ATTORNEYS:  Good morning, Your Honor.

5                THE COURT:  Bob McCoy, Allan Vaughan, Richard,

6     Jennifer, Casmere, Tobin Taylor, John Fonstad, and Mr.

7     Drumke's on this morning.  Good morning.

8                Okay.  I did receive correspondence from Mr. Lauth.

9     Thank you for that.  I went through that.  It helped -- helps

10    give me a better understanding of the issue.

11               I didn't receive anything specifically from

12    plaintiffs as of yet, so why don't I -- Mr. McCoy or Mr.

13    Vaughan, you been through Richard's -- Richard's letter?

14               MR. McCOY:  Actually, Judge, I -- I haven't had a

15    chance to go through it because we've had a lot of deadlines

16    today for other things like expert reports.

17               THE COURT:  Uh-huh.

18               MR. McCOY:  So I was focusing on that.

19               THE COURT:  Okay.  Well --

20               MR. McCOY:  I don't think there's -- you know, let

21    me put it this way.  In terms of dealing with witnesses in

22    these cases I have seen pretty much all the different angles

23    from a lot of cases and a lot of issues.  So I don't think

24    there's anything I'm not aware of.

25               THE COURT:  Right.  I suspect that's right, 'cause

1    I -- well, I'll tell you what.  Let me -- let me just get Mr.

2    Lauth, if you would, please, Richard, to kind of -- and I

3    think I have an understanding of your position and I -- I have

4    some thoughts about what -- what we can do or, frankly, more

5    likely cannot do as a Court at this point.  Things might just

6    have to play out.

7              But just -- let me give you a chance to kind of try

8    to articulate.  We got a record here this morning.  Let's try

9    to articulate your position, what you see as the problem from

10   the defendants' perspective, and then I'll react -- I'll ask

11   Mr. McCoy first, and then I'll react to --

12             MR. LAUTH:  Well, Your Honor, what we have in front

13   of us is deadlines for the close of discovery.

14             THE COURT:  Yeah.

15             MR. LAUTH:  CVLO 1/2, sub-groups D and C.   The fact

16   discovery deadlines for those two groups are May the 21st and

17   June the 15th, respectively.

18             In those groups we have ten plaintiffs in sub-group

19   B and 17 plaintiffs in sub-group C, and among those what we

20   have in terms of our discovery to date is the cases are

21   standard interrogatories that have been served on defendants

22   by plaintiff.  We've also got many defendants who have filed

23   defendant-specific interrogatories

24             And what we're trying to do, Your Honor, is

25   ascertain what plaintiffs' prima facie case is.  The

1      information that they should have had on the filing of these

2      cases as to what they have on each defendant, what was the

3      plaintiff's specific exposure to the asbestos for the

4      particular defendant at issue.

5                  THE COURT:  Uh-huh.

6                  MR. LAUTH:  If we don't have evidence to meet that

7      showing, which is plaintiffs' burden, then the defendants are

8      entitled to get out on a no evidence motion for summary

9      judgment.

10                 THE COURT:  Uh-huh.

11                 MR. LAUTH:  What plaintiffs have done in response to

12     our interrogatories which ask for that information, in many

13     cases they have supplied lists of co-workers that appear to be

14     database dump of all the people that they have in their

15     repertoire of witnesses, be they former clients or contacts or

16     otherwise, that overlap somehow with what they have in their

17     database on this particular plaintiff.

18                 THE COURT:  Uh-huh.

19                 MR. LAUTH:  And so -- and I just picked Mr. Centers

20     out as an example.  We have in excess of 65 co-workers that

21     have been identified.  We don't know what they're going to

22     say, but what we do know is that somehow they may have some

23     overlap with plaintiffs at a particular jobsite.

24                 THE COURT:  Uh-huh.

25                 MR. LAUTH:  What's important in these cases is not

1    what a particular jobsite may have with respect to a

2    particular defendant's product.  What's important is what the

3    plaintiff did and how he was exposed to those products.

4            THE COURT:  Uh-huh.

5            MR. LAUTH:  Just by virtue of having a piece of

6    equipment at a jobsite, for example, does not in and of itself

7    cause plaintiff to encounter asbestos from it.

8            So I got to figure out what my client has been

9    brought into these cases for.

10           Centers and 65 co-workers and a statement along the

11   line of, "Well, I'm not going to know what my _prima facie_ case

12   is until you've filed your dispositive motion," is really a

13   frustration of the process.

14           THE COURT:  Well --

15           MR. LAUTH:  What we proposed was to have a

16   particular date inserted in the case management orders whereby

17   plaintiffs were to disclose and narrow down their fact witness

18   list to those that they're actually going to use at trial, not

19   the 65 witness list of potential co-workers, but, instead, the

20   few that they're actually going to call to rebut or to make --

21   to prove their case.

22           And so we want a deadline a couple weeks out before

23   the end of discovery, but it is -- to get these people deposed

24   such that we can file dispositive motions so we can know what

25   our -- I mean we have to give this information to our experts

 1    so they can provide reports.  We have to be able to file our

 2    dispositive motions, get these cases ready for trial under the

 3    order of the Court who put -- put all these cases on

 4    scheduling orders.

 5            So we just -- we need this information in order to

 6    be able to proceed efficiently.  We can't be getting the

 7    information in response to our motion for summary judgment.

 8    We can't be getting it a month before trial or a few weeks

 9    before trial, as suggested at times by plaintiff.

10            We need it now.  We need it in front of the close of

11    discovery for, you know, the process is immensely frustrating,

12    and that's what caused us to ask for the stay for the CVLO

13    1/2, sub-group B and C plaintiffs, and for our, you know,

14    corporations, scheduling orders for the other groups so we can

15    get these things ready as instructed by the Court.

16            That's where we are right now.  What we -- what we

17    can't be have -- have our -- is what's happened in Unzicker,

18    for example, where two days before the end of fact discovery

19    we get 20 pages worth of co-workers, and other defendants to

20    talk about, you know, the specifics or give you more basics on

21    that if you like, or we can, you know, at your convenience go

22    with the plaintiff's response to that.

23            THE COURT:  All right.  Mr. McCoy, I'll give you a

24    chance to respond before I say anything.

25            MR. McCOY:  Yes, Judge.  We -- we had originally

1   looked at the scheduling orders with the dates that were in

2   them, and the dates that were in them involved a fact

3   discovery close, so that was the big of our thinking of what

4   could be done when, that there would just be a fact discovery

5   close.

6          Now they're asking for something that would

7   dramatically change the picture, Judge.  So -- and I'll just

8   describe what I mean by "dramatically" as I go along here.

9          But if we go back to the beginning of the earlier

10  time period where the standard interrogatories were -- were

11  supposed to be responded to, and the information that our firm

12  had wasn't information about cases where the case had been

13  filed 20 years ago, and the witnesses were now mostly dead,

14  clients were dead, and basically all of the evidence that

15  existed at the time of filing, what Mr. Lauth referenced as

16  some moments in time when we should have known everything

17  about these cases that existed at the time of filing no longer

18  exist, only some small fraction of it, nor are many of the

19  (inaudible) cases because they've resolved for other reasons.

20         So today when these cases were activated, i.e., in

21  order, you know, to get resolved, that we had to go with a

22  brand new set of circumstances as far as the evidence.

23         (Inaudible) and what -- Judge, I'm getting a lot of

24  static.  I don't know if you're hearing that, too, or not.

25         THE COURT:  I'm getting a little bit, Bob, but you

1   are coming through clearly enough.

2          MR. McCOY:  Okay.  Sounds like somebody's shuffling

3   their papers, but --

4          THE COURT:  Maybe the others could -- maybe the

5   others could go on mute while you're talking.  Go ahead.

6          MR. McCOY:  Yes.  So in other words, we had a set

7   of -- a brand new set of circumstances from an investigation

8   standpoint that had to be dealt with.  We had no -- when the

9   cases were first scheduled for mediation and resolution, we

10  weren't allowed to do the discovery at that point in time to

11  create any testimony evidence, and that the -- except for that

12  whole history.

13         So that -- we have to -- we had to answer the

14  standard interrogatories.  That was one of the early steps.

15  Well, those -- those standard interrogatories required us to

16  state the co-workers -- and I'm just looking at interrogatory

17  number 18.  I think there's a couple that are similar to this.

18         But the standard interrogatory number 18 said that

19  to identify your co-workers on that job, and then it says,

20  "...including the persons who worked with you or at the same

21  jobsite and their current or last known addresses.  Identify

22  any represented by counsel, asbestos claims."  So that was

23  what number 18 said.

24         And when we first answered the standard

25  interrogatories, we didn't have at our firm a lot of

1   information about these cases in the sense that what I just

2   said, what was filed many years ago no longer had the evidence

3   that existed long ago.  And so we did our best to provide some

4   information.

5           And then in looking at the fact discovery close that

6   had been set in these cases in that question, I mean it was

7   obvious to me that we had better answer what information we

8   had now accumulated with fairly intensive efforts that

9   occurred in a -- you know, you're familiar with the increase

10  in our staff and so on, obviously in response to an order

11  setting these cases for mediation and resolution and for the

12  scheduling order that we knew was upcoming.  We haven't -- had

13  done intense work in a very short period of time on cases.

14          And that has created a database of information that

15  is much more reliable than anything we ever had before.  In

16  fact, I -- I would venture to say a lot of our -- our old data

17  was just simply not reliable, and that's what -- that was

18  something that was -- we had to correct, and we've done that

19  with a lot of the data.

20          So when these deadlines came up on the first sub-

21  group for the fact disclosure, it was -- like I said, it was

22  very obvious that we needed to amend this answer to number 18,

23  and we were required to do so under this Rule 26(e)(1)

24  supplementation.  And so that's -- that what's we did.

25          We also looked at -- primarily focused before on

1    what our -- what our clients' knowledge was in these original

2    standard interrogatory answers that had been drafted, and, of

3    course, with the clients dead -- injured, dead, people who

4    actually worked there dead, we are now just dealing with

5    clients who are often widows or children who didn't know

6    really anything themselves.  But -- so our answers didn't

7    include a lot of information in most cases because it was

8    mostly limited as to what they knew.

9            But then now that we have a lot of evidence that

10   we've collected as attorneys about jobsites, that evidence is

11   something that, in looking at the case law, it just appeared

12   that -- and there wasn't any clear authority like a, you know,

13   a Third Circuit ruling that we found or a U.S. Supreme Court

14   ruling or something.  There wasn't a lot of District Court

15   rulings.

16           But generally, it looked -- it looked like the

17   knowledge that attorneys have gained of the evidence, this --

18   and I use jobsites as -- as an example, the evidence we've

19   learned about witnesses who knew about the jobsites, that --

20   that was something that should -- should be disclosed,

21   according to the case law that we did find.

22           And that -- that was something that we took into

23   account, also, as we did the supplementation, which we were no

24   longer basing it simply on what our clients had knowledge of,

25   but we were basing it on what information we had obtained and,

1   you know, incorporated into data that we could reasonably

2   search for and find in our system as attorneys, and that would

3   also be required as far as Rule 26(e) supplementation.

4          So we gave that to -- and, of course, that's where

5   almost all these names come out of that they're talking about,

6   is these are now data that our law firm is reasonably

7   confident -- I say reasonably confident, meaning, again, these

8   are -- these are all attorneys' judgments about the

9   significance of this evidence, and, you know, in essence,

10  the -- what you're doing when you do that, Judge, you're

11  disclosing your attorney work product.  And -- but that's what

12  the case law seems to suggest should happen.

13         And so what -- what we've done is then is to add all

14  these different names of these people who either we -- we

15  found were actual people that might have worked with the

16  witness -- I mean the victim in the course of our

17  investigation on that specific case if they hadn't been

18  disclosed before, or -- and we, you know, in the case of these

19  victims, when we're dealing with that one item of the actual

20  people that know what the victim did as personally observed or

21  whatever their specific knowledge is.  There's -- there's

22  usually a couple of those kinds of people for each of these

23  clients that we came up with.

24         And -- but the greater majority of names that were

25  disclosed like, you know, roughly 95 percent probably are --

1    are names of people who -- who are, again, collecting of all

2    this evidence in an intense fashion here were people that

3    worked at the jobsite, and that's also required to be

4    disclosed under this question 18 standard interrogatory.

5              So -- so that's what we -- we supplemented that

6    information, and that -- that, of course, for some of these

7    jobsites is a lot of information because when you look at the

8    number of people who were, say, a pipe fitter -- and, of

9    course most of our guys are union guys, the victims are.

10             So when you look at their background as -- as

11   members of a union that sent crews of people into large

12   jobsites through the employers there who were -- who were

13   required to hire union people, you easily had, like at these

14   refineries and powerhouses, any of these major industrial

15   sites, you had thousands of members of the same local often

16   going into the same jobsite over the years.

17             And, of course, that means there's just a lot of,

18   lot of names when you look at this question as written, and

19   that's what we were doing.  We were complying with the

20   question.

21             So that evidence of what these people who worked at

22   the same site, are familiar with is usually based on -- it's

23   either a witness interview that hasn't been converted yet into

24   a deposition, or it's based on an old deposition, mostly

25   probably the latter.  It's old testimony.

1           And, you know, of course, with today's techniques in

2     scanning and searching you can do so many things that you

3     couldn't do even a couple years ago or a year ago.  I mean the

4     data -- the ability to search this stuff is just

5     astronomically increased if if you, you know, if you properly

6     scanned it, and it can now be read, old deposition transcripts

7     and searched in a matter of seconds where it's, you know, six

8     months, a year ago, a lot of that stuff wasn't -- wasn't

9     nearly as good as it is today.  A couple years ago most --

10    most of that ability, capability, didn't exist.

11          So a part of this is also a reflection of the new

12    technologies that are out there and what -- what those allow

13    us to do.  And I say that because when you look at the

14    asbestos litigation history and the jobsites that most of our

15    clients have been at have been the subject of extensive jobs

16    litigation.

17          If we collected all the deposition testimony for

18    these jobsites, there'd be a vast wealth of information that

19    could be accessed much more readily today than it could be, as

20    I say, even a year or two ago.

21          So that's -- that's included in our -- in our

22    updates, but, again, that -- that wasn't something that we had

23    access to or could have done couple months ago.  It's all very

24    recent that we've been able to put this together for -- and we

25    were focusing -- we work on a lot of cases at the same time

1  here every day.  As you know, we've got, I think, close to --
2  about 670 still that are active in -- in this MDL docket, and
3  I don't know what proportion that 670 is being worked on every
4  day, but I'm sure it's a large -- it's a very large number by
5  the people.
6          But we did focus in the last couple weeks or so on
7  that sub-group A because of the scheduling order in that group
8  that's just recently been entered.
9          THE COURT:  All right.
10         MR. McCOY:  We've focused a lot of efforts on those,
11  in addition to everything else that we're doing here.  But --
12  and that's where this supplementation grew out of for the sub-
13  group A people.
14         Now, if -- if I could continue here, Judge -- I mean
15  that's -- that's kind of the history of -- of what happened.
16  So, in essence, what -- what we've got here is a couple -- is
17  probably -- for sub-group A we now know the names of -- of
18  several, per case, and several, meaning like anywhere from one
19  to maybe five would be a high -- a high end number for most
20  cases of -- of people who were actually co-workers that can
21  tell you what the guy did at the jobsite.
22         THE COURT:  How many did you say?
23         MR. McCOY:  Somewhere between about one to five who
24  actually could tell you what the guy did at the jobsite --
25         THE COURT:  Uh-huh.

1          MR. McCOY:  -- or jobsites that were -- we -- we

2     were able to actively pursue --

3          THE COURT:  Yeah.

4          MR. McCOY:  -- in terms of our decisions on sub-

5     group A, because all this is focused on a group of decisions

6     which, you know, these are the defendants who we think we can

7     actually prove the case against --

8          THE COURT:  Right.

9          MR. McCOY:  -- and prevail on prejudgment.  That's

10    what we were looking at.  I probably should have made that

11    more clear that our focus on sub-group A was can we win on

12    summary judgment.

13         THE COURT:  Yeah, I -- I anticipated that that was

14    your focus.

15         MR. McCOY:  I figured as the Judge you were --

16    you -- we're all interested in that point.  So that's what we

17    were doing.

18         So when I say that group of one to five witnesses

19    who can actually describe the activities of this client at

20    the -- at jobsites, that's what I mean.  Those are the ones

21    that would be providing that description for summary judgment

22    purposes.

23         Some of them had already been deposed in the cases,

24    and probably most had not been deposed, but, again, the

25    intensity of the efforts on sub-group A is why we have a group

1    of witnesses identified and the necessity of it for, like I

2    say, for summary judgment purposes, given the fact discovery

3    cut-off.

4              THE COURT:  Yeah.  All right.

5              MR. McCOY:  So -- so -- and I -- and when I say

6    they've already been deposed, I should add that they may not

7    have been deposed on the -- on the evidence that we would

8    expect them to be providing at trial or for the purposes of

9    summary judgment because we may have gotten -- those questions

10   may not have been asked at the depositions.

11             We since -- as we've gone through this intense

12   process in the last few months, we've developed evidence on

13   things like switch gear, or we've gotten turbine piles.

14             All this has come into our possession, and the --

15   it's -- it's a combination of both having a witness who can

16   testify to the activities of your -- of your client or your

17   victim, the deceased, as most these people were since they

18   were cancers, lung cancers, and -- and then in addition to

19   that, you have to have other evidence often to show what

20   products of the defendants who are left in the case were at

21   the jobsites, given the evidence of the activities.  So a

22   combination of the two.

23             We usually don't have -- I'd say only about 25

24   percent of these witnesses or roughly -- certainly less than a

25   half are providing both the description of the victims'

1    activities and the description or the identification of the

2    brand of the product.   In most instances it's separate sources

3    for those two pieces of evidence.

4             THE COURT:   Well, Bob, it seems to me that the --

5    that the place where the kind of the rubber meets the road, as

6    it were, is as you acknowledged, what happens to the

7    cumulation of this information and the degree of specificity

8    of this information when it is put up against the test of a

9    summary judgment standard and whether or not you've

10   established enough evidence with respect to causation based

11   upon the various testimony and the information that you

12   provided to the -- to particular defendants in discovery and

13   pertaining to particular products, all of which is -- all of

14   which is to be provided during the discovery and -- and

15   ultimately whether or not Judge Robreno is going to make a

16   determination as to whether that's sufficient or not

17   sufficient.

18             And based upon -- I mean if -- I mean if by way of

19   example the evidence with respect to evidence that is going to

20   show, looking at -- I'm looking at interrogatory number 19 in

21   what was sent to us by Mr. Lauth which I -- I guess I'm led to

22   believe is a -- is an example, but similar type

23   interrogatories with respect to other plaintiffs, asks about

24   the type of evidence -- types of asbestos-containing products

25   where exposure is claimed, which seems to me goes to the

1    question of exposure as to that particular plaintiff, and if

2    the -- if your answer to the interrogatory is a reference back

3    to unnamed co-workers or referenced back to certain co-workers

4    who come from the list of the 80 or so folks that have been

5    attached with some degree of specificity articulated, at least

6    they worked at a particular site during a particular number of

7    years, but not, you know, arguably, I'm sure from the

8    defendants' perspective, insufficient evidence to establish

9    basis for -- to defeat summary judgment to the extent there's

10   no specific reference, other than the very broad general one

11   about exposures, then it seems to me that this all gets

12   flushed out based upon whether or not Judge Robreno feels that

13   that's sufficient or not.

14          If he feels that it is, then I guess the case goes

15   forward.  If he feels that it's not, there's a summary

16   judgment granted.

17          And to the extent that, as you acknowledge, and I

18   don't know if this is the one that -- by way of example, but

19   if you've got 80 or so individuals who've been named, at least

20   on this list that has been attached -- and I don't know how

21   many separate individuals it is 'cause I see that names often

22   repeat themselves, at least on the list that Richard has

23   provided to us, say it's 50 separate individuals, and you're

24   saying that there's maybe one or two or three or probably

25   certainly no more than five that are individuals who are able

1    to offer more specific or more particular evidence, if you

2    don't come forward and identify what that evidence is before

3    the close of discovery period, Judge Robreno may very well

4    decide that you failed to meet your burden.  And, you know, if

5    he does, he does, and if he, you know, if he -- if he doesn't,

6    he doesn't.

7         So I -- I kind of see this as the -- the comment

8    that I made earlier kind of leading into this is whether or

9    not this just is going to have to play out.  And I think that

10   the proposal that was made -- made to you, as I understand it

11   from Mr. Lauth on behalf of his clients, and I don't know if

12   it was on behalf of other defendants, maybe some other

13   defendants, to -- to get you to -- to be more specific and

14   more particular at the end of the day might very well help the

15   plaintiffs' position.

16        I don't know how Judge Robreno would react to the

17   scenario that Judge -- that Richard articulated, which is one

18   which may have happened in other cases.

19        I don't know if -- with a response to a motion for

20   summary judgment you attach an affidavit on behalf of somebody

21   that has a degree of particularity that would likely defeat

22   summary judgment, and that is far more specific information

23   that had been provided during the course of discovery, whether

24   or not a motion to strike that affidavit would be granted.

25        And if it was, because it was done out of time, out

1   of the discovery time period, then obviously that's not a good

2   thing for the plaintiff and seems to me that is some risk that

3   might -- that you run in connection with that.  And I can't

4   tell you how -- I can't tell you how -- how he's going to

5   decide that.

6           I mean generally the scheduling orders are set so

7   that the information is all provided within the discovery

8   period, and once the discovery period ends, that's it.  It's

9   over.  And whatever is in there as of that date, fair enough,

10  and if it's not in there as of that date, it's -- the

11  defendants at some point are entitled to rely upon information

12  coming up to a particular date.  That date -- those dates are

13  now being set, and information provided after it, I'm sure

14  they'll argue very vigorously, should not be considered.

15          So I -- you know, I -- if you guys can work out some

16  kind of an arrangement whereby on these two particular sub-

17  groups, B and C, that Richard has been talking about, that you

18  are able to -- and they're -- these are limited number of

19  plaintiffs.  There's -- there's only like, what, 25 plaintiffs

20  or so in these two groups, a limited number of plaintiffs,

21  seems to me it might be a pretty high priority for your office

22  to determine exactly what particular witnesses out of the

23  groups that appear in these lists that you provided that are

24  attached are the ones who really are going to say, "I worked

25  in the same area, and I know this product was there, and I

1   worked with this guy," or, "I worked in the same area where he

2   was, and we were exposed to this, that or the other," that's

3   information that I would certainly thing you want to get out

4   to the other side because it's -- whatever it is, it's going

5   to be put back to you in terms of -- in terms of summary, you

6   know, their summary judgment motions.

7           So I mean I see this in terms of you guys are

8   fencing a little bit back and forth on this, and you're --

9   each side's going to do whatever it is that you're going to

10  do, and each side, it seems to me, maybe there are certain

11  risks that are involved, and each side has to bear those

12  risks.

13          I -- I'm not going to -- I wouldn't expect Richard

14  to send out deposition notices for 50 different defendants

15  because they've appeared on this broad list with information

16  that is perhaps not specific enough, at least as of this

17  point, to establish causation.  I doubt his clients are going

18  to want him to do anything like that.

19          But that's a decision he has to make and then weigh

20  it against whether or not you -- he feels that the information

21  that has been provided to date is specific enough.

22          So I guess all the -- the bottom line of this, for

23  me, is that, you know, in terms of, you know, whatever

24  guidance or whatever you guys are asking me for in connection

25  with this, it -- it seems to me it would be prudent for you

1    guys to try to work together in a sense within the context of

2    the discovery deadlines for these particular groups that

3    Richard has been talking about.  And I understand group A, the

4    time has come and gone.  It's past, and that barn door's shut

5    on that one, but on B and C that, you know, that you -- that

6    you guys would make some kind of effort in order to -- to

7    minimize or maybe eliminate a summary judgment risk.

8         Or, from your perspective maybe learn that -- as to

9    that particular plan if you really don't have enough evidence

10   to go forward, and, you know, you save the time and energy and

11   so forth to work on the other ones.

12        That's my general reaction.  This is not before me

13   as a formal motion, but I wanted to understand the problem.  I

14   think that I do.

15        I think it does relate possibly to the overall Rule

16   16 motions and so forth that you had before me that -- I'm

17   sorry, that you've now filed and we've got on briefing

18   schedule.  We moved that on briefing schedule.  I think we had

19   an order yesterday telling the defendants to get a response in

20   by May 9, next Wednesday.  And I mean that's -- that's the way

21   I see it.

22        MR. McCOY:  Judge, yes, definitely relates to the

23   Rule 16 question in a very major way, yes.

24        So the -- the depositions that are taken and the use

25   of supplemental statements afterwards, this is just one

1    example of, I think, the issues that are underlying this

2    question as who should and shouldn't be deposed in the cases

3    and what detail can be stated all in advance of a witness'

4    testimony.

5            But, you know -- you know, when you take these

6    depositions as defense counsel, you know, it seems like most

7    of the questioning is about -- the witnesses about some other

8    exposures, like Johns-Manville or whatever other companies are

9    bankrupt, and that's where most of the witness' time gets

10   spent.

11           Then the next thing is -- strategically for the

12   defense is -- is, okay, let's make it so this testimony is

13   only admissible or can only be used in the one case that's

14   it's now being taken in.  So if a guy has knowledge about a

15   jobsite generally, then the testimony, ideally from the

16   defense perspective, would be limited just to the one case.

17           And the other thing about it is, you know, it --

18   it's not in the defense interest to ask about your product in

19   the direct question of, you know, say you're representing --

20   I'll just use Electric as an example, say you're representing

21   General Electric, and it's not in your interest to ask at the

22   deposition the witness, "Did you see Mr. Jones, the victim,

23   work on the General Electric turbines during an overhaul

24   maintenance situation?"

25           Those questions aren't -- aren't asked because

1    strategically that would create a record that would be

2    harmful --

3              THE COURT:  Bob, I'm -- I have to tell you.  I'm

4    really not sure why you're telling me about what it is the

5    defendants do in the depositions.  I'm not sure what -- I'm

6    not sure how that helps resolve this.

7              MR. McCOY:  Because the question becomes, you know,

8    they say what -- what value do these depositions have during

9    the summary judgment, and that's -- that's what Your Honor was

10   talking about, and I agree.  I mean the question is how do we

11   resolve these cases.  How do we know what the evidence is to

12   resolve the cases?

13             So if -- if the purposes are to actually address the

14   concerns, then that's what -- what's what should be the

15   purpose of the depositions.

16             I mean I -- I'm just saying this, Judge, you know,

17   because it is a conference, but I'm -- I'm looking at that --

18             THE COURT:  Okay.

19             MR. McCOY:  -- that deposition taken from that

20   perspective, and why, despite taking all these depositions in

21   cases, repeatedly we get summary judgment motions.  And I'm

22   not just talking about cases in your -- that you're handling

23   for our firm, but it goes on to basically all the cases that

24   I've done in asbestos and perhaps other areas, I guess, too.

25             You know, the -- the value -- if the plaintiff can

1    lay out as much as they can, that's valuable because we're

2    going to try to put out what we can, but at the end of the day

3    typically there are certain things that we didn't ask or

4    forgot to ask, especially if we're covering the multiple

5    jobsites in a 40-year period.  And so something's not asked in

6    the deposition, and then you end up where you need a

7    declaration or an affidavit to fill in the gap with summary

8    judgment.  So --

9              THE COURT:  Well, that might be.  That might be.

10             MR. McCOY:  Right.  And then we -- that's normally

11   what happens because -- because the defense is -- isn't going

12   to help you and say, "Hey, you didn't cover this point."

13   That's not in their interest.  They're going to just leave it

14   out of the questioning.  They're going to go through that on

15   pre-judgment motions.

16             THE COURT:  That might be, but I, you know, we -- I

17   can't make a judgment about that on a broad scale.  I mean

18   there's going to be individual particular circumstances on

19   each case.  I suppose there's some circumstances where that's

20   going to be accepted, but there's -- but all I'm saying is

21   that seems to me there's a risk, and I can't predict how it's

22   going to play out as far as Judge Robreno's concerned.

23             That's what each side needs to be concerned about

24   because I think this really is a matter of what -- what

25   happens at the summary judgment stage with respect to the --

1   the level of the quantity of evidence.

2        All right.  We're not -- I'm not going to do

3   anything to disturb the orders as the order now stands.  Those

4   scheduling orders are as they are, and I'm not going to make

5   any adjustments to them.

6        I, you know, it hasn't -- I haven't had it come to

7   me in any sort of more formal way.  Maybe Richard has asked

8   for that, asked for some other modification of the scheduling

9   order on some of these other dates, and I'm -- I'm not going

10  to order that.  If that's considered a motion, I'm not going

11  to order that.

12       But at the same time I would encourage you guys

13  to -- to look in some way to implement something that might

14  serve the interest of both parties with respect to getting

15  this lined up, and if you can, great.  If you -- if you can't,

16  then that's okay, too.

17       MR. McCOY:  Judge, I -- I speak because our interest

18  is in resolving the cases.  That's what our interest is,

19  resolving them, even without having to deal with summary

20  judgment motions in every single case.

21       So I -- I say that, and I'd like -- I certainly want

22  to discuss that issue with the defense if we can --

23       THE COURT:  Well, but I -- but I think -- I think

24  from what -- what I understand Richard's point is that if what

25  you want to do is resolve the cases, then you need to

1   determine.

2           If you don't -- if you know now, you need to tell

3   him, "This witness one, witness two, witness three, we have

4   reason to believe those witnesses are specifically going to

5   put the plaintiff's decedent within sufficient proximity to

6   your particular product that's going to, you know, make your

7   case," and tell him who those people are.

8           And if you're not going to -- you know, and if

9   you're -- if you don't know who that is as of now, you need to

10  find it out as quickly as you possibly can and tell him who it

11  is.  That's the way I would see it.  That's -- that helps move

12  the process along.  And I -- I --

13          MR. McCOY:  I -- I fully -- I fully agree, and the

14  only caveat I have on that is if the defense raises -- I

15  mentioned this the other day -- if the defense raises other

16  concerns that we the plaintiffs hadn't anticipated and other

17  contentions, ultimately, then we just need to know that we can

18  use the witnesses who might fill in the gap.  But I mean

19  that's just a caveat.

20          I think what Your Honor said, it should be the focus

21  of this and how we can resolve these cases.

22          THE COURT:  All right.

23          MR. McCOY:  That's -- what's what I see it.

24          THE COURT:  Okay.  Well, is --

25          MR. McCOY:  I --

1          THE COURT:  Is there anything further that the

2     defense wants to add to any of this?

3          MR. LAUTH:  No, Your Honor.  I think, honestly,

4     you've covered the points, including the reference to

5     interrogatories 19 and 20, and I think the defense will confer

6     and try and figure out the best way to see if we can

7     streamline this for ourselves and the Court and perhaps the

8     plaintiffs.

9          THE COURT:  Okay.  All right.  Thank you very much

10    then.

11         MR. McCOY:  Thank you.

12       (Proceedings concluded at 10:27 a.m.)

13                        *  *  *  *  *

1                    C E R T I F I C A T I O N

2

3

4          I, Tara Martin, court-approved transcriber, certify

5     that the foregoing is a correct transcript from the official

6     electronic sound recording of the proceedings in the above-

7     entitled matter.

8

9

10

11     _____          _____

12     TARA MARTIN                         DATE

13     DIANA DOMAN TRANSCRIBING