UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                        )   01-MDL-875
                              )
ASBESTOS LITIGATION,          )
                              )
                              )   Philadelphia, PA
                              )   August 1, 2012
                              )   4:50 p.m.


                 TRANSCRIPT OF TELEPHONE CONFERENCE
          BEFORE MAGISTRATE JUDGE DAVID R. STRAWBRIDGE
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For the Plaintiffs:      MICHAEL P. CASCINO, ESQUIRE
                         ROBERT G. MCCOY, ESQUIRE
                         ALLEN D. VAUGHAN, ESQUIRE
                         CASCINO VAUGHAN LAW OFFICES, LTD.
                         220 South Ashland Avenue
                         Chicago, IL 60667

For the Defendants:      DAVID SETTER, ESQUIRE
General Electric,        FORMAN, PERRY, WATKINS, KRUTZ
et al.                   & TARDY, LLP
                         Denver Financial Center
                         1775 Sherman Street
                         Suite 1900
                         Denver, CO   80203

For the Defendants:      JENNIFER N. STUDEBAKER, ESQUIRE
Asten, Industrial        FORMAN, PERRY, WATKINS,
Holdings, Unifax,        KRUTZ & TARDY, LLP
Owens-Illinois,          City Centre
Uniroyal, etc.           Suite 100
                         South Lamar Street
                         Jackson, Mississippi 39201

For the Defendants:      CAROL PERKINS, ESQUIRE
Union Carbide Corp.      HEYL ROYSTER
and CertainTeed Corp     Suite 600
                         Chase Building
                         124 S.W. Adams Street
                         Peoria, IL   61602

EXHIBIT
28

(Appearances continued)

```
For the Defendants:        KAITLIN N. CHENEVERT, ESQUIRE
Proctor & Gamble,          SWANSON, MARTIN & BELL, LLP
Commonwealth Edison        330 North Wabash Street
                           Suite 3300
                           Chicago, IL  60611


For the Defendants:        SEAN P. FERGUS, ESQUIRE
John Crane and             O'CONNELL, TIVIN, MILLER &
Cleaver-Brooks             BURNS, LLC.
                           135 South LaSalle Street
                           Suite 2300
                           Chicago, IL  60603


For the Defendants:        WILLIAM L. SHENKENBERG, ESQUIRE
Riley Power, Inc.          MALLERY & ZIMMERMAN, S.C.
                           731 North Jackson Street
                           Suite 900
                           Milwaukee, Wisconsin 53202


For the Defendants:        MICHAEL W. DRUMKE, ESQUIRE
Georgia-Pacific            BRIAN J. HUELSMANN, ESQUIRE
                           HEPLER BROOM, LLC
                           150 North Wacker Drive
                           Suite 3100
                           Chicago, Illinois 60606




Audio Operator:            MILAHN HULL

Transcribed by:            DIANA DOMAN TRANSCRIBING
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026-0129
                           Office:  (856) 435-7172
                           Fax:     (856) 435-7124
                           E-mail:  dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

1                          I N D E X

2                                                    PAGE

3        Telephone conference                    4

4

5

Colloquy                                                    4

1       (The following was heard in open court at 4:50 p.m.)

2              THE COURT:  Counsel, good afternoon.  It's just

3    Strawbridge.  Let me confirm the role.  Allan Vaughan, Mike

4    Cascino, Bob McCoy.

5              MR. CASCINO:  Yes, Your Honor.

6              THE COURT:  Dave Setter, Danny Mulholland, Kaitlin

7    Chenevert, Brian Huelsmann, Carol Perkins, and Bill

8    Shenkenberg.  Anybody whose name I did not call?

9              MS. STUDEBAKER:  Yes, Your Honor.  This is Jennifer

10   Studebaker.

11             THE COURT:  Ms. Studebaker.

12             MR. DRUMKE:  Good afternoon, Your Honor.  It's Mike

13   Drumke.

14             THE COURT:  Good afternoon, Mr. Drumke.  Anybody

15   else?

16        (No audible response)

17             THE COURT:  Okay.  Let's talk first of all about the

18   Sadek, Anderson, and Schonfeld issue.  I want to tell you what

19   my intention is, and then I will give you an -- a brief

20   opportunity to react, if you care to do so, and it is my -- and

21   I will then -- I think then I will have to, you know, enter an

22   order that will reflect all this, which we'll work on, probably

23   get entered some time tomorrow.

24             Having been through what I have seen from both sides,

25   and I guess the most robust one from Mr. Setter with respect to

1     the implications of the A012 orders and the -- and the other

2     voluntary dismissals by the plaintiffs, I -- I think, frankly,

3     I'm concurring with what I believe has been the collective

4     judgment with some modification of all counsel that the

5     continuing to pursue the SOS -- the SAS limine question in the

6     fashion that we have been doing it does not make as much sense

7     as it did a year ago and even perhaps a month ago.

8           So accordingly, I will enter an order that will --

9     will vacate those aspects of the SAS scheduling order, and I

10    need to be careful, because I've got to look at it real

11    carefully but to vacate -- to vacate the essence of it, at

12    least with respect to the necessity for filing this motion on

13    August the 10th, which is the next deadline.  I think I

14    indicated it was likely I was going to do that anyway, and the

15    necessity for a hearing on August the 25th, and, you know,

16    those other things that we had in the scheduling order

17    pertaining to it.

18          But I will -- I'm not prepared to agree with the

19    suggestion that has been made by the defendants with respect

20    to, as I -- as I read it, kind of instead of discontinuing this

21    operation, just pushing it back for a period of about six weeks

22    and deferring an SAS motion until some time in November.  That

23    would play out into the new year, and I believe that the

24    appropriate way to do this now and the most efficient way with

25    respect to dealing with motions for summary judgment, although

1    it may require some modification, which is why I want to tell

2    you about this before I put it down into an order, is to have

3    any remaining challenge with respect to Sadek/Anderson -- or

4    Schonfeld and Anderson.  I got the implication, at least Mr.

5    Setter feels that Sadek is not part of this anymore, but in any

6    event, that have that be done in the normal context or normal

7    for these MDL asbestos cases, which is that the issues would be

8    teed up as part of the motion for summary judgment, which would

9    constitute a challenge to a causation expert.  So it would be,

10   in effect, you'll think of it as a motion in limine, but as --

11   as we've been trying to relate here, these -- these motions or

12   these issues that challenge the experts will be done in the

13   context of an individual's -- individual motion for summary

14   judgment.

15           Now, I see that there might be some -- there is a

16   couple questions, I think, that would -- one would need to

17   address with respect to that, and among the first, of course,

18   would be that there are already pending and filed motions for

19   summary judgment, and because of the -- some of the uncertainty

20   with respect to this and then the recent order that we've

21   entered with respect to the necessity for joinders, that we

22   would -- were inclined to require that supplemental motions for

23   summary judgment be filed that would address just this issue as

24   a -- as an additional basis for summary judgment if that's what

25   defendants feel they -- they want to do, and I would have them

1    be -- require that they be filed in whatever few cases there

2    are in CVLO-1 and 2, and I guess it impacts 3 and the top --

3    whatever is in the top 10, a couple in the top 10, I think, and

4    have them filed by the 10th of August.

5           Now, I would have thought that there would be some

6    way in which there might be the opportunity to do some form of

7    consolidation with respect to that and probably aspects of what

8    it is that the defendants wanted to say and how the plaintiffs

9    might want to respond that are going to take in more universal

10   concepts and take in things that you've now -- whatever you've

11   now all learned by way of the discovery that's been undertaken,

12   but to the extent that discovery has been -- has been -- has

13   been undertaken as of now, has been completed as of now, it

14   seems to me that it's -- it's something that you ought to be

15   able to do in connection with the August end date.   I'm

16   thinking about whether or not it has any implications with

17   respect to any other experts and finishing expert reports,

18   which it may, and I don't know about that.

19          But that's the -- that's the general way in which we

20   would intend to proceed.   Let me also say, because it is a

21   connection with this, but it's a separate topic, is having

22   given consideration to the various proposals that were

23   discussed and you guys have discussed that arose out of the

24   July 13th meeting, I think that there is -- well, there is --

25   while I do think that there is potentially some rational for

1   making some adjustments in the schedule that Mr. McCoy has

2   recommended to us, I've become convinced that -- that the --

3   the benefit that the plaintiffs might be able to get with some

4   adjustments is a benefit that they could still achieve based

5   upon or still could achieve in connection with the discovery

6   process that are now set out, and I'm concerned about the

7   disruption of scheduling orders that have been in place now for

8   -- for some time.

9           So I am -- I'm not going to make any adjustment to

10  the scheduling orders, and although that was never -- that's

11  not part of a current motion in front of me that has been

12  discussed, and I will enter an order that will at least reflect

13  that this issue come up, and it has been informally briefed,

14  and I've been -- each parties have had an opportunity to

15  present what they wanted to present, but we are -- we're not

16  going to make any adjustments into the current schedule.

17          So those I think were the two principal topics that

18  we were asked to address today, and that's my view.  Now, I'll

19  give anybody who wants to step forward and have any -- make any

20  comment about any of that or question about any of that, now is

21  your time.

22          MR. MULHOLLAND:  Your Honor, this is Dan Mulholland.

23  In addition to the -- what we submitted to the Court, or Mr.

24  Setter did, a proposed order at the end of last week which

25  reflected that I think the premise for this entire discussion

1    about the SAS cases, that is, that -- that CVLO had withdrawn

2    the Schonfeld, Anderson, and Sadek A012 reports in the 17

3    pending cases, and had withdrawn Sadek as an expert --

4              THE COURT:  Right.

5              MR. MULHOLLAND:  -- and that CVLO had replaced the

6    Schonfeld, Anderson, and Sadek A012 reports in the 17 pending

7    cases --

8              THE COURT:  Right.

9              MR. MULHOLLAND:  -- new expert reports.  Those --

10   those two things -- if those are not -- if those do not

11   accurately reflect the state of affairs, then we need to be

12   having an entirely different discussion.  I believe, however,

13   they do accurately reflect the state of affairs, but that they

14   are now expressly reflected in the record, and we prepared the

15   order to memorialize that state of affairs so that we will not

16   have to -- there won't be any doubt about it as, you know, in

17   the future, because again, it's fundamental.  We -- we've got

18   to -- we need to go in one of two directions at this point

19   depending upon whether those things are true, and we think they

20   are true, and if we're not -- if they're not, we need to know

21   about it.

22             So my two cents worth is that whatever the schedule

23   is going forward regarding, you know, motions in the remaining

24   cases, we need to memorialize where we are today and, in

25   essence, how we got there, we think our order neutrally and

1   accurately does, so that there won't be any question about it.

2          THE COURT:  Well, I hear what you say, Mr.

3   Mulholland, but I'm not sure that I understand the need for it.

4   What we're -- what we're -- what we're -- I mean, isn't it the

5   case that what we're dealing with is that if you have motions

6   that you want to file with respect to Sadek, Schonfeld, and

7   Anderson, presumably, you're doing that because you have

8   learned that whatever new information has been provided to you,

9   that they are still going to be witnesses, there are causation

10  reports, whatever it is that they have, which has been provided

11  to you presumably by way of discovery, by way of expert

12  reports, whatever it is that they've done, which is all done or

13  should have been done in connection with the -- all the cases

14  up until -- well, certainly, CVLO-1 and 2 and CVLO-3, I

15  believe.  All the deadlines for all that business has -- has

16  passed, and if they don't have anything in there with respect

17  to those witnesses or those experts, then they're not going to

18  be able to use those experts.  If they have something in there

19  with respect to those experts, they are going to have to rely

20  upon what it is they have they're going to rely upon, and if

21  you choose to challenge it, then you challenge it.

22          So I'm not --

23          MR. MULHOLLAND:  Your Honor --

24          THE COURT:  And we are going to reflect a little bit

25  of a history.  It would be my intention to reflect a little bit

1   of the history, but I'm just not --

2                   MR. MULHOLLAND:  Well, to put a finer point on it --

3                   THE COURT:  Go ahead.

4                   MR. MULHOLLAND:  -- we have time and again had to

5   come to this Court and reargue and reargue points that have

6   already been ruled upon.  Within the last week, I believe, this

7   Court has entered an order to the effect that a position taken

8   by Cascino Vaughan had already been resolved by the Court in a

9   prior order.

10                  So I can easily imagine a circumstance a month down

11  the road, six months down the road, maybe in a transferor Court

12  where these A012 reports from Schonfeld, Anderson, and Sadek

13  resurface as the operative document and we'll say well, no,

14  they're gone, they were withdrawn, and then they'll be an

15  argument, no, they weren't withdrawn, and then the question

16  will be were they withdrawn or were they not withdrawn, and

17  we're all operating on the premise now that they have been

18  replaced.

19                  If that's true, then there should not be any big step

20  to make that part of the record.  We need that part of the

21  record, or we're going to have this issue -- we're going to

22  have to revisit this issue in the near mid-term or long-term

23  future.  That's my simple point, and history proves that that's

24  going to happen.

25                  THE COURT:  Well, Mr. Mulholland, as you probably

Colloquy                                    12

1    have observed, I find it quite a challenge to try to do my best

2    to keep on top of this with respect to things that have, in

3    fact, already happened and make rulings based upon them, and

4    now you're asking me to try to do something that reflects

5    something with respect to history with respect to some kind of

6    a confirmation that you now want as to something that has not

7    yet happened and may or may not happen in the future.

8            That's the way I'm hearing what you're asking me to

9    do.  I --

10           MR. MULHOLLAND:  Absolutely not, Your Honor.

11           THE COURT:  I don't know how I can --

12           MR. MULHOLLAND:  I'm asking you to -- to confirm --

13   to -- so that we can have a confirmation in the record of

14   something that has already happened, and if the plaintiffs step

15   up and say well, no, that hasn't happened already, then we need

16   to know that, and the Court needs to know that.  We need to

17   know it on this telephone conference.

18           THE COURT:  You -- just -- first of all, kind of

19   lower your temperature a little bit, if you don't mind.  What

20   is it that -- I mean, give me a specific example of what you

21   think has been represented that you're afraid might change.

22           MR. MULHOLLAND:  The two things that I mentioned,

23   paragraphs 6(c) and 6(d) in our proposed order.  I can read

24   them again and I'm happy to read them again, but I assume you

25   have the order there before you.

1          THE COURT:  I do.  Hang on a minute.  Let me just

2    grab it.  Yeah.  All right.  So -- so in paragraph 6, you

3    reflect that Judge Robreno dismissed a number of cases.  Okay.

4    What --

5          MR. MULHOLLAND:  Paragraph 6(c), paragraph 6, sub

6    paragraph (c).

7          THE COURT:  6(c), CVLO is withdrawn, those A012

8    reports in 17 pending cases, and -- okay.  And -- and just --

9    just give me -- because shame on me for being stupid, but the

10   basis for that statement that you have made, is it in a written

11   form?  What's the specific -- what's the specific basis for

12   that statement?

13         MR. MULHOLLAND:  Well, there -- we had a hearing last

14   week, and you asked that question I believe to Mr. McCoy during

15   that hearing, and I believe that Mr. McCoy confirmed that

16   during the hearing, that those reports had been withdrawn and

17   replaced by the new reports, but that -- that's not reflected

18   elsewhere in the record, and a stranger to this record, as a

19   transferor Court would be, would have a very difficult time

20   parsing all that out.

21            Now, if those reports had not been withdrawn, that

22   is, if that is really an issue, then we need to be filing a

23   Daubert motion on August 10th.  If, however, they have been

24   withdrawn, then no Daubert issue is necessary, but we need to

25   know what the state of affairs is so we don't have to revisit

Colloquy                                          14

1    the issue down the road.

2            THE COURT:  All right.  You're -- you say that they

3    have withdrawn Schonfeld, Anderson, and/or Sadek A012 reports

4    in the 17 pending cases and had withdrawn Sadek as an expert.

5    All right.  Now, the 17 pending cases that you're talking

6    about, what -- what -- which group of CVLO cases are those 17

7    cases in?  What's your understanding of that?

8            MR. MULHOLLAND:  They were 17 of the 50 SAS cases.

9    They're listed on Exhibit B to the order we provided to you

10   last week, proposed order we provided to you last week.

11           THE COURT:  Yes.  Yes.

12           MR. MULHOLLAND:  They are the ones that they did

13   replacement reports in.

14           THE COURT:  Yes.  Okay.  And they were spread through

15   -- what I'm trying to get to is I'm -- I want to -- I need to

16   relate this to the scheduling orders.  Are these 17 pending

17   cases in scheduling orders where the discovery is still open?

18           MR. SETTER:  Your Honor, Dave Setter.  I believe they

19   are.

20           THE COURT:  Okay.  So you're telling me now that

21   you're concerned that in some of those cases, even though they

22   say they -- they are -- they say they withdrew the reports and

23   you want them to confirm that now, you're concerned that they

24   might come back and refile the reports or file some other

25   report within the discovery period within which they would be

1    permitted to do it in CVLO-7.  Is that what your concern is,

2    Mr. Mulholland?

3                 MR. MULHOLLAND:  Actually, what my -- that's one of

4    them, but another concern will be, well, you know, I can hear

5    this argument at some point being made down the line by CVLO,

6    something along the lines of well, you know, these reports are

7    no -- are no secret, they never were a secret to anybody, we

8    submitted them in response to A012 and they've been there, and

9    so we just don't really know what you're talking about when you

10   say they've been withdrawn.

11                THE COURT:  I don't understand this.  You know, I've

12   got to tell you, Mr. Mulholland, I'm --

13                MR. MULHOLLAND:  Your Honor, let me try again,

14   because --

15                THE COURT:  I'm puzzled by this.

16                MR. MULHOLLAND:  -- there is not --

17                THE COURT:  I'm puzzled by this.  Look --

18                MR. MULHOLLAND:  This is a real risk.

19                THE COURT:  Look.  Look.  Look.  Wait a minute.  Wait

20   a minute.  Let me try again.  Let me try again.  What I'm

21   saying is if you have some reason that you believe that Sadek,

22   Anderson, whatever it is that you want to do with respect to

23   those particular experts need to be the subject of a motion in

24   limine, then you file your motion in limine in the context of a

25   motion for summary judgment in a particular case.  That's -- I

1    think that's relatively simple.

2            And sure, if, in fact, Mr. McCoy said something a

3    week ago with respect to what his -- what he was -- what he was

4    doing at that point and these things were withdrawn and you've

5    relied upon that to some extent and he goes back on that for

6    some reason, we'll deal with that, but you're asking me to deal

7    with this in too much of a hypothetical that I am unable to

8    fathom as to how I'm supposed to construct some kind of a

9    response.  That's my difficulty.

10           If you want me to ask Mr. McCoy whether or not he

11   intends to be bound by a statement that he was withdrawing

12   Sadek and Anderson reports in 17 cases as you set out in your

13   proposed order, I will ask him.  Mr. McCoy, is that something

14   that you still intend to do, and is that what you meant when

15   you said it?  Is he on the line?

16           MR. MCCOY:  I don't have -- Judge, yes.  I don't have

17   the context of the statement in front of me.  Whatever was said

18   back then, I mean, we stand by that statement, whatever context

19   it was in.  Sure.  We stand by it.

20           MR. CASCINO:  Well, Your Honor, this is Mike Cascino.

21   I'm not sure if I -- I thought that at least from reviewing

22   notes from the meetings, that that referred to these 17 cases.

23   I don't think we can -- I think what the other sides wants is

24   that we cannot say that Dr. Sadek is able to be used for A012

25   purposes.  That's what I think they're -- they're saying, and,

1    you know, no.  If there is an A012 motion coming up in the

2    future and Dr. Sadek did a report, we're going to rely upon it.

3                THE COURT:  No.  No.  No.  No.  No.  No.  No.  No.

4    No.  No.  No.  No.  No.  No.  No.  Let's --

5                MR. CASCINO:  A012 purposes.

6                THE COURT:  Let's distinguish A012 from the expert

7    reports.  The A012 period is over and done with.

8                MR. CASCINO:  Right.

9                THE COURT:  What is in the A012s is in the A012s.

10   Judge Robreno has made --

11               MR. CASCINO:  Right.

12               THE COURT:  -- quite a few rulings.  To the extent --

13   yeah.  That's all been resolved.  What I'm talking about --

14               MR. CASCINO:  I -- I agree.  I was just saying in

15   terms of those future -- I don't know if there is another A012

16   ruling coming down -- you know, coming down the road in the

17   future, you know, but -- but -- you know, and we'll have Judge

18   Robreno -- if he wants to rule against them, he rules against

19   them.

20               THE COURT:  My -- my understanding is that all of the

21   outstanding A012 motions have been ruled upon.  Is that

22   consistent with your understanding, Mr. Setter.

23               MR. SETTER:  I believe that is the case with the

24   exception of maybe five or six that are pending, five or six

25   cases.

1          THE COURT:  All right.  Well, I think we thought that

2     they were all done, and maybe if there are five or six, they

3     just might be ones that were missed.  I'm not sure, but I

4     thought they were all done.

5          But -- so Mr. Mulholland, are you -- you're -- if

6     you're talking about something that they might do with respect

7     to the implications of A-12, that's one of the reasons why I'm

8     a little bit puzzled, because that's all history, and if they

9     -- they're not going to be able to -- they won't be successful

10    if they try to do anything with respect to the A012s.  All

11    those motions have been decided and ruled upon.

12         MR. MULHOLLAND:  I'm not -- that's not at all what

13    I'm talking about.

14         THE COURT:  Well, either --

15         MR. MULHOLLAND:  What I'm talking about is neither

16    ethereal or hypothetical or any of that.  I'm trying to

17    memorialize an event, which I think has already happened,

18    because it's not otherwise memorialized in the record, and

19    might therefore, be a question for some Court, either this

20    Court or a later Court down the road.

21         It's not a hypothetical.  It's an event that's

22    already happened.  It's, in fact, why we're here today, and the

23    reason we're here today is we all think that things have

24    changed with respect to the SAS issue.

25         THE COURT:  Well --

1          MR. MULHOLLAND:  Although, frankly, the plaintiffs

2   have -- I'll be quiet if you want me to.  I've said this

3   already, but the -- because the plaintiffs have filed

4   replacement reports.  If things haven't changed, we need to

5   know that, and either way, we need to memorialize --

6          THE COURT:  I don't understand.

7          MR. MULHOLLAND:  -- I believe, I submit to you, what

8   has happened.  Already, not theoretically, not hypothetically,

9   but in the past, what has happened.

10         THE COURT:  If they filed -- if they -- if they -- if

11  they say that they've withdrawn the reports and they've

12  submitted substitute reports, what is it you want?  You want

13  them to -- you want them to fall on a sword and make some kind

14  of a confession?

15         I don't -- I don't get the point of this.  Frankly, I

16  think it's -- it's -- I just don't get it.  I don't understand

17  why you're so upset about something which you've essentially

18  prevailed upon.  I don't get what you want.

19         MR. MULHOLLAND:  Okay.  I want that statement.

20  That's nowhere -- it's implicit in the record.  One can deduce

21  it from the record, perhaps.

22         THE COURT:  Well, then deduce it.

23         MR. MULHOLLAND:  It's nowhere explicit in the record.

24         THE COURT:  Then deduce it.  If you can deduce it,

25  deduce it.  I -- I like -- I likewise will likely deduce it,

1    but you're not -- you want to ask Mr. McCoy.  Mr. McCoy

2    responded by saying he wants to -- you know, he doesn't know it

3    in the context of what it was, but whatever it is, it is.  I

4    just don't -- I just don't get it, and I don't know, frankly,

5    how you've got me off on this sort of -- I see it kind of a

6    side question.  I don't see the centrality of that to this

7    issue.

8            Explain to me why that's central to this issue.  What

9    is it -- what is it that you're afraid of?  You're afraid that

10   he's going to come forward with some new and different report

11   or try to come back and say I'm going to put this report now in

12   as an expert report in a later case?  Is that what you're

13   concerned about?

14           MR. MULHOLLAND:  It can be either, but it can

15   certainly be the latter of the two.

16           THE COURT:  So you're concerned that maybe a report

17   that he said he --

18           MR. MULHOLLAND:  Withdrawn.

19           THE COURT:  Yeah.

20           MR. MULHOLLAND:  And then we'll have to go back --

21   then the argument will be well, were they ever withdrawn, and I

22   -- we'll say, well, you can look at the records --

23           THE COURT:  Well --

24           MR. MULHOLLAND:  -- and if you piece together all

25   these things and these conferences, perhaps, yeah, you can

1    conclude that they were withdrawn, but all I want is an

2    explicit statement of that.

3              THE COURT:  Well, look -- look, let's not -- let's

4    not dance around this.  Are you -- I hear you to say that so

5    many of these cases fit within CVLO-7.  There is a -- there is

6    -- there is a -- the discovery is still open in that particular

7    case.  They have an opportunity to submit expert reports.  Are

8    you saying that hypothetically, you could see some or -- one or

9    more of these reports filed in -- as expert reports in a CVLO-7

10   case, and you don't want to have to deal with it at that time?

11   Is that what you're saying?

12             MR. MULHOLLAND:  That's one of the things I'm saying.

13             THE COURT:  Okay.  So I --

14             MR. MULHOLLAND:  The other circumstances where these

15   reports could -- they could be -- they could resurface.

16             THE COURT:  How so?

17             MR. MULHOLLAND:  Okay.  Let's suppose we're six

18   months down the line in a transferor Court ready to try one of

19   these 17 cases.

20             THE COURT:  Yeah.

21             MR. MULHOLLAND:  And -- and up pops the we think

22   withdrawn Schonfeld report.  That's offered as an exhibit.  We

23   would say well, oh, no, that's not right, because that report

24   was withdrawn.

25             THE COURT:  Well, what's -- what's the circumstance

Colloquy                    22

1    under which it's -- it's been resubmitted?  What do you --

2    what's your -- in your hypothetical?  Is it what -- is it

3    what --

4            MR. MULHOLLAND:  That's in the context of a pretrial

5    order listing exhibits in a case down -- in a transfer -- in a

6    transferred case down the road.

7            THE COURT:  All right.  Well, okay.

8            MR. MULHOLLAND:  Here is my -- here is -- here is --

9    the question I want to ask back is if, in fact, they have been

10   withdrawn, then what's the problem with saying that --

11           THE COURT:  No.

12           MR. MULHOLLAND:  -- in the record?

13           THE COURT:  Right.  Right.  You know -- you know, I

14   think part of the problem with saying that is that you're

15   asking them to say it by sticking his face in the mud, and

16   frankly, maybe he doesn't want to do it that way.  If you've

17   got what you got, you got what you got, but I -- I had -- I

18   also understood this the way that you have articulated it, but

19   I don't know -- I didn't go back and go through, you know, with

20   precision.  The assumption I made I think is the assumption

21   that you made, which is an assumption that with respect to

22   those particular 17 reports, I assume they considered that

23   those reports had certain deficiencies in them, and they were

24   seeking to have them withdrawn.

25           Now, I would also -- I also understood that there

1    were -- it was implied to me, and I think it was implied to

2    you, and I think Mr. Setter made some previous reference to

3    this in last calls that they perhaps had further examinations

4    from Dr. Schonfeld or from Dr. Anderson, there was something

5    more that they had, they had more robust reports, it was built

6    up, something was -- happened, something happened, and that,

7    you know, you will deal with that as an expert causation report

8    in the case if they're properly filed in the -- in the, you

9    know, CVLO-6, CVLO-7, CVLO-5, the ones that have yet to come

10   forward, and then you're going to have to deal with that, and

11   if you think that those reports are such and the background of

12   those reports are such that they -- they can and they should be

13   challenged, then you mount your challenge.

14          MR. SETTER:  Your Honor, Dave Setter.  Just a couple

15   things that may help a little bit on this.  I do believe in the

16   transcript that we have on the 23rd, you did ask Mr. McCoy

17   specifically that -- something to the effect that -- I'll

18   quote.

19          "You file new reports [this is you].  You know, maybe

20   without saying so directly, you want the defendants and the

21   Court to understand that you are withdrawing those reports

22   which had earlier been filed in support of A012 or in any other

23   purpose you would have presented them."

24          Mr. McCoy responds, "Causation reports, yes."

25          And I think we just are trying to articulate that in

Colloquy                              24

1    your order to that effect, that, in fact, those reports that

2    relied on Schonfeld and Anderson that were submitted as part of

3    A012 or for any other purpose are withdrawn.

4               THE COURT:  Okay.

5               MR. SETTER:  I think that's -- that's clear.

6               THE COURT:  Well --

7               MR. SETTER:  The other point I would raise is --

8               THE COURT:  -- apparently -- apparently, your

9    partner, Mr. Setter, doesn't think it's clear.  Your partner

10   wants --

11              MR. SETTER:  I think that is clear on that point, and

12   Mr. McCoy should hopefully agree to that.

13              THE COURT:  Well, it sounds like he already did.

14              MR. SETTER:  With respect to your proposed order, I

15   would note that CVLO-3 expert reports are not due from

16   plaintiffs until August 13th.

17              THE COURT:  Okay.

18              MR. SETTER:  I believe on the top ten cases, they are

19   not relying upon the causation reports for Schonfeld or

20   Anderson.  We went through that in the last hearing as well as

21   CVLO-1 and 2.  Mr. McCoy I believe at that point confirmed that

22   they were not relying upon Schonfeld/Anderson/Sadek causation

23   reports in the CVLO-1 and 2 cases.

24              So I think with respect to the SAS cases, the 50

25   cases that have been dismissed or reports have been redone and

1    the top ten cases in CVLO-1 and 2, the A012 reports for

2    Schonfeld, Anderson, and Sadek have been withdrawn, and I

3    believe that's the state of the record, and I would state that

4    I believe the issue with respect to the use of those A012

5    reports going forward for groups 3, 4, 5, 6, and 7, unless

6    they're covered as part of SAS-50 will have to be determined at

7    the time that the plaintiffs identify their expert reports.

8              THE COURT:  Yeah.  I agree with that.  I agree with

9    that, and I have not -- your -- your proposed order was

10   submitted about a week -- well, let's see, about -- well, I

11   guess on --

12             MR. SETTER:  On Friday.

13             THE COURT:  Yeah.  Last Friday.  Okay.  So it's five

14   or six days ago, and I have not gotten anything from the

15   plaintiffs that have -- anything back, any further comment back

16   upon it to -- to challenge it or to contradict it or, you know,

17   whatever.

18             My question only -- my issue only is -- is I just

19   don't know -- I just don't know, and frankly, I'm a little

20   disturbed about some of the -- I'm going to characterize it.  I

21   don't see it as anywhere near the significance that Mr.

22   Mulholland does obviously, but, you know, it is -- it is what

23   it is, and I don't like being lectured to by counsel with

24   respect to some of the precise stuff that needs to be in an

25   order that we told you we are about to enter just to get a

Colloquy                                              26

1    general reaction.

2             That's my judgment, and -- but I will make an effort

3    to try to address some aspect of this in some fashion in

4    connection with the order, and I do see that there is certainly

5    a possibility that you may have to face a -- a report from

6    Schonfeld and Anderson that deals with certain plaintiffs in

7    some of the later cases, and they may well have been related to

8    or, you know, something with the A012 reports.  I don't know

9    the answer to that, but if they're beefed up and they're more

10   substantial, then, you know, they are what they are.  You know,

11   your -- I'm just -- there is not much more I can say.

12            What I'm more interested in is whether or not -- what

13   you see with respect to the management of this, and, you know,

14   because we -- because -- because we -- I'm not sure that

15   everybody was on the exact same wave length as to exactly what

16   you -- what we all saw about how this limine motion would go

17   and how is that impacted by this change in the scheduling

18   order.

19            I'm doing my best to try to conform this to a way

20   that gives everybody an opportunity to tee up the important

21   limine issues that go directly to causation that would be very

22   relevant for summary judgment, and I am not -- and I'm not

23   going to do it as a separate limine motion, because that's not

24   the way Judge Robreno wants to do it for good and sufficient

25   reason.  We have to deal with different kind of management

1    issues in MDL litigation.  So we're going to do it in the

2    context of the summary judgment.

3            Now, what I would envision would be -- and I haven't

4    talked to Judge Robreno about this, but what I would envision

5    would be that if you raise a particular motion with respect to

6    Schonfeld or Anderson, you have a broad breadth of -- a

7    substantial breadth of discovery that you obtained as a result

8    of -- as a result of the more expansive discovery that you are

9    permitted to undertake in connection with this process.  That

10   discovery has been completed.  You have opportunity to assemble

11   it and do whatever it is that you do, and it may well be that

12   the questions that you may want to raise with respect to these

13   gentlemen are questions which would have to be resolved at a --

14   at a hearing, and it may well be that Judge Robreno would want

15   to conduct a hearing with respect to it.  He may feel that he

16   doesn't need to.  He may want to react to it based upon

17   affidavits.  He may want to do a hearing himself.  He may want

18   to refer the matter to me to do a hearing.  I don't know

19   exactly how he's going to want to handle that, but what I do

20   know is that he was -- he came to be convinced and satisfied

21   with setting apart this SAS issue based upon the determinations

22   that we made back last fall and to the extent that the volume

23   and the quantity of cases does not seem to justify that process

24   now, we're going to go back and deal with the new reality, and

25   the new reality puts us to where we would otherwise be with

1    respect to any other expert and with respect to any other

2    significant causation related issue that would normally be a

3    limine issue will be a limine issue in the context of the

4    filing for motions for summary judgment, and that's the way

5    that I see it.

6            Now, you -- you want to -- you want to -- some of the

7    predicates that you have in here, I don't -- I don't know that

8    I saw them as -- I think they're worthwhile as background.

9    They describe some of the history.  You want to get something

10   to me to -- frankly, I don't -- do we have the transcripts of

11   the -- of the last session?  Okay.  You want to direct me to

12   the particular context of the information that has Mr.

13   Mulholland so concerned, you -- you do that, and I'll make

14   determinations whether I want to do anything with it specific

15   or not.  My instinct is I don't think it's necessary, but that

16   doesn't -- you know, whatever -- whatever Mr. McCoy said he

17   said, and however it's going to be dealt with in a subsequent

18   case, you know, that's the future.

19           Is there anything other -- any other specific aspect

20   of this, Mr. Setter or Mr. Mulholland, you want to bring to my

21   attention on this point?

22           MR. SETTER:  Your Honor, no.  I just did point out

23   that -- that the timing dates in terms of the expert reports on

24   -- under the other scheduling orders, in our proposed order, we

25   try to comply with that to make it consistent with the other

Colloquy                          29

1     scheduling orders, and --

2               THE COURT:  Yeah.

3               MR. SETTER:  -- hopefully, that -- that was done in

4     terms of when they have to produce their expert reports.

5               THE COURT:  Yeah.  I understand that.  I understand

6     that, and we'll -- we will -- we will do that.

7               MR. SETTER:  And I think in reality, we need to hear

8     from the plaintiffs.  I think it's true that we don't have this

9     issue with respect to the top ten cases and CVLO-1 and 2, and I

10    believe we had that concession by Mr. McCoy last time.

11              MR. CASCINO:  Your Honor --

12              MR. SETTER:  So we're dealing with CVLO-3 cases on.

13              MR. CASCINO:  Your Honor, this is Mike Cascino.  It

14    has to be done a case-by-case basis, and I don't know what the

15    case-by-case basis is without the specific case in front, but I

16    can tell the Court that there are now instances where Dr.

17    Schonfeld has gone back and after having done the hands-on

18    physical on the person, you know, three, four, five, or ten

19    years ago, he's now gone back and he's done full, you know,

20    reports on them and relying on his -- on -- as an expert, and

21    one of the things he does rely upon, I believe is -- is his

22    prior examination that he did of the person when he is making a

23    new causation letter for a particular case.

24              THE COURT:  All right.

25              MR. CASCINO:  So, again, my point is that you can't

1    just like, you know, throw out -- say that this applies in all

2    these cases.  It has to be a case list.  I mean, you know, and

3    it is what it is what it is, and, you know, that's -- and the

4    same thing with Dr. Anderson.  Dr. Anderson is doing some of

5    the new causation reports, and he may refer to his old reports.

6    I'm not sure, but he may refer to it as well.

7          So it's -- technically, it's not really withdrawn.

8    It's simply that, you know, he's going further as an expert,

9    making a causation that's going to be acceptable, you know, to

10   the Court.

11         THE COURT:  Right.  Well, you know, as a matter of

12   fact, Mr. Cascino, that -- I appreciate that and I understand

13   that, and I agree with you that that would be -- likely would

14   be permissible to do, and I also agree with you that whatever

15   information previously he had he may wish to rely upon, and

16   maybe that's -- you know, I'm not so sure what Mr. Mulholland

17   had in mind beyond that or if his effort was to try to have

18   those particular experts precluded even from having

19   supplemental reports, and I didn't flush that out.  Mr.

20   Mulholland, if that's what you're intending, that's not -- that

21   would not be appropriate in my view with respect to the -- to

22   the subsequent cases.

23         So maybe having heard that, I understand a little bit

24   better maybe where this is going.  All right.

25         MR. MULHOLLAND:  I, of course, never have said that

1    and never have taken that position nor did our proposed order

2    take that position nor do I think that would be right.

3            THE COURT:  Good.  Okay.  So --

4            MR. CASCINO:  Your Honor, I'm -- this is Mike

5    Cascino.  On the Daubert issue, I mean, right now, we complied

6    with the Court's order, and we got in our two experts or

7    whatever we're relying upon on July 16th.  Our -- our -- the

8    Court had indicated something earlier in the call.  Are they to

9    file their Daubert -- continue to be filing their Daubert

10   motions on August 10th, and are we staying with the scheduling

11   order that the Court previously made, which is what the

12   plaintiffs' position is?

13           THE COURT:  No.  I think I've -- I didn't -- well, I

14   didn't realize that was the plaintiff's position, but -- and

15   nonetheless, the answer is no.  I've already said there is no

16   justification in my mind for continuing the -- the SAS

17   scheduling order the way in which it has presently been

18   drafted, but the -- these motions will be dealt with in the

19   context of individual cases and in the context of individual

20   scheduling orders, and -- but --

21           MR. CASCINO:  So --

22           THE COURT:  -- but they're -- but to the extent that

23   there are -- there are motions for summary judgment that have

24   already been filed and are already -- that are pending, that we

25   are going to enter an order that will require those motions for

1    summary -- summary judgment to be supplemented to the extent

2    that in any of those cases, the defendants -- you folks are

3    relying upon Schonfeld and Dr. Anderson, and you folks -- and

4    the defendant feels that they're unreliable in connection with

5    whatever reports they did in those cases, they will be directed

6    to file motions for summary judgment with -- to supplement

7    their motions for summary judgment to reflect that position.

8    Is that clear enough?

9              MR. CASCINO:  And I don't mean to be a pest, Your

10   Honor.  So those are -- they'll file those on whatever group of

11   cases there are that those apply to on August 10th, and we'll

12   have our 21 days to respond to that as the prior scheduling

13   order permitted?

14             THE COURT:  Yeah.  Probably.  I'm not -- I'm not -- I

15   want to take a look at that.  I'm not -- I think if it was 21

16   days, that's probably what we might do.  Yeah.

17             MR. CASCINO:  That's what we had before, and we had

18   asked for more time before, but we can live with 21 days.

19             THE COURT:  Yeah.  All right.  Okay.  I don't think

20   that's unreasonable.  Okay.  Anything else on this call?

21        (No audible response)

22             THE COURT:  I did -- I want to just make a couple of

23   comments at the -- at the risk of opening up another can of

24   worms here, but it was reflected upon today in the earlier call

25   by -- I guess it was Mr. Capshandy -- the -- and I guess -- and

1   I understand is the subject of -- of a motion filed or to be

2   filed, and I was trying to see if I could an accelerated

3   response so it could be -- it could be dealt with.

4            I have been back through a couple of the previous

5   opinions that Judge Robreno has written with respect to efforts

6   to utilize declarations or affidavits from certain witnesses

7   who had not been previously disclosed or not adequately

8   previously disclosed, and these were affidavits that were

9   submitted in an effort to oppose motions for summary judgment.

10  One particular case I am thinking of where he talks about some

11  of these discovery issues is -- what was the name of it?

12           THE CLERK:  Hang on a second.

13           THE COURT:  And you might want to take a count of --

14  of this and look at some of this case, which I think I would

15  consider to be persuasive with respect to these questions.  The

16  name of it is Joseph Morgan and Lisa Bowling v. 3M.  It is

17  civil action number 8 -- 10-84925, an order of December the 22,

18  2011, and in it, he reflects upon some of the difficulties with

19  -- with respect to that and ends up striking the affidavit, and

20  some of the tussling back and forth that we had with respect to

21  the question of the supplementation of the interrogatories that

22  was -- took up some time on -- on July the 13th dealt with the

23  -- dealt with that, and I think I did reflect in the order that

24  we subsequently entered I declined to quash that submission,

25  but I put in the -- in the order and the opinion in connection

1    with the order -- I forget if it was a footnote order or a

2    short memorandum opinion, but I put language in there where I

3    intended to make it clear that those submissions in and of

4    themselves were obviously -- to me obviously -- I'm sure to

5    defendants obviously a far cry from establishing adequate

6    causation, and to the extent that if the plaintiff has a

7    thought that simply presenting a declaration from somebody

8    whose name might appear on that sheet in connection with an

9    opposition to motion for summary judgment as a discovery matter

10   would appear to me to be very inappropriate, and if they expect

11   to rely upon some such affidavit or declaration, some such

12   thing or some such witness, they need to do a much more

13   substantial disclosure within the context of the time period

14   for discovery such as to give the defendants an opportunity to

15   challenge that evidence if they choose to do so by way of

16   deposition.

17           And you might well consider to the extent this comes

18   before Judge Robreno, what his determination would be with that

19   kind of information, and I think this particular opinion would

20   give you some guidance.  It is true that there were other

21   situations where Judge Robreno did allow affidavits, but my

22   recollection is they were situations that were factually quite

23   a bit different, and I think if you take a look through some of

24   the jurisprudence that he's developed in some of these areas,

25   it might help guide the parties in terms of how you're all

Colloquy                                    35

1    going to be proceeding.

2            Okay.  So if that's all we have, we will stand

3    adjourned, and I do not see -- and anybody else feel that we

4    have a need to rehash through any of this again or what -- the

5    10:00 tomorrow morning call?

6            MR. MCCOY:  Judge, Bob McCoy.  One thing I heard at

7    the beginning of this would be you said something about there

8    gave been informal briefings on the scheduling order adjustment

9    so far.

10           THE COURT:  Yes.

11           MR. MCCOY:  Have a chance to do a formal

12   presentation.  I just want to make sure that we had -- that is

13   what we have to do then is make a more formal presentation.

14           THE COURT:  I don't -- you know, this thing came up.

15   We discussed it at some length on July 13th.  We took -- took

16   its measure.  You guys had some discussion.  You folks had some

17   discussion amongst yourselves for a bit.  I took, you know,

18   submission that you provided, Mr. McCoy.  I took a submission

19   that was provided by Ms. Studebaker.  I sat down with them and

20   reflected upon them, and we've also discussed this, I think, in

21   previous calls to some extent.

22           I think I have the information that I need.  I don't

23   need to formalize this, and I'm not going to slow down the

24   process any further with respect to this.  I just don't think

25   it's -- it's appropriate given everything that you all and --

1    and I have to do in connection with these cases.

2              MR. MCCOY:  All I'm -- all I'm saying, Judge, is we

3    would -- we would want to make a formal presentation to the

4    extent that this has so far been informal.

5              THE COURT:  Well, all right.  You -- you can file

6    whatever you want to file, but I'm going to --

7              MR. MCCOY:  That's all I'm asking for.

8              THE COURT:  I'm sorry.

9              MR. MCCOY:  I was just asking for -- that we be

10   allowed to file it.  I understand what Your Honor has said.

11             THE COURT:  Okay.  Okay.  All right.  Thank you very

12   much, folks.

13             MR. FERGUS:  Your Honor, one quick thing.  This is

14   Shawn Fergus.  I just need to make my appearance.

15             THE COURT:  Okay.

16             MR. FERGUS:  I joined the -- I joined the call late.

17   I'm joining for John Crane and Cleaver-Brooks.

18             THE COURT:  All right.  Thank you, Mr. Fergus.

19             MR. FERGUS:  One other question, Your Honor.  Who do

20   we contact with regard to obtaining a copy of the transcript

21   for today and last week?

22             THE CLERK:  He can e-mail me, and I'll send him the

23   information.

24             THE COURT:  Send an e-mail to Lauren, my -- my law

25   clerk or to Joel.

Colloquy                                    37

1          MR. FERGUS:  Will do.  Thank you, Your Honor.

2          THE COURT:  You know how to do that?

3          MR. FERGUS:  Yes.

4          THE COURT:  Okay.  Thank you.

5       (Proceedings concluded at 5:34 p.m.)

6                      * * * * *

7                 C E R T I F I C A T I O N

8          I, Maureen Emmons, court approved transcriber,

9    certify that the foregoing is a correct transcript from the

10   official electronic sound recording of the proceedings in the

11   above-entitled matter.

12

13   _____        Date:

14   MAUREEN EMMONS

15   DIANA DOMAN TRANSCRIBING

16