**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | Civil Action No. MDL 875 |
| Cases on Attached Exhibit A | |

Plaintiffs' Motion To Reconsider and Clarify Order Entered November 16, 2012
Re Striking Interrogatory Answers

Plaintiffs move this court to reconsider and clarify the order entered on November 16, 2012, which granted in part and denied in part motions filed by defendants Owens Illinois, Duke Energy, and General Electric.[1]  The order struck portions of discovery disclosures in 20 cases.

<u>Introduction</u>

Plaintiffs move the court to reconsider and clarify its order based on the following grounds:

1.      The signatures found defective by the court are or will be promptly cured.

2.      The court erred in imposing the extreme sanction of striking interrogatory

---

[1]By only seeking reconsideration on certain rulings by the court, CVLO does not waive the arguments already made in response to the motions to strike. As part of this motion and brief, plaintiffs incorporate the filings in the individual cases in response to the motions to strike. (*See* Exhibit 40.) In addition, Plaintiff incorporates the following omnibus briefing: (i.e. *Ahnert,* 10-cv-67443, Doc. No. 191 & 01-md-875, Doc. No. 8767. Plaintiffs preserve the arguments in those filings which are not stated in their motion for reconsideration.

1

answers, when lesser sanctions were available and more appropriate.

3.      Certain additional discussion points of the court's opinion are in error.

4.      Findings in certain individual cases are in error or need clarification.[2]

<u>Standard for Reconsideration</u>

As stated by this court:

A Motion for Reconsideration will be granted when the party seeking reconsideration establishes "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court . . . [issued it previous decision]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice ." *Max's Seafood Café v. Quinteros*, 176 F. S3d 669, 677 (3d Cir. 1999); see also *North River Ins. Co. V. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir 1995).

*Glapa et. al v. Crane Co,*, Case 2:11-cv-63505-ER, document 84.  Plaintiff brings this motion based on providing a new client signature form for the standard interrogatory responses and to correct the error of law in striking the discovery disclosures.  CVLO also seeks to clarify and correct certain rulings as to certain individual cases based on the discovery disclosures previously served.

<u>Argument</u>

I.      Plaintiffs cured the defective client signatures

        A.      Opportunity to cure - Rule 26(g)(2)

---

[2]Plaintiffs are filing a separate motion based on the dismissal of the moving defendants before the motions were ruled upon.  Given the dismissals, the motions should have been denied as moot.

This court ruled on November 16, 2012 that a plaintiff must "verify" all information in interrogatory answers, including the portion based upon the knowledge of counsel.  The court cited to FRCP Rule 33 in striking interrogatory responses which were bifurcated into disclosures signed by counsel and by the plaintiffs. (Op at 6.)  The court did not consider Rule 26(g) which has been held to be applicable to Rule 33 signatures.  *Walls v. Paulson*, 250 F.R.D. 48 (DDC 2008).  Rule 26(g)(2) contains a provision for "promptly" supplying a signature to correct defects.  CVLO has taken steps to cure the defective signatures.[3]

Based on the November 16, 2012 ruling, CVLO revised the signature page of the interrogatory answers to state:

> "[Personal Representative's Name] as the personal representative of [Deceased Party to Lawsuit] states that the answers provided in the [Name of Interrogatory] are true and correct to the best of his/her information or belief."[4]

CVLO then transmitted the new signature page to the 14 plaintiffs (personal representatives) for signature.  (Ex 28 at ¶2.)  The signatures obtained to date are attached as exhibits 1-7, 36-38 and 41.  CVLO will serve the other new plaintiff signatures as soon as they are received.  In light of these new plaintiff signature pages, the defect cited by the court in support of its November 16, 2012 ruling has been corrected.

Rule 26(g)(2) provides that "the court must strike it [the response] unless a signature is

---

[3]By taking steps to cure what the court deemed a defective signature, plaintiffs do not concede the signatures are defective.

[4]Alternatively, for living plaintiffs the language states: "[Last, First Name] states that the answers provided in the Plaintiff's Signed Response to Standard Interrogatories are true and correct to the best of his/her information and belief."  The signatures are made "under penalty of perjury."

promptly supplied after the omission is called to the attorney's or party's attention."  As discussed further below, CVLO did not know of the defect until this court ruled the plaintiff signatures were defective.  Upon review and consideration of ruling of this court, CVLO began to promptly correct the defective signatures.  (Ex 28 at ¶2.)  Accordingly, the order striking the disclosures should be reconsidered.

B.      Lesser sanctions are appropriate

The sanction of striking disclosures of potential evidence which might be case dispositive is also not proper when lesser sanctions are available.  *Walls v. Paulson*, 250 F.R.D. 48 (DDC 2008), a case cited by both the court and defense counsel, illustrates the use of lesser sanctions for improper interrogatory signatures.  (Op. at 14.)  *Walls* involved a failure by the party plaintiff to sign discovery responses.  The plaintiff in *Walls* completely failed to sign either original or supplemental interrogatory answers.  248 F.R.D at 52.  The court in *Walls* ruled the proper sanction was to require the plaintiff to sign the discovery response.  248 F.R.D. at 54-5.  Consistent with *Walls*, this court should not exercise the sanction of striking responses until a reasonable time is allowed for plaintiffs to submit proper signatures.

The rationale of the court in *Walls* for choosing lesser sanctions, as described by the district court, is applicable here:

> That said, "[b]ecause disposition of cases on the merits is generally favored," the most drastic sanctions are "'sanction[s] of last resort,' to be used only when less onerous methods . . . will be ineffective or obviously futile." See Webb v. District of Columbia, 331 U.S. App. D.C. 23, 146 F.3d 964, 971 (D.C. Cir. 1998) (citing Shea v. Donohoe Constr. Co., 254 U.S. App. D.C. 175, 795 F.2d 1071, 1075 (D.C. Cir. 1986)).  Generally, the imposition of less severe sanctions, such as the award of attorneys' fees, may be "sufficiently effective in alerting an irresponsible litigant to the seriousness of his or her

4

neglect, protecting [**10] the interests of the other litigants in the case, and vindicating the integrity of the court." C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1209 (7th Cir. 1984). In those cases where a court orders a dismissal or enters a default judgment, the disobedient party typically has engaged in a pattern of noncompliance with court orders so that no lesser sanction is warranted. Secs. & Exch. Comm'n v. Hollywood Trenz, Inc., 202 F.R.D. 3, 7 (D.D.C. 2001) (citing 6A FED. PRAC. & PROC. § 1531).

250 F.R.D at 51.

This Circuit requires willfulness, bad faith or at least gross negligence to justify dismissal under Rule 37(b), while resorting to less severe sanctions for failing to respond to discovery requests. Weisberg v. Webster, 242 U.S. App. D.C. 186, 749 F.2d 864, 871 (D.C. Cir. 1984) (citing Nat'l Hockey League, 427 U.S. at 640 and Societe Int'l Pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 197, 212, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958)).

250 F.R.D. at 51, note 4.   See also *Saria v. Massachusetts Mutual Life Insurance Company*, 228 F.R.D. 536, 540-41 (D. W. Va. 2005), another case cited by this court in the November 16, 2012 order, in which the sanction imposed by the court was to require the interrogatory answers to be signed.

The Third Circuit follows the same principles of deciding cases based on the merits and choosing lesser sanctions for alleged discovery violations.  In *McMullen v. Bay Ship Management*, 335 F.3d 215 (3d Cir. 2003), the Third Circuit reversed the sanction of dismissal of the case for noncompliance with discovery, stating:

We come, therefore, to the sanction imposed. This Court has emphasized that control of discovery is committed to the discretion of the trial court and we will seldom intervene. However, the District Court's power is not without limit. In re Orthopedic "Bone Screw" Products Liab. Litig., 132 F.3d 152, 156 (3d Cir. 1997). We have emphasized this Court's policy of favoring litigation on the merits, rather than imposing dismissals with prejudice or a default judgment. In Hewlett v. Davis, 844 F.2d 109, 113 (3d Cir. 1988), we stated that "[t]hese must be sanctions of last, not first, resort." See also Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) (setting out checklist applicable for sanction of dismissal).

335 F.3d at 217-8.

The imposition of lesser sanctions is justified by the lack of intentional or flagrant misconduct.  The Third Circuit follows a four part test in deciding whether to impose sanctions which exclude evidence that can be dispositive.[5]  *Konstantopolous v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).[6]   No intentional or flagrant misconduct exists.  The standard interrogatory answers were signed by plaintiffs in all but one of the 14 cases.[7]  The client signature page expressly stated the signature covered all matters of which the plaintiffs had knowledge.  The answers themselves distinguished matters based on the knowledge of counsel from other matters to which the signature of the plaintiffs was applicable.

The absence of prejudice to the defense is particularly significant with regard to the proper sanction.  As this court recognized  in the November 16, 2012 memorandum opinion, the Rule 33 signature requirement derives from the need to cross examine the client as a witness to the information in the interrogatory answers.  (Op. at 13-14.)  If the concern is protecting the

---

[5]While this court expressly stated that rulings on striking specific evidence were reserved, the ruling is likely to be cited in support of striking evidence.  Under these circumstances the same analysis should be applied to the sanction of striking discovery disclosures.

[6]The factors listed in *Konstantopolous* are:

(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or wilfulness in failing to comply with the district court's order.

[7]The only exception is the Ahnert case.

defendants' right to cross examine, no prejudice is established or even claimed.[8]  First, no instance is cited by the defense counsel in their briefs or by the court where any of the 14 CVLO plaintiffs who signed the interrogatories could not be effectively cross examined.  To the extent a plaintiff did not provide a signature to certify knowledge within the sole knowledge of his counsel, the concerns about the right to cross examine are not applicable.  A plaintiff cannot be cross examined on matters which the plaintiff knows nothing about.

Second, the attorney knowledge answers involve the claims being asserted and the identification of persons who may have knowledge of the claims[9].  Asking a plaintiff how his attorney determined what claims to bring violates the attorney client communication and work product privileges protected under rule 26.  Likewise, asking a plaintiff about the investigation from which counsel determined the names of persons with knowledge also violates the Rule 26 protections.  In other words, defense counsel is unlikely to be permitted to cross examine on the areas of attorney knowledge in the standard interrogatory answers.

Third, the bifurcated signature format was not challenged by defendants in the 14 cases at issue.  The sanction of dismissal that might result from striking the disclosures is too severe based on the failure of defendant to even raise the concern.

Fourth, CVLO drafted the page for the client signature.  (Ex 28 at ¶¶1-2.)  Plaintiffs

---

[8]The court stated in its November 16, 2012, opinion that reasons for plaintiffs' counsels' concerns about their clients' personal knowledge in signing the discovery disclosures were unclear.  The evidence in motion to reconsider clarifies the reasons for these concerns.

[9]Examples of the attorney disclosures are found in answers to interrogatories 16 and 29. The master CVLO lists of siteworkers and past testimony are referenced in those answers. Samples of pages from those lists are attached as exhibits 10, 11 and 14, 15.

should not be penalized for counsel's interpretation of the Rule 33 signature requirement.
Lesser sanctions which are appropriate are requiring:

•      plaintiffs sign the entire standard interrogatories,

•      separate documents for client knowledge and attorney knowledge, or

•      plaintiffs to produce the disclosed persons with knowledge after the close of fact
discovery.

II.      Attorney signatures are proper under Rule 26(g)

The memorandum opinion entered November 16, 2012, does not mention Rule 26(g)(1)
which requires the signature of counsel on disclosures under Rule 26(a)(1). The court held the
knowledge of counsel was not properly certified, citing only to the signature requirements of
Rule 33 for interrogatory answers. Rule 26(g)(1) creates a framework for signatures on Rule 33
responses and attorney signatures for Rule 26(a)(1) disclosures.

Within the framework of Rule 26(g)(1), the attorney signatures in the standard
interrogatory answers are proper in the instant cases. First, counsel's signature regarding
disclosures of persons with knowledge of the plaintiffs' claims, no matter what form they are
presented in, makes the disclosures proper under Rule 26(a)(1). The disclosures could have been
presented in letter form - or on a napkin - provided they are signed by counsel. Striking Rule
26(a)(1) disclosures of persons with knowledge is not proper when the attorney has signed. Rule
26(g)(1) is explicit in requiring only the signature of counsel on Rule 26(a)(1) disclosures.

The court found the parties in the CVLO MDL 875 cases agreed upon the format of a
document called "Standard Interrogatories" to be answered for each of the CVLO cases. (Op. At

4.)  The court also suggested an "affirmative obligation" under Rule 26(a)(1) to make disclosures of "individuals likely to have affirmative obligations.[10]  (Order at 6-7.)   In the context of the disclosure format agreed upon by the parties, CVLO incorporated the attorney knowledge disclosures into the approved format.  As stated above, disclosures under Rule 26(a)(1) require only signature by counsel pursuant to Rule 26(g)(1).  The Rule 33 signature requirement is not applicable to the portion of the standard interrogatory answers which constituted the Rule 26(a)(1) disclosures based on counsel's knowledge.  CVLO differentiated in the "standard interrogatory answers" the knowledge resulting from investigation by or knowledge of counsel which was not information known to the client.  Viewed as Rule 26(a)(1) attorney disclosures within the context and format of the agreed upon disclosure document, the information based solely on knowledge of counsel is properly signed only by counsel pursuant to Rule 26(g)(1).

No particular format is required for the Rule 26(a)(1) disclosures.  The document titled "Standard Interrogatory Answers" could be titled as "Standard Interrogatory Answers and Rule 26(a)(1) Disclosure."  The parties agreed upon a different title.  As this court recognized in the November 16, 2012 memorandum opinion, the only format of disclosure agreed upon by the parties was the "standard interrogatory answers."  (Opinion at 4.)  No other agreements were reached about the format of Rule 26(a)(1) disclosures for identifying persons with knowledge of job site exposures.  In this context, plaintiffs were following the unified agreed upon format for

---

[10]In past briefing on the motions to strike, plaintiffs contended no Rule 26(a)(1) deadline dates were in CVLO scheduling orders and defendants themselves did not make Rule 26(a)(1) disclosures.  If any Rule 26(a)(1) disclosures were required, plaintiffs contended the "Standard Interrogatories" were the agreed upon format.  By addressing the Rule 26(a)(1) obligations cited in the November 16, 2012, opinion of this court, plaintiffs do not waive earlier arguments.

providing both knowledge of plaintiffs and the knowledge of counsel within a single document. (Ex 28 at ¶5.)

CVLO also attempted in good faith to follow Rule 26, which distinguishes the signature requirements for disclosures by counsel under Rule 26(a)(1) and interrogatory answers under Rule 33. (Ex 28 at ¶4.) CVLO was providing client signatures which disclaimed attorney knowledge for several months before the first motions to strike were filed. The distinction arose from past experiences at CVLO client depositions. (Ex 28 at ¶6.) In this context CVLO plaintiffs have been cross examined about interrogatory answers which provide attorney knowledge of potential witnesses in past cases. (Ex 28 at ¶7.) In such instances the client was forced to admit no knowledge of the truth of the matter. Defense counsel then implied or established during followup questions that the signature of the client was improper. (Ex 28 at ¶7.)

The court also suggests the signature of counsel was improper as it could make CVLO attorneys witnesses in the cases. (Op. at 13.) The situations where counsel becomes a witness are not analogous to the circumstances here. The CVLO attorney knowledge disclosures for the MDL 875 plaintiffs relate to claims made and to persons who may have knowledge of the case. As to such matters of investigation or the basis of the claims, signatures of counsel are mandatory and do not make counsel a witness. For instance counsel must sign the pleadings which state the claims being made. Rule 26(a)(1) involves similar disclosures of persons who may have knowledge and counsel's signature is required by Rule 26(g)(1).

The sanctions, if any, to be imposed under Rule 37 should also reflect the absence of any intention by plaintiffs to violate Rule 33. Until the court issued the order of November 16, 2012,

plaintiff's counsel was unaware how the court would interpret the Rule 33 signature requirement in the context of the standard interrogatory answers and counsel's knowledge.  With one exception, the signature requirement on standard interrogatories was not a subject of a Rule 26 or Rule 16 conference.   The exception related to the mediation period under Judge Reed who ruled the standard interrogatory answers only required the signature of counsel.[11]

The court's memorandum opinion also suggests the language in the standard interrogatory answers is ambiguous by failing to distinguish the knowledge of counsel and the knowledge of the plaintiffs.  (Op. At 16.)  The intention of counsel was to make clear the distinctions between knowledge of counsel and the knowledge of the plaintiffs .  (Ex 28 at ¶3.)  Plaintiffs respectfully disagree the chosen language does not fulfill the objective of distinguishing client and attorney knowledge and such concerns were not raised before.  However, the solution to this concern is to prepare a separate document for signature only by counsel.  To clarify the distinction CVLO will prepare disclosures of counsel's knowledge expressly titled as disclosures of counsel under Rule 26.

III.    Additional Matters in the November 16, 2012, Order

The opinion of November 16, 2012, addresses at length the context of CVLO MDL 875 proceedings as a backdrop for the ultimate ruling of the court.  Plaintiff previously briefed many of these issues, but requests reconsideration of certain characterizations made by the court in

---

[11]Plaintiffs contended in earlier briefs that the mediation period proceedings for CVLO MDL 875 cases by law and order of Judge Reed do not carry over into the pretrial/trial scheduling phase.  Plaintiffs cite here to the mediation period because this court has indicated the actions during that period are relevant to the pretrial phase.

light of the additional points below not considered by the court.

*Compliance with Judge Reed's orders*

The court states "Plaintiffs have essentially conceded that they did not comply with certain discovery requirements imposed by Judge Reed including fully responding to standard interrogatories within the time allotted to do so." (Op. At 6.)  Plaintiffs respectfully disagree.  As the transcript of the January 26, 2011, conference bears out, plaintiffs had already provided standard interrogatory responses in over 600 cases.   (Ex. 22 at 28-29, 43-44.)  The additional 700-800 responses in the remaining cases were provided by the mediation due date of February 22, 2011.[12]  (Ex. 39; ex 22 at 43-44.)

Upon receipt of these answers in over 1,000 cases, defendants did not file a motion to compel further information.  (Ex. 29 at 46-48.)  The focus of the mediation proceedings before Judge Reed then narrowed to focus on only 50 select cases.  (Ex. 29 at 47.)  No motions to compel were filed as to the discovery responses for the group of 50 cases.  The proceedings then switched to the pretrial/trial preparation mode.

*History of discovery disclosures*

The court refers to a history of Rule 26 conferences as having satisfied the requirements

---

[12]The parties in the mediation agreed the interrogatory responses would be served by depositing them with the IKON records management facility in Chicago.  Exhibit 39 is a listing of the dates when for cases pending at the time the mediation interrogatory responses were deposited at IKON. (Ex. 28 at ¶8.)

of Rule 26(f) to trigger Rule 26(a)(1) disclosures.  (Op. at 7.)   The court states "Plaintiffs have

conceded that they did not timely provided these initial witness disclosures."  (Op. At 7.)

Plaintiffs' respectfully disagree.  Attached to this motion is a list of the transcripts of the

conferences and hearings held in the CVLO MDL 875 matters.  (Ex. 8.)  Plaintiff understands

these proceedings to be the record of proceedings to which the court refers.

A careful review of the record reveals that the proceedings during the pretrial/trial phase

of CVLO MDL 875 cases did not result in Rule 26(f) planning which triggered the Rule 26(a)(1)

process except in a limited fashion.[13]  The only item which can be considered a Rule 26(f)

agreement about the scope or necessity of the Rule 26(a)(1) disclosures relating to the exposure

witnesses and claims is agreement to answer the standard interrogatories.[14]  ( Ex 22 at 12-13, ex

23 at 21-3.)  Standard Interrogatory answers had already been furnished pursuant to the orders of

Judge Reed in the mediation phase before February 22, 2011.  (Ex. 39.)  No deadline was set in

scheduling orders entered during the pretrial/trial phase to update the answers.

No discovery plan was formulated or submitted under either Rule 26(f)(3) or the form

order available in the Eastern District of Pennsylvania.  (Ex. 27.)   In the context of the expedited

scheduling, defendants did not make Rule 26(a)(1) disclosures.  Pursuant to the comments to

Rule 26, the requirement of a Rule 26(a)(1) disclosure is not mandatory.  The parties can

"stipulate to elimination or modification of the requirements. . . ."  (Comments to 1993

---

[13]Plaintiff has already argued the mediation phase of the proceedings does not carry over
to the trial phase.  However, even during the mediation phase the only disclosure document
agreed upon is the "Standard Interrogatories."  (Ex 22 at 12.)

[14]Other agreements were made and orders entered about disclosure of such matters as
medical records and bankruptcy claims.

Amendments to Rule 26(a).)  "[T]he parties can stipulate to forgo disclosure, as was true before."  (Comments to 2000 Amendments to Rule 26(a)(1).)

No court order was entered setting a Rule 26(a) submission deadline in any of the 14 cases at issue although scheduling orders with other deadlines were entered.  The first time a Rule 26(a)(1) date was placed into any CVLO MDL 875 scheduling order was the order entered on November 12, 2012 in a single case, which has its own scheduling order, *Lundgren v. Rhone-Poulenc AG. Co.*, Case No. 09-61032, document number 202.  (Ex 9.)  As stated in the comments to Rule 26(a)(1). "The disclosure obligations specified in paragraph (1) will not be appropriate for all cases, and it is expected that changes in these obligations will be made by the court or parties when the circumstances warrant."  (Comments to 1993 Amendments of Rule 26(a)(1).)  Here, the compressed deadlines for what was initially over 1000 cases resulted in the parties not making Rule 26(a)(1) disclosures.  Such limitations are reflected by the absence of 1) defendants making any such disclosures and 2) scheduling order deadlines requiring Rule 26(a)(1) submissions.

*Timeliness of discovery responses and disclosures*

The court cites to the 30 day period for answering Rule 33 interrogatories.  (Op. at 8.)  The 30 day period is not controlling here.  First, defendants were provided answers by February 21, 2011, pursuant to the order of Judge Reed.  Second, this is not a situation where the interrogatories were served by a party and the period for answering was triggered by the service.  No order in the pretrial/trial stage set a date for answering the standard interrogatories, nor did defendants request one.  Defendants made no motions to compel new or additional answers.

14

Plaintiff treated the "fact discovery close" date as the time for providing updated or supplemental answers that remained subject to further supplementation under Rule 26(e).  (Ex 28 at ¶10.)

In none of the 14 cases did defendants provide an initial notice of the coworker depositions of the persons disclosed in the February 21, 2011, responses or in later updates made before the close of fact discovery.[15]  (Ex 28 at ¶9.)  Defendants also did not request additional information about the subject matter of the testimony (Ex 28 at ¶9.)  By not noticing coworker depositions and not filing motions to compel supplemental interrogatory answers (or Rule 26(a)(1) disclosures), defendants were following a calculated strategy.  Namely, defendants were hoping the elderly witnesses in asbestos cases would die or become infirm without being identified or deposed before the trial dates which were not even scheduled.  The cases would then be dismissed for lack of evidence.  The strategy became more evident when the defendants filed the motions to strike the plaintiffs' disclosures made in the form of well organized master lists of site workers and past testimony.[16]  To the extent the defendants employed a strategy to oppose disclosure, plaintiffs should not be faulted for failing to make disclosures of evidence which the defense hoped would never occur.

The court also suggests Rule 11 contradicts the position of CVLO that the potential witnesses (persons with knowledge) were already known when the pretrial/trial phase began.

---

[15]Defendants only issued cross notices after plaintiffs initially noticed coworker depositions under the protocol.

[16]The court characterized the lists as a non-specific data dump.  (Op. At 11.)  To the contrary, the lists are organized to show the siteworkers for each jobsite.  (Exs 14, 15.)  Since the job sites for each case are provided by AO12 filings and in the standard interrogatory answers, the data in the lists can be easily used to determine the siteworkers in each case.  The agreed upon standard interrogatories require plaintiffs to list all siteworkers at each jobsite.

Plaintiffs respectfully disagree.  Many of the cases were filed in the 1990s when the victims and many potential witnesses, although elderly, were alive.  Years have passed - persons die, memories fade, health deteriorates.  The process of evidence becoming unavailable is exacerbated by the elderly group of plaintiffs' former coworkers.  Much of the evidence available when the complaints were filed is no longer available and has not been preserved due to the inactive status of MDL 875 cases.  (Ex 28 at ¶11.)  As Judge Reed commented in recognizing the inactive status of the MDL 875 cases: ". . . I assume almost nothing has been done in those cases for several years.  Is that the gist? Is that statement probably correct?"  (Ex 22 at 8-9.)  Both a member of the defense liaison committee and counsel for plaintiff confirmed Judge Reed's statement.  (Ex 22 at 9.)   The time required to assess and validate the remaining evidence is described in earlier briefs and declarations of counsel on the motion to strike issues.  These same factors were explained on the record months ago, without dispute, in the conferences about CVLO cases.   (Eg. Ex 35 at 52-57.)

The court also points to the deposition protocol as bearing on the timeliness of discovery responses.   Not mentioned in the opinion is the original version of the deposition protocol which was agreed upon.  This version, agreed upon before the CVLO MDL 875 pretrial/trial scheduling orders were entered  had no restrictions, consistent with Rule 26(d)(2), based on sequencing of the discovery.  (Ex 25.)   The requirement that all interrogatories be answered before a deposition was added at the request of defendants, over the objection of plaintiffs after the scheduling orders were entered in the CVLO MDL 875 cases.  This new requirement effectively prevented plaintiffs from pursuing depositions in multiple cases simultaneously due to the extremely large number of discovery requests that defendants' counsel propounded on plaintiffs.

16

This "sequencing requirement" was unique and limited to the deposition protocol. Defendants could have, but did not request a general scheduling order about the timing of answering standard interrogatories.  The impact of the sequencing provision was thus confined to the deposition protocol and was never a part of the general scheduling of discovery in CVLO MDL 875 cases.

Finally this court casts doubt on statements of CVLO about the disclosure of attorney knowledge.  (Op. 10-11)  The context of the explanation given by plaintiff counsel should be clarified.  Plaintiffs were disclosing knowledge of counsel in many standard interrogatory answers filed before April 12, 2012.  The *Schneck* case and other decisions prompted a decision by CVLO to devote substantial resources to make a broader disclosure of data which had not previously been not organized or validated by plaintiff counsel to be available for disclosure. The question of the resources to be devoted is different than disclosing what is known without devoting substantial resources to compiling the information.  *Harvey v. EIMCO Corporation*, 28 F.R.D. 381, 381-82 (EDPA  1961.)  Rather than submit a question to the court about the necessity of devoting substantial resources, counsel for plaintiff made the decision to proceed to devote the resources to create master databases and lists of persons with knowledge and past testimony.  In assessing the circumstances, this court should also consider the opposition of the defendants to a similar undertaking of organizing the data files of defense counsel for disclosure. The decision to devote the resources was a significant measure to enhance the attorney knowledge CVLO was already disclosing.

Individual Cases

17

With respect to the individual cases discussed by the court, rulings in selected cases need to be clarified and corrected on certain specific factual items.  Primarily these involve discovery responses submitted as exhibits, but which are not discussed in the court's opinion.  Each of the cases is discussed below as to matters needing clarification or correction.


**Van Stippen 11-63483**

In *Van Stippen* the November 16, 2012 opinion ordered stricken certain discovery responses. Not mentioned within the opinion is "Plaintiff's First Response to Standard Interrogatories - May 25, 2012" served with client signature in this case on August 1, 2012. CVLO has proof of service of this set of interrogatory responses.   The document and proof of service were filed as exhibit 2 in CVLO's previous "Response to Defendant Owens Illinois Inc.'s Motion to Strike" in Van Stippen's MDL 875 case and are reattached to this motion to reconsider. (Ex.  29.) Since the discovery responses served 8/1/2012 are signed by the client without disclaiming statements based on attorney knowledge, these answers are proper discovery responses.[17]


**Brazzoni 11-63501**

In *Brazzoni* the November 16, 2012, opinion ordered stricken certain discovery responses. Not mentioned within the opinion is "Plaintiff's First Signed Response to Standard

---

[17]"We will not, however, strike properly verified interrogatory responses as untimely, insufficient, or improper as we deem these requests to be premature." (11/16/12 Opinion at 2 ¶ 1.)

Interrogatories - 7/10/12" served in this case on 7/19/2012.[18]  CVLO has proof of service of this

set of interrogatory responses from 7/19/2012, which were served with client signature.  The

document and proof of service were filed as exhibit 3 in CVLO's previous "Response to

Defendant Owens Illinois Inc.'s Motion to Strike" in Brazzoni's MDL-875 case and are

reattached to this motion to reconsider.  (Ex. 30.)  Since the discovery responses served

7/19/2012, are signed by the client these answers are "in part" proper discovery responses.[19]


**Connell 09-60552**

In *Connell* the November 16, 2012, opinion ordered stricken certain discovery responses.

Not mentioned within the opinion is "Plaintiff's Signed Response to Standard Interrogatories-

6/19/2012" served in this case on 6/19/2012.  CVLO has proof of service of this set of

interrogatory responses from 6/19/2012 which were served with client signature.   The document

and proof of service were filed as exhibit 2 in CVLO's previous "Response to Defendant Owens

Illinois Inc.'s Motion to Strike" in Connell's MDL 875 case and are reattached to this motion to

reconsider. (Ex.  31.) Since the discovery responses served 6/19/2012, are signed by the client,

these answers are "in part" proper discovery responses.

---

[18]While the document "Plaintiff's First Signed Response to Standard Interrogatories -
7/10/12" is identical in title to a prior response served on 7/10/2012, it was served separately with
signature on 7/19/2012.

[19]The court in the November 16, 2012 opinion ruled: "Responses which are only partially
verified by the party will be struck in part." (11/16/12 Opinion at 2 ¶ 1.) Even under this ruling,
the "in part" signed by the client should stand.

**Zellner 11-66746**

In *Zellner* the November 16, 2012, opinion ordered stricken certain discovery responses. Not mentioned within the opinion is "Plaintiff's First Signed Response to Standard Interrogatories - 7/17/2012" served in this case on 7/20/2012.[20] CVLO has proof of service of this set of interrogatory responses from 7/20/2012, which were served with client signature. The document and proof of service were filed as exhibit 2 in CVLO's previous "Response to Defendant Owens Illinois Inc.'s Motion to Strike" in Zellner's MDL 875 case and are reattached to this motion to reconsider. (Ex. 32.) Since the discovery responses served 7/20/2012 are signed by the client, these answers are "in part" proper discovery responses.

**Jackson 08-90263**

In *Jackson* the November 16, 2012, opinion ordered stricken certain discovery responses. Not mentioned within the opinion is "Plaintiff's First Response to Standard Interrogatories -July 15, 2012" served in this case on 7/31/2012.[21]  CVLO has proof of service of this set of interrogatory responses from 7/31/2012, which were served with client signature.   The document and proof of service were filed as exhibit 1 in CVLO's previous "Response to Defendant Owens Illinois Inc.'s Motion to Strike" in Jackson's MDL-875 case and are reattached

---

[20]While the document "Plaintiff's First Signed Response to Interrogatories - 7/17/2012" is identical in title to a prior response served on 7/17/2012, it was served separately with signature on 7/20/2012.

[21]While the document "Plaintiff's First Response to Standard Interrogatories -July 15, 2012" is identical in title to a prior response served on 7/17/2012, it was served separately with signature on 7/31/2012.

to the present motion to reconsider. (Ex. 33.) Since the discovery responses served 7/31/2012 are signed by the client, these answers are "in part" proper discovery responses.


**Kelley 10-67555**

In *Kelley* the November 16, 2012, opinion ordered stricken certain discovery responses. According to the Memorandum one set of answers would not be stricken.[22]  While the opinion states this document "was actually served August 3, 2012," another set of answers with the same title was also served with client signature at an earlier date, July 20, 2012.  CVLO has proof of service of this set of answers on this date. The document and proof of service were filed as exhibit 3 in CVLO's previous "Response to Defendant Owens Illinois Inc.'s Motion to Strike" in Kelley's MDL 875 case and are reattached to this motion to reconsider (Ex. 34.) Since these discovery responses served on 7/20/2012 were also signed by the client, these answers are "in part" proper discovery responses.


<u>Relief Requested</u>

**General relief**

For the reasons above, plaintiffs move the court as follows:

1       To order that all 14 of plaintiffs' interrogatory answers which were signed by the plaintiff

        and the subject of motions by Owens Illinois or Duke Energy have been cured of any

---

[22]"Only 'Plaintiff's Supplemental Signed Response to Standard Interrogatories - 7/16/12', which was actually served on August 3, 2012, is verified, however, Plaintiff does not verify any statements made by counsel." (11/16/12 Opinion at 27 ¶ 1.)

defects upon service of corrected plaintiff signature pages and vacate the order striking any part of the responses.

2      In the alternative that the order striking any part of the responses in all 14 of plaintiffs' interrogatory answers which were signed by the plaintiff and the subject of motions by Owens Illinois or Duke Energy, is vacated and the court should impose lesser sanctions rather than striking the interrogatory answers.

3      In all 20 cases enter an order deeming all discovery disclosures, in the format of standard interrogatory answers or supplements to such, based on counsel's knowledge and signed by counsel as being properly signed and vacate the striking of such responses.

4      Enter an order withdrawing the court's background statements and restating such statements to reflect the matters discussed above in section III and in past briefs filed by plaintiffs relating to defense motions to strike.

**Specific Relief**

Plaintiff Van Stippen requests the following additional specific relief:  Since the Plaintiff's First Response to Standard Interrogatories served August 1, 2012 are signed by the client as to all responses, the court should find these answers are proper discovery responses.

Plaintiff Brazzoni requests the following additional specific relief: Enter an order deeming the Plaintiff's First Signed Response to Standard Interrogatories served July 19, 2012 to be properly signed upon service of the corrected signature page.[23]

---

[23]The court in the November 16, 2012 opinion ruled: "Responses which are only partially verified by the party will be struck in part." (11/16/12 Opinion at 2 ¶ 1.) Even under this ruling, the "in part" signed by the client should stand.

Plaintiff Connell requests the following additional specific relief:  Enter an order deeming the Plaintiff's Signed Response to Standard Interrogatories served June 19, 2012 to be properly signed upon service of the corrected signature page.

Plaintiff Zellner requests the following additional specific relief: Enter an order deeming the Plaintiff's First Signed Response to Standard Interrogatories served July 20, 2012 to be properly signed upon service of the corrected signature page.

Plaintiff Jackson requests the following additional specific relief: Enter an order deeming the Plaintiff's Supplemental Response to Standard Interrogatories served July 31, 2012 to be properly signed upon service of the corrected signature page.

Plaintiff Kelley requests the following additional specific relief: Enter an order deeming the Plaintiff's Supplemental Signed Response to Standard Interrogatories served July 20, 2012 to be properly signed upon service of the corrected signature page.

Plaintiff Ahnert requests the following additional specific relief: Vacate the order striking the Response to Standard Interrogatories served on March 22, 2012 and the Second Supplement to Standard Interrogatories served on June 29, 2012, upon service of the plaintiff's signature for the responses.


Dated: December 4, 2012

**/s/ Robert G. McCoy**_____
Attorney for plaintiffs

Robert G. McCoy
Michael P. Cascino
Allen D. Vaughan
Cascino Vaughan Law Offices, Ltd.

220 S. Ashland Ave.
Chicago, Illinois 60607
312.944.0600
bmccoy@cvlo.com