IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: ASBESTOS PRODUCTS | : | Civil Action No: |
| LIABILITY LITIGATION (No. VI) | : | MDL 875 |
| | : | |
| This Document Relates to | : | |
| the Cases on the Attached List | : | |

### EXPLANATION and ORDER

**AND NOW, this 8th day of March, 2013**, upon consideration of:

1. "Plaintiffs' Motion to Perpetuate the Testimony of Coworker Ernest Sperber" ( 08-89845 Doc. 182, 09-61717 Doc. 147), the responses (08-89845 Doc. 192 & 193, 09-61717 Doc. 151), Plaintiff's statement identifying how the witness was disclosed (08-89845 Doc. 217, 09-61717 Doc. 155), and Defendant's responses (08-89845 Doc. 221, 09-61717 Doc. 156);

2. "Plaintiffs' Motion to Perpetuate the Testimony of Coworker John King" (08-91090 Doc. 104, 10-61349 Doc. 104), the responses (08-91090 Doc. 106, 10-61349 Doc. 106), Plaintiff's statement identifying how the witness was disclosed (08-91090 Doc. 118, 10-61349 Doc. 117), and Defendants' responses (08-91090 Doc. 122, 10-61349 Docs. 119 & 120);

3. "Plaintiff's Motion to Perpetuate the Testimony of Coworker John Doyle" (08-89845 Doc. 185), the responses (08-89845 Docs. 194 & 195), Plaintiff's statement identifying how the witness was disclosed (08-89845 Doc. 218), and Defendants' responses (08-89845 Docs. 222 & 224);

4. "Plaintiffs' Motion to Perpetuate the Testimony of Coworker Gerald Jawor" (08-89845 Doc. 189, 09-61820 Doc. 132), the responses (08-89845 Doc. 199, 09-61820 Doc. 134), Plaintiff's statement identifying how the witness was disclosed (08-89845 Doc. 219, 09-61820 Doc. 145), and Defendant's responses (08-89845 Doc. 223, 09-61820 Doc.145);

5. "Plaintiff's Motion to Perpetuate the Testimony of Coworker Howard Kiser" (08-90465 Doc. 136), the response (08-90465 Doc. 137), Plaintiff's statement identifying how the witness was disclosed (08-90465 Doc. 147), and Defendant's response (08-90465 Doc. 149);

6. "Plaintiff's Motion To Perpetuate the Testimony of Co-Worker Witness Robert Wolter" (10-67443 Doc. 290), the responses (10-67443 Docs. 301, 306, 312), Plaintiff's statement identifying how the witness was disclosed (10-67443 Doc. 338), and Defendant's response (10-67443 Doc. 341);

7. "Plaintiff's Motion To Perpetuate the Testimony of Co-Worker Witness John Krueger"

(09-60550 Doc. 167, 10-67841 Doc. 122), the responses (09-60550 Doc. 173, 10-67841 Doc. 125), Plaintiff's statement identifying how the witness was disclosed (09-60550 Doc. 177, 10-67841 Doc. 128), and Defendant's responses (09-60550 Doc. 179, 10-67841 Doc. 130); and

8. "Plaintiffs Motion to Perpetuate the Testimony of Coworker Vern Kloss" (08-91090 Doc. 108), the response (08-91090 Doc. 115), Plaintiff's statement identifying how the witness was disclosed (08-91090 Doc. 119), and Defendant's response (08-91090 Doc. 121); as well as

9. "Plaintiffs' Reply to Defendants' Responses to Plaintiffs' Statements Identifying How Co-worker Witnesses Whose Testimony Plaintiffs Seek to Perpetuate Were Disclosed to Defendants" e.g. (08-90465 Doc. 152-2);

it is hereby **ORDERED** that all related joinders are **GRANTED,** and the motions to perpetuate are **DENIED**.

CVLO asks that we allow them to take the trial depositions of eight co-workers, between the ages of 70 and 95, who they did not depose during discovery for use in nine separate cases. CVLO contends that "[p]reserving [the co-workers'] testimony is necessary given [their] advanced age and the practical reality that a trial in each case is at least a year away." E.g. (08-89845 Doc. 182, p. 1). CVLO asserts that the testimony of these witnesses is highly relevant and, in many cases, its exclusion could be case dispositive. They have attached to each motion either a declaration from the witness or a summary of the witness' purported testimony which, indeed, tends to establish significant causal links between the plaintiffs (or the plaintiffs' decedents) and specific products of a defendant. In that these motions seek relief which impacts trial preparation, their disposition falls within Judge Robreno's June 9, 2011 order of reference which authorizes us "to conduct pretrial procedures, supervision of discovery, settlement conferences, and preparation for trial." E.g. (10-67443 Doc. 34).

The question of whether to allow the preservation of trial testimony is dependant upon a consideration of the equities. 19th St. Baptist Church v. St. Peters Episcopal Church, 190

F.R.D. 345, 347 (E.D. Pa. 2000) (providing that "[t]he concept of perpetuation of testimony has ancient roots deeply grounded in equity"). In 19th Street, the district court judge, who coincidentally is the presiding judge in this MDL, concluded that the balance of the equities favored the preservation of the testimony and he allowed the trial depositions to go forward. Plaintiffs understandably place significant reliance upon this authority. In that case, the plaintiffs sought to take depositions of "aged and infirm" plaintiff witnesses to support their position that the defendants, trustees of a trust established "to fund religious activities for the benefit of the community surrounding" the 19th Street church, had racially discriminated against them by failing to provide notice of the existence of the trust and by diverting the trust proceeds from them to the defendants. Id. at 346.

  Initially, the plaintiffs brought their action in the Philadelphia County Court of Common Pleas. Id. The complaint was dismissed by that state court following preliminary objections and was, at the time that the federal court was considering the preservation motion, on appeal to the Pennsylvania Superior Court. Id. The plaintiffs sought to take the depositions of the four individual plaintiffs who were between the ages of 86 and 91. The court permitted the depositions to go forward, but only after the plaintiffs satisfied their 26(a)(1) disclosure requirements, produced a "detailed proffer setting forth the expected testimony of each plaintiff-deponent" with copies of relevant documents, and afforded the defendants the opportunity to take a discovery deposition of each witness. Id. at 350-52.

  The procedural postures in our cases are clearly different than in 19th Street. Here, discovery has been completed, while in 19th Street, it had not even begun. In our cases, plaintiffs, who so urgently seek these depositions now, failed to take them during the discovery period which in 2011 and 2012 ranged over eight to eleven and a half months. In 19th Street, the

plaintiffs sought the depositions at the earliest possible time - even before discovery had been permitted.

From the perspective of the defendants, in 19th Street they merely asserted that they would be put to the cost of preparing for and attending the depositions. Id. at 349. The defendants here complain that plaintiffs' motions disregard the court's discovery orders and our repeated efforts to keep the parties tied to the discovery process. They assert that plaintiffs seek to introduce new witnesses who have never been *properly* disclosed and who are purportedly able to provide product specific evidence. Defendants point out, that not only did plaintiffs fail to "preserve" the testimony when they could and should have, but that it is the defendants who would be significantly prejudiced if the motions were granted. Further, the defendants assert that it is plaintiffs who bear the burden as they cannot proceed with these depositions without leave of court, while in 19th Street, the court placed the burden on the defendants to establish good cause why the depositions should not go forward. Id. at 348-49.

The balancing of equities demands we consider the parties' previous opportunities to preserve evidence by deposing the witnesses during discovery. Each of these cases had been on scheduling orders where the parties had between eight to eleven and a half months to conduct discovery including taking depositions of witnesses.[1] Further, previous to being placed on scheduling orders, the parties also engaged in approximately two years of mediation efforts

---

[1] We first placed Frankenberger 09-61717 on an August 15, 2011 scheduling order and discovery ultimately ended on April 20, 2012. We first placed Ruesken 09-61820 on an August 15, 2011 scheduling order and discovery ultimately ended on August 3, 2012. We first placed Doyle 08-89845 and Ahnert 10-67443 on September 27, 2011 scheduling orders and discovery ultimately ended on July 13, 2012. We first placed Sharpe 08-90465, Holme 08-91090, Peitrzycki 10-61349, and Bonnie Junk, 09-60550 on October 25, 2011 scheduling orders and discovery ultimately closed on August 3, 2012. We first placed Willaim Junk, 10-67841 on a December 21, 2011 scheduling order and discovery ultimately closed August 24, 2012.

during which there were opportunities for a robust discovery exchange.  See Ferguson, 01-MD-875, 2012 WL 5839023, at *2 (E.D. Pa. Nov. 16, 2012) (describing the discovery that was furthered during the mediation).

Returning to the consideration of the equities, plaintiffs make the clear point that they would be seriously prejudiced if this testimony was not preserved.  See e.g. (08-89845 Doc. 185, p. 3 (alleging that "[t]he loss of [the witness'] testimony, should [he] become unavailable for a trial over a year away, could potentially result in the loss of the case")).  We do not quarrel with this point.  We observe, however, that plaintiff's underlying premise - that they would be able to use the "preserved" testimony at trial is a separate question.  While we decline to make a ruling on the ultimate admissibility of any of these witnesses at trial, as part of the balancing exercise, we found it necessary to inquire of plaintiffs how these witnesses were disclosed during discovery and to consider the question of whether the trial judge will strike them as improperly disclosed.  To that end, on January 30, 2013, we ordered plaintiffs to "file a statement identifying how these witnesses were disclosed to Defendants, including the date and location of the disclosures for each witness in each case, specifically identifying and attaching any relevant interrogatory responses."  E.g. (08-89845 Doc. 214).  We have considered the plaintiffs' response to our order, and have concluded that the witness disclosures in the interrogatory responses were deficient for either lack of proper verifications or lack the specificity required to put a particular defendant upon notice that a particular plaintiff would establish the necessary connection between that plaintiff and a specific product.  The defendants have made a reasonable showing that the witnesses were not properly disclosed during the discovery period.[2]

---

[2] Most of the witnesses were merely listed by name and address as co-workers on an exhibit attached to the answers.  These lists did not provide what job-sites, time periods,
(continued...)

---

²(...continued)
defendants, or products were directly relevant to each witness. Specifically, the witnesses at issue were disclosed in the following manner during discovery:

(1) **John Doyle** in Doyle, 08-89845 Doc. 218: in a June 28, 2012 partially verified set of interrogatory answers, Mr. Doyle was identified by name and address only as one of ten living co-workers. (Ex. 1). He was also listed on CVLO's July 13, 2012 "master lists" of co-workers and past testimony as having worked at ten job-sites. (Ex. 2). On three occasions we have ruled that these master lists have no application in individual cases, thus, we do not consider them. Doyle v. A.C. and S., Inc., 08–89845, MDL 875, 2012 WL 6739912 (E.D. Pa. Dec. 27, 2012); (10-61345 Docs. 105, 176). Discovery closed on July 13, 2012 and CVLO served Mr. Doyle's declaration on October 26, 2012.

(2) **Gerald Jawor** in Doyle, 08-89845 Doc. 219: in the July 13, 2012 "master lists", Mr. Jawor was listed as having worked at one job-site. (Ex. 2). He was not listed as a co-worker in any of the standard interrogatory answer sets served during discovery. Discovery closed on July 13, 2012 and CVLO served his declaration on October 26, 2012. In Ruesken, 09-61820 Doc. 145, Mr. Jawor was identified in a July 16, 2012 *unverified* interrogatory answer set by name and address only as one of thirteen living co-workers. (Ex. 6). We decline to consider disclosures in any unverified interrogatory responses as we have held on several occasions that such responses are unacceptable. E.g. Ferguson, 2012 WL 5839023. In a July 19, 2012 partially verified interrogatory answer set, Mr. Jawor was identified by name and address only as a living co-worker. (Ex. 7). In an *unverified* answer to interrogatory 19, Mr. Jawor was also identified as an individual who could testify about the Decedent's work history, work environment, and product exposure. (Id.). Again, we do not consider this unverified response. On the July 13, 2012 "master lists" he was listed as having worked at three job-sites. (Ex. 2). In an *unverified* August 3, 2012 interrogatory answer set, Mr. Jawor was identified as a co-worker who has knowledge about specific listed products, at certain job-sites, during certain time periods. Mr. Jawor was one of several hundred individuals listed. Discovery closed on August 3, 2012 and CVLO served his declaration on December 17, 2012.

(3) **John King** in Holme, 08-91090 Doc. 118: in a July 11, 2012 partially verified interrogatory answer set, Mr. King was one of four individuals identified by name and address only as living co-workers. (Ex. 1). In an *unverified* response to interrogatory 19, he was identified as an individual who is expected to provide relevant product identification testimony. (Id.). In the June 12, 2012 "master lists", he was identified as having worked at one job site. (Ex. 2). In an August 3, 2012 *unverified* interrogatory supplement, Mr. King was identified as a co-worker with knowledge about specific products at specific job-sites during the 1970's. (Ex. 3). Discovery closed on August 3, 2012 and CVLO served his declaration on December 13, 2012. In Peitrzycki, 10-61349 Doc. 117, in a July 23, 2012 partially verified interrogatory answer set, Mr. King was identified as one of five living co-workers by name and address only. An *unverified* response to interrogatory 19, also provided that he was expected to provide

(continued...)

6

---

²(...continued)
product identification and exposure testimony. (Ex 7). On the June 12, 2012 "master lists" he was listed as having worked at one job-site. (Ex. 2). In an *unverified* August 3, 2012 interrogatory answer supplement, Mr. King was identified as a co-worker with knowledge of specific products at specific job-sites during the late 1960's to mid 1980's. (Ex. 8). Discovery closed on August 3, 2012 and CVLO served his declaration on December 13, 2012. Again, we do not consider the "master lists" or any unverified interrogatory answers.

(4)     **Howard Kiser** in Sharp, 08-90465 Doc. 147: Mr. Kiser was first identified in a July 17, 2012 partially verified interrogatory answer set as one of two living co-workers listing his name, address and a job-site. (Ex. 1). In an *unverified* response to interrogatory 19, he was also identified as someone who could testify as to the Decedent's work history, work environment and product exposure. (Id.). In an *unverified* August 3, 2012 interrogatory answer supplement, he was identified has a co-worker with knowledge of specific products from the 1950's to the 1980's. (Ex. 2). Discovery closed on August 3, 2012 and CVLO served his declaration on December 13, 2012. Again, we do not consider any unverified interrogatory answers.

(5)     **Vern Kloss** in Holme, 08-91090 Doc 119: in a July 11, 2012 partially verified interrogatory answer set, Mr. Kloss was identified by name and address only as one of four living co-workers. (Ex. 1). In an *unverified* response to interrogatory 19, he was also described as a co-worker who was expected to provide relevant product identification testimony. (Id.). In the July 13, 2012 "master lists" he was listed as having worked at one job site. (Ex. 2). In an August 3, 2012 *unverified* interrogatory answer supplement, Mr. Kloss was listed as a co-worker with knowledge of specific products during the 1970's. (Ex. 3). Discovery closed August 3, 2012 and CVLO served his declaration on December 11, 2012. Again, we do not consider the "master lists" or any unverified interrogatory answers.

(6)     **John Krueger**, in Bonnie Junk, 09-60550 Doc 177: in a July 20, 2012 partially verified interrogatory answer set, Mr. Krueger was mis-identified as "John Krieger" (along with his address) on the living co-workers list. (Ex. 1). In an *unverified* answer to interrogatory 19, he was similarly mis-identified as a co-worker who could testify about the Decedent's work history, work environment, and product exposure. (Id.). In an *unverified* August 3, 2012 interrogatory answer supplement, he was again mis-identified as "John Krieger" (with no address) as a co-worker who knew about specific products at specific job-sites in the 1980's and 1990's. (Ex. 2). Discovery closed on August 3, 2012 and CVLO served his declaration on December 11, 2012. In William Junk, 10-67841 Doc. 128, Mr. Krueger was mis-identified as "John Kreiger" (with no address) in a August 22, 2012 partially verified interrogatory answer set as a living co-worker. (Ex. 6). In an *unverified* August 24, 2012 interrogatory supplement, he was similarly mis-identified as a co-worker with knowledge about a specific job-site. (Ex. 7). Discovery closed on August 24, 2012 and CVLO served a summary of his purported testimony as part of the motion to perpetuate. Again, we do not consider any unverified interrogatory answers.

(continued...)

7

In that Fed. R. Civ. P. 37(c)(1) provides that if a party fails to properly identify a witness, that party may not rely on his or her testimony, unless the failure is substantially justified or harmless, we conclude that the trial judge would hold that the witnesses were not properly disclosed.  Accordingly, a denial of these motions would likely bring no prejudice to plaintiffs.  On the other hand, granting the motions would almost certainly necessitate a re-opening of discovery.

We next find it relevant to consider the health of the witnesses.  In most of the cases CVLO attaches medical opinions that the witnesses themselves have asbestos related injuries.  CVLO does not specifically rely on this evidence in arguing the exigencies, but instead relies on Texaco, Inc. v. Borda, where the Third Circuit concluded that, when a case has been stayed, a witness' advanced age alone may be the decisive factor in deciding whether to allow

---

[2](...continued)

(7)    **Ernest Sperber** in Doyle 08-89845 Doc. 217:  in a partially verified June 28, 2012 interrogatory answer set, Mr. Sperber was identified by name and address only as a living co-worker. (Ex. 1).  In the July 13, 2012 "master lists", he was identified as having worked at one job site. (Ex. 2).  Discovery closed on July 13, 2012 and CVLO served his declaration on October 26, 2012.  In Frankenberger, 09-61717 Doc. 155, Mr. Sperber was identified as one of several hundred living co-workers by name and address only in an April 18, 2012 verified interrogatory answer set.  (Ex. 6).  Discovery closed on June 15, 2012 and CVLO served his declaration on July 2, 2012.  Again, we do not consider the "master lists."

(8)    **Robert Wolter** in Ahnert, 10-67443 Doc. 338:  in a June 18, 2012 interrogatory answer set, Mr. Wolter was identified as one of several hundred living co-workers by name and address only.  (Ex. 2).   While this interrogatory answer set has a verification, it is not for this set but for three specific sets dated March 11, 2011.  We struck an identical verification in this case in Ferguson, 2012 WL 5839023, at 12.  Similarly, we consider this set of interrogatories to be *unverified*.  The June 12, 2012 "master lists" identified Mr. Wolter as having worked at one job site.  Discovery closed on July 13, 2012 and CVLO served his declaration on December 11, 2012.  Again, we do not consider the "master lists" or any unverified interrogatory answers.

In most of these cases, CVLO also filed additional interrogatory answers after discovery was closed.  We have obviously not considered those responses in weighing whether the witnesses were properly disclosed during the course of discovery.

preservation of their trial testimony. Texaco, Inc. v. Borda, 383 F.2d 607, 608-09 (3d Cir. 1967). In Borda, the district court stayed a civil antitrust case pending the outcome of a related criminal case and denied the defendant's request to modify the stay so that it could depose the plaintiff who was 71 years old. Id. In denying the deposition request, the district court concluded that the plaintiff's "'age standing alone [was] meaningless'" in assessing the request. Id. at 609. On appeal, the Third Circuit found that the district court had abused its discretion by refusing to allow the plaintiff's deposition. It held that:

> [t]he circumstance that 'Mr. Borda is 71 years old' is quite meaningful. It would be ignoring the facts of life to say that a 71-year old witness will be available, to give his deposition or testimony, at an undeterminable future date when a pending criminal anti-trust action will have been 'determined', and the trial of a related civil action will subsequently take place.

Id. Eight years later, the Third Circuit also concluded that "age may be a relevant factor in showing that testimony must be perpetuated to avoid loss." Ash v. Cort, 512 F.2d 909, 913 & n.15 (3d Cir. 1975). We completely accept that age may be a relevant factor to consider, however, we conclude that the witnesses' health is also a valid consideration. We find it particularly appropriate to consider here in that, while there are likely to be differences in the exigencies regarding a 70 year old and a 95 year old, CVLO makes no such distinctions but rather takes a blanket approach which does not account for individual health issues. CVLO has presented no evidence that these witnesses are suffering from medical conditions which might add to the urgency of their situations.[3] The most CVLO has submitted are a page or two of

---

[3] Regarding the medical conditions of the witnesses at issue, Mr. Sperber is 87 years old and was diagnosed with bilateral asbestos-related pleural disease. (08-89845 Doc 182 Ex. 1). Mr. Doyle is 79 years old and was diagnosed with bilateral asbestosis and bilateral asbestos-related pleural disease. (08-89845 Doc. 185 Ex. 1). Mr. Jawor is 73 years old and was diagnosed with hypertension, neck, back and sciatic problems, a history of benign testicular
(continued...)

medical evidence in each case, of which all except one are at least twelve years old.[4]

We also conclude that Borda is not controlling here for two important reasons. First, unlike Borda, the cases before us are not stayed and the parties had the benefit of the entire discovery period, which is now closed. CVLO could have, but failed, to depose the co-workers any time during that period. Second, unlike Borda, the trials in these cases do not belong to "an undeterminable future." Instead, in each of these cases, defendants have filed summary judgment and Judge Robreno has set dates for final pre-remand hearings.[5] After these conferences and the pending motions are disposed of, the cases will be remanded for trial. Thus, there is a finite period of time before the cases are tried.

---

[3](...continued) mass, rheumatoid arthritis and asbestos-related pleural disease. (08-89845 Doc. 189 Ex. 1). Mr. King is 70 years old and was diagnosed with bilateral asbestos-related pleural disease. (Doc. 10-61349 Doc. 104 Ex.1 ). Mr. Wolter is 82 years old and was diagnosed with asbestos-related parenchymal and pleural lung disease. (10-67443 Doc. 290 Ex. 1). Mr. Kloss is 73 years old and was diagnosed with bilateral asbestosis. (08-91090 Doc. 180, Ex. 1) Finally, CVLO makes no reference to the health conditions of Mr. Kiser who is 95 years old or Mr. Krueger who is 73 years old. (08-90465 Doc. 136; 09-60550 Doc. 167).

[4] We acknowledge that we granted a similar motion to perpetuate on November 20, 2012 in Collins (10-64567 Doc. 150). As with these motions, we were not being asked to make a determination regarding whether the witness was properly disclosed. In fact, we specifically held that we would not make such a ruling. (Id.). We based our decision on the witness' age and health problems as well as the importance of his testimony. In support of the motion in Collins, CVLO filed over 200 pages of medical records establishing the witness' serious medical conditions, some of which were only nine months old. Both the breadth as well as the freshness of the medical evidence advanced in these cases pales in comparison. In Collins, we also did not seek additional clarification regarding how the witness was disclosed, which, given the number of motions currently at issue and the issues of prejudice, we now find highly relevant.

[5] In Frankenberger 09-61717, Judge Robreno held a final pre-remand hearing, including all oral arguments on opposed summary judgment motions, on December 11, 2012. In Doyle 08-89845, Judge Robreno will hold the pre-remand hearings on March 11, 2013. In Ruesken 09-61820, Sharpe 08-90465, Holme 08-91090, Peitrzycki 10-61349, and Bonnie Junk 09-60550, Judge Robreno will hold the pre-remand hearings on April 23, 2013. In Ahnert 10-67443, and William Junk 10-67841, Judge Robreno will hold the pre-remand hearing on June 3, 2013.

Finally, we find it relevant to discuss the procedural posture of the motions themselves. After we granted the motion to perpetuate in <u>Collins</u>, CVLO filed fourteen additional motions to perpetuate, including these. What once appeared to be a singular event to preserve testimony now appears to be something quite different. We appreciate defendants concern that these may in fact be an orchestrated attempt by CVLO to procure evidence which it failed to gather during the course of discovery. We will not re-open discovery so that these witnesses may be deposed out of time where CVLO has not provided sufficient good cause to do so and defendants have not had an opportunity to conduct discovery on them. See <u>Ferguson</u>, 2012 WL 5839023, at *5 (where we held that "[t]he development of plaintiffs' factual and causal support for their cases should certainly be fully developed by the end of discovery"). Indeed, CVLO has presented no reason why they did not depose these important witnesses during the discovery period, nor do they explain why the urgency that allegedly exists now did not exist just a few months before the motions were filed. The fact that these motions concern nine MDL cases instead of one standard case is also significant as a granting of the motions would likely necessitate a re-opening of discovery. We have previously discussed the important differences and unique challenges MDL cases create as well as the ramifications of decisions entered in one MDL case to the other cases. <u>Id.</u> at *1-2. That discussion is applicable here.

For all of the above reasons, we deny plaintiffs' motions to perpetuate.

BY THE COURT:


  /s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
United States Magistrate Judge

## CASE LIST

<u>Ahnert</u>        10-67443 Doc. 290