**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | **MULTI-DISTRICT LITIGATION** |
| **ASBESTOS PRODUCTS** | ) | |
| **LIABILITY LITIGATION** | ) | **NO. MDL 875** |

---

| | | |
|---|---|---|
| **BEVERLY AHNERT, Individually and on** | ) | |
| **behalf of the Estate of DANIEL AHNERT,** | ) | **Case No.:  10-CV-67443** |
| **deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Transferor District Court** |
| | ) | **Eastern District of Wisconsin** |
| **vs.** | ) | **Case No. 10-00156** |
| | ) | |
| **CBS CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**PABST BREWING COMPANY'S COMBINED SECOND MOTION FOR SUMMARY**
**JUDGMENT, MOTION TO STRIKE ROBERT WOLTER'S DECLARATION AND**
**MOTION TO BAR ROBERT WOLTER'S TESTIMONY**

---

Comes now Defendant, Pabst Brewing Company ("Pabst"), by and through its counsel HEPLERBROOM LLC, and moves this Court for an Order granting summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56, for an Order Striking Robert Wolter's Declaration and Barring Robert Wolter's Testimony and in support thereof, states as follows:

1.    Plaintiff filed this action in the United States District Court for the Eastern District of Wisconsin, alleging diversity jurisdiction and an amount in controversy in excess of seventy-five thousand dollars, exclusive of interest and costs.  (*See* Plaintiff's Complaint, attached as *Exhibit A* at ¶¶ 1-24).

2.    This case was subsequently transferred to this Court pursuant to a "tag-along" action in the MDL 875, and placed on the "CVLO 3" scheduling order.

3.      Pursuant to Federal Rule of Civil Procedure 56 (c), summary judgment must be granted if there is no issue of material fact and the moving party is entitled to judgment as a matter of law.

4.      Wisconsin substantive law must be applied in this case.  *See, e.g., Land v. Yamaha Motor Corp*., 272 F.3d 514, 516 (7th Cir. 2001)

5.      Under Wisconsin law, causation of injury is an essential element that Plaintiff must prove.  *Bittner v. Am. Honda Motor Co., Inc.,* 194 Wis. 2d 122, 148 (Wis. 1995).  A "mere possibility" of causation is not enough.  *Merco Distributing Corp. v. Comm'l Police Alarm Co*., 84 Wis.2d 455, 460 (Wis. 1978).  Rather, "when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct verdict for the defendant."  *Id*. (quoting Prosser, Law of Torts 241 (4th Ed. 1971)).  Summary judgment dismissing Plaintiff's strict liability and negligence claims is appropriate when the Plaintiff cannot prove causation by a specific manufacturer or distributor.  *Rogers v. AAA Wire Products*, 182 Wis.2d 263, 268 (Ct. App. 1994).

6.      Plaintiff has produced no evidence that Mr. Ahnert worked with or around asbestos-containing products at a premises owned, operated, or controlled by Pabst.  Therefore Plaintiff fails to establish the causation element of her claims against Pabst.

7.      Plaintiff provided evidence of only one six week period where Daniel Ahnert may have worked for an independent contractor at a premises owned, operated, or controlled by Pabst; however, Pabst, as the premises owner, is not responsible for

the actions undertaken by Mr. Ahnert's employer at its facility.  Plaintiff also fails to show how Mr. Ahnert's presence at that site exposed him to asbestos.

8.     Plaintiff has failed to provide any specific connection between Mr. Ahnert and exposure to free, respirable asbestos fibers while he was present at a premises owned, operated, or controlled by Pabst.  Therefore, there is no dispute of fact that Pabst was not a cause or a substantial contributing factor in the development of Mr. Ahnert's alleged asbestos-related disease and death.

9.     On November 16, 2012, pursuant to Motions to Strike filed by Owens-Illinois and Pabst, this Court struck "Plaintiff's First Response to Standard Interrogatories," "Plaintiff's Response to Standard Interrogatories 3/22/2012," and "Supplemented Plaintiffs First Response to Standard Interrogatories" finding that they were all "fatally flawed in that they are unverified."

10.    Plaintiff's Response to Pabst's First Motion for Summary Judgment (which was denied without prejudice) was filed on December 10, 2012.  In this response, Plaintiff disclosed, for the first time and **five months after** fact discovery had originally closed, that Robert Wolter was expected to be a fact witness in this case and included a "Declaration of Robert Wolter," as purported evidence against Pabst's Summary Judgment motion.

11.    Prior to this Court's September 17, 2013 Renewed Scheduling Order, Mr. Wolter's testimony had been prohibited in this case.  Judge Strawbridge noted that Plaintiff had over nine (9) months to conduct discovery including taking depositions of witnesses.  According to Judge Strawbridge "the defendants have

made a reasonable showing that the witnesses were not properly disclosed during the discovery period."

12.     Pabst attaches hereto and incorporates by reference its Memorandum in Support of its Combined Motion for Summary Judgment and for an Order Striking Robert Wolter's Declaration and Barring Robert Wolter's Testimony.

WHEREFORE, Defendant, Pabst Brewing Company, respectfully requests this Court enter an Order granting Summary Judgment in its favor for an Order Striking Robert Wolter's Declaration and Barring Robert Wolter's Testimony and for such further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

HeplerBroom LLC


By: /s/Michael T. Antikainen
Michael T. Antikainen
Attorney for Defendant Pabst Brewing Company
HEPLERBROOM LLC
30 N. LaSalle Street, Suite 2900
Chicago, Illinois 60602
Facsimile:  (312) 230-9201
E-mail: mantikainen@heplerbroom.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | **MULTI-DISTRICT LITIGATION** |
| **ASBESTOS PRODUCTS** | ) | |
| **LIABILITY LITIGATION** | ) | **NO. MDL 875** |

_____

| | | |
|---|---|---|
| **BEVERLY AHNERT, Individually and on** | ) | |
| **behalf of the Estate of DANIEL AHNERT,** | ) | **Case No.:  10-CV-67443** |
| **deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Transferor District Court** |
| | ) | **Eastern District of Wisconsin** |
| **vs.** | ) | **Case No. 10-00156** |
| | ) | |
| **CBS CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**PABST BREWING COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**COMBINED MOTION FOR SUMMARY JUDGMENT, MOTION TO STRIKE**
**ROBERT WOLTER'S DECLARATION AND MOTION TO BAR ROBERT WOLTER'S**
**TESTIMONY**

_____

Pabst Brewing Company ("Pabst"), by its attorneys, HEPLERBROOM, LLC, respectfully submits the following Brief in support of its Combined Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. and Motion for an Order Striking Robert Wolter's Declaration and Barring Robert Wolter's Testimony and in support thereof, states as follows

## INTRODUCTION

Plaintiff, Beverly Ahnert, ("Plaintiff") has sued Pabst, alleging that products on a premises owned, operated, or controlled by Pabst contained asbestos, gave off dust, and caused Daniel Ahnert ("Decedent") to contract an asbestos-related disease.  As set forth below, Plaintiff's claims against Pabst are not colorable under Wisconsin law. There is no evidence indicating that Decedent was exposed to asbestos from any products on a premises owned,

operated, or controlled by Pabst.  Therefore, there is no question of fact as to whether Decedent inhaled asbestos-containing dust from products on a premises owned, operated, or controlled by Pabst so as to cause injury.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff alleges in her Complaint, filed on February 25, 2010, that when Decedent worked at certain premises "the condition of airborne dust containing asbestos insulation fibers released during the process of applying and removing thermal insulation existed at the premises." Plaintiff further alleges that "as a direct and proximate result of Defendant's negligence plaintiff" was diagnosed with asbestosis.

Decedent was never deposed in this case.  Fact discovery closed in this case on July 13, 2012. (*See* April 11, 2012 Order, attached hereto as *Exhibit B*).   Plaintiff never provided any initial disclosures under Rule 26(a)(1), nor did she serve any complete, properly verified answers to the Court-ordered standard interrogatories.  Plaintiff also failed to serve complete, properly verified responses to Pabst's premises specific discovery.   Thus, Plaintiff had at least three separate opportunities and obligations to identify her evidence against Pabst, and failed to do so.

Prior to the filing of Pabst's  first Motion for Summary Judgment on October 8, 2012 (in accordance with the CVLO-3 Scheduling Order), none of the eight co-worker, site, or fact witnesses deposed in this matter offered any testimony that they worked with Decedent at a premises owned, operated, or controlled by Pabst.  (*See* Deposition Notices of Eugene Baumann, George Dengel, Ronald Michels, Michael Ligocki, Gerald Gall, Lawrence Zimmer, attached as *Exhibits C*).  Although depositions of Ralph Van Beck and Jack Wetzel were noticed in this case and Pabst was noticed as a Defendant about which testimony was expected, neither witness knew Decedent.

On November 16, 2012, pursuant to Motions to Strike filed by Owens-Illinois and Pabst, this Court struck "Plaintiff's First Response to Standard Interrogatories," "Plaintiff's Response to Standard Interrogatories 3/22/2012," and "Supplemented Plaintiffs First Response to Standard Interrogatories" finding that they were all "fatally flawed in that they are unverified." (*See* November 16, 2012 Memorandum and Order, attached hereto as *Exhibit D* at 22). Further, according to the Court, "[i]ncluded with 'Plaintiff's Second Supplementation to Standard Interrogatories – 6/29/12' is a verification from Plaintiff dated March 23, 2011 (from his previously dismissed state court action). However, the verification references only three specific sets of interrogatory answers dated March 11, 2011. Therefore this verification does not apply to this June 29, 2012 set of interrogatory responses and we consider the responses unverified." (*Id.)* The Court went on stating that "as we set out in Section I.E. and in our Unzicker decision, interrogatory responses that have not been verified by plaintiff, regardless of the source of knowledge, must be struck." (*Id.*).

Plaintiff's Response to Pabst's first Motion for Summary Judgment was filed on December 10, 2012. In this response, Plaintiff disclosed, for the first time and **five months after** fact discovery had originally closed, that Robert Wolter was expected to be a fact witness in this case and included a "Declaration of Robert Wolter," as purported evidence against Pabst's Summary Judgment motion. Pabst's Reply in Support of its first Motion for Summary Judgment highlighted that Mr. Wolter was never properly disclosed in this case and asked that this Court not consider his Declaration in ruling on its Motion for Summary Judgment.

On September 17, 2013, this Court ordered Plaintiff to respond to Court-ordered discovery requests by October 1, 2013. The Court further ordered that Plaintiffs only identify witnesses (both fact and expert witnesses) – or other evidence – identified in opposition to the

motions for summary judgment previously filed by Defendants in the action. (*See* September 17, 2013 Order, attached as *Exhibit E)*.  Unfortunately, the September 17, 2013 Order provided no guidance as to whether witnesses identified in opposition to the motions for summary judgment previously filed by Defendants **that had not been previously properly disclosed** would now be considered properly disclosed by operation of that Order.  Mr. Wolter was deposed on October 25, 2013 and testified that he recalled decedent working at Pabst for approximately six weeks in 1959.  Mr. Wolter admitted that he did not work side by side with Decedent at Pabst and that he never saw Decedent work around somebody else working with insulation.  (*See* Robert Wolter deposition transcript, attached as *Exhibit F*, at 66: 17-19; 68: 10-13).

Prior to the September 17, 2013 Order, Mr. Wolter's testimony had been prohibited in this case.  In his ruling on Plaintiff's Motion to Perpetuate Mr. Wolter's testimony, Judge Strawbridge noted that Plaintiff had over nine (9) months to conduct discovery including taking depositions of witnesses.  (*See* March 8, 2013 Explanation and Order, attached hereto as *Exhibit G* at 4).  Further, while he declined to make a ruling on the ultimate admissibility of Mr. Wolter's testimony at trial, "as part of the balancing (of equities) exercise, we found it necessary to inquire of plaintiffs how these witnesses were disclosed during discovery and to consider the question of whether the trial judge will strike them as improperly disclosed."  (*Id.)*.  The Plaintiffs were ordered to file a statement identifying how Mr. Wolter was disclosed.  According to Judge Strawbridge "we have considered the plaintiffs' response to our order, and have concluded that the witness disclosures in the interrogatory responses were deficient for either lack of proper verifications or lack of specificity required to put a particular defendant upon notice that a particular plaintiff would establish the necessary connection between that plaintiff and a specific product.  The defendants have made a reasonable showing that the witnesses were

not properly disclosed during the discovery period." (*Id.* at 5). In consideration of the findings made by Judge Strawbridge, Mr. Wolter's declaration and his October 25, 2013 testimony should be stricken and Plaintiff barred from relying on it as evidence at trial or in response to this motion for Summary Judgment.

**ARGUMENT**

## I.    SUMMARY JUDGMENT STANDARD

Rule 56(a) provides that a motion for summary judgment should be granted if a party "show[s] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first identify "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once such a deficiency has been identified, however, the plaintiff must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Id.,* at 323-24. *See also, Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 322 n.2 (3d Cir. 2005); *Hogston v. Allis-Chalmers Corp.*, 672 F.Supp.2d 705, 708 (E.D. Pa. 2009). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to create a genuine issue to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Put another way, a "mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (*quoting Seago v. North Carolina Theatres*, 42 F.R.D. 627, 632 (E.D.N.C. 1966)*, aff'd,* 388 F.2d 987 (4th Cir. 1967)). *See also, Anderson*, 477 U.S. at 252. Moreover, "genuine issues of material fact cannot be based

on mere speculation." *Barwick*, 736 F.2d at 963.  *See also Lexington Ins. Co.*, 423 F.3d at 332-

33.

## II.      WISCONSIN PREMISES LIABILITY LAW

Plaintiff's case was originally filed in the United States District Court for the Eastern

District of Wisconsin.  Plaintiff alleges that "jurisdiction is based on diversity of citizenship of

the parties hereto under Title 28, United States Code, § 1332."  (*See Exhibit A,* p. 3, ¶ 3).  For

cases based on diversity of citizenship, "except in matters governed by the Federal Constitution

or by acts of Congress, the law to be applied in any case is the law of the state."  *Erie R. Co. v.

Tompkins,* 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938).  Therefore, Plaintiff's claims are governed

by Wisconsin law.

### A.  Liability of a Principal Employer

It appears that Plaintiff's Complaint attempts to allege claims against Pabst under

common law negligence and Wisconsin's Safe Place Statute.  Under common law negligence,

the general rule in Wisconsin is that a principal employer is not liable in tort for injury sustained

by an independent contractor's employee.  *Tatera v. FMC Corp.,* 328 Wis.2d 320, 326; 786

N.W.2d 810, 813 (2010).  However, there are two exceptions to the rule of non-liability.  First,

an independent contractor's employee may recover for injuries caused by a principal employer's

affirmative act of negligence.  *Barth v. Downey Co.,* 71 Wis.2d 775, 783, 239 N.W.2d 92 (1976)

(stating that [i]n a third-party action against a general contractor brought by an employee of a

subcontractor, there would need to be 'something extra,' an affirmative act of negligence that

increased the risk of injury.").  Second, a principal employer may be liable for injuries sustained

by an independent contractor's employee while he or she is engage in an "extrahazardous

activity." *Wagner v. Continental Casualty Co.,* 143 Wis.2d 379, 400-401; 421 N.W.2d 835 (1988).

Should the Court allow Plaintiff to rely on Mr. Wolter's declaration and October 25, 2013 testimony, despite Pabst's request that the evidence be stricken, Mr. Wolter's testimony establishes that Decedent was an employee of an independent contractor. (*See* Robert Wolter's deposition transcript attached hereto as *Exhibit F* at 66: 9-13).

### 1.  Pabst did not Commit an Affirmative Act of Negligence

"Active misconduct," rather than "passive inaction," is required to trigger the first exception to the rule of non-liability.  *See Danks v. Stock Bldg. Supply, Inc.,* 298 Wis.2d 348, 727 N.W.2d 846.  "Active misconduct" is conduct that "creat[es] a new risk of harm to the plaintiff."  *See Id.*  As a matter of law, failure to warn does not involve an affirmative act of negligence:

> By definition, the negligent failure to warn, failure to investigate or test and failure to instruct are omissions, not affirmative acts of negligence.  Moreover, the act of supplying asbestos-containing friction disks does not itself constitute an affirmative act of negligence because liability for such an act is necessarily premised in failing to warn, an omission.

*Tatera,* 328 Wis.2d 327.  The relevant inquiry is whether the alleged negligent act "was an act of commission constituting an affirmative act of negligence or whether it was an act of omission which does not rise to the level of an affirmative act."  *Id.* at 342-343.  Plaintiff's allegations against Pabst are:

A.  Failing to adequately warn plaintiff of the dangers of harm from exposure to asbestos;
B.  Failing to instruct plaintiff adequately about safety precautions for exposure to asbestos;
C.  Failing to establish adequate safety measures to protect plaintiff from exposure to asbestos;
D.  Failing to adequately test for asbestos where the plaintiff worked;

E.  Employing any contactor which failed to take reasonable precautions against the danger of asbestos;
F.  Allowing the use of asbestos containing products at the premises;
G.  Failing to assign or hire personnel qualified to recognize, evaluate and control asbestos exposures at the premises.

Each allegation containing an omission as the basis for liability is, as a matter of law, insufficient to establish liability. *Tatera,* at 342-343. Therefore, subparagraphs A through D and G, are all examples of passive inaction that do not constitute affirmative acts of negligence. *See, e.g., Strasser,* 236 Wis.2d 435, 613 N.W.2d 142 (describing failure to warn); *Danks,* 2007 WI App 8, ¶25 (discussing failure to instruct and train); *Estate of Thompson v. Jump River Elec. Co-op.,* 225 Wis.2d 588, 596, 593 N.W.2d 901 (Wis.Ct.App. 1999) (discussing failure to establish adequate safety measures); *Haase v. Badger Mining Corp.,* 266 Wis.2d 970, 669 N.W.2d 737 (describing failure to warn of dangers generally known in a profession); *Wagner,* 143 Wis.2d at 390 (discussing failure to assign or hire qualified personnel).

Further, allowing the use of an inherently dangerous product, as alleged in subparagraph F, is not tantamount to an affirmative act of negligence. In *Tatera,* the defendants "allowed" the use of asbestos-containing disks by supplying them to the plaintiff to be machined. *Tatera,* 328 Wis.2d 347. The *Tatera* court acknowledged that "supplying" the disks was "no doubt 'affirmative.'" *Id.* However, the court held that the "mere" affirmative act of supplying asbestos products for use, let alone "allowing" the products to be used, did "not constitute an affirmative act of negligence." *Id.* "Supplying a dangerous chattel does not alone give rise to negligence." *Id.*

There is no evidence in this case that Pabst supplied any asbestos-containing materials to Decedent as was the case in *Tatera.* There is no evidence that Pabst ever instructed Decedent on what types of product to use at its facilities, what type of work to do at its facilities, ever

8

provided his tools, told him what products to apply or remove, or the manner in which he was to conduct his work.  In fact, Mr. Wolter's testimony establishes that Pabst did not supply any materials to, provide any tools for, pay Decedent for, or supervise Decedent's work.  (*See Exhibit F* at 72: 16 – 73: 4).  Therefore, Pabst cannot be held liable for Decedent's injuries under a common law negligence theory.

### 2.  Decedent's Work at Pabst does not Qualify as an "Extrahazardous" Activity

The second exception to the rule of non-liability of a principal employer is when an activity is "abnormally dangerous."  An abnormally dangerous, or "extrahazardous," activity is one "in which the risk of harm remains unreasonably high no matter how carefully it is undertaken."  *Estate of Thompson,* 225 Wis.2d at 596.  Merely because an activity is inherently dangerous does not mean that it is also abnormally dangerous.  *Id.*  In order for an activity to be taken out of the realm of extrahazardous, special precautions must be available that minimize the risk; however, "the risk of injury need not be eliminated, just minimized."  *Id.*

As the Wisconsin Supreme Court recently held, working with asbestos-containing materials is not an abnormally dangerous activity.  *Tatera,* 328 Wis.2d at 351.  While it may be considered inherently dangerous, working with asbestos insulation "is not extrahazardous because the risk of injury can be minimized by wearing protective equipment and taking proper precautions.  *Id.*  The "abnormally dangerous" exception to non-liability does not apply, and Pabst, as a principal employer, is not liable to Decedent for his injuries under a common law negligence theory.

### B.  Pabst is not Liable to Plaintiff under Wisconsin's Safe Place Statute

Wisconsin's Safe Place Statute is a negligence statute which imposes a higher duty than common law ordinary care on employers and owners of places of employment and public

buildings.  *Wis. Stat.* §101.11.  There is no separate cause of action; rather an alleged violation of the Safe Place Statute is another allegation of the defendant's negligence.  *See Theil v. Bahr Const. Co.,* 13 Wis.2d 196, 198, 108 N.W.2d 573 (1961).

The statute requires employers and owners of public buildings to construct, repair, and maintain a safe place of employment or public building.  *See, Wis. Stat.* §101.11.  "Safe" means "such freedom from danger to life, health, safety or welfare of employees or frequenters, or the public . . . as the nature of the employment, place of employment, or public building will reasonably permit."  *Wis. Stat.* §101.11(13); *Mair v. Trollhaugen Ski Resort,* 291 Wis.2d 132, 715 N.W.2d 598.  The statute, however, does not make the employer or owner an insurer of persons on the owner's property and does not impose a duty that can be breached simply because the premises could be safer.  *Hofflander v. St. Catherine's Hospital, Inc.,* 262 Wis.2d 539, 664 N.W.2d 545.

Under the Safe Place Statute, owners of places of employment are liable for: (1) structural defects and (2) unsafe conditions associated with the structure.  *Barry v. Employers Mutual Ins. Co.,* 245 Wis.2d 560, 570 (2001).  The statute does not apply to unsafe activities conducted on the premises.  *Barth v. Downey Co.,* 71 Wis.2d 775, 779 (1976); *Stefanovich v. Iowa Nat'l Mut. Ins., Co.,* 86 Wis.2d 161, 166 (1978).  Wisconsin's Supreme Court has interpreted the Safe Place Statute to apply only to structural defects and unsafe conditions associated with the structure in binding precedential opinions.

The question of whether a property owner has a duty owed to plaintiff and what the scope of the duty is a question of law.  *Kaltenbrun v. Port Washington,* 156 Wis.2d 634, 640 (Wis. Ct. App. 1990).  The Wisconsin Supreme Court has made it clear that where a frequenter alleges that activities occurring on the premises caused the injuries alleged in the complaint, the complaint

10

fails to state a claim for relief under the Safe Place Statute.  *Leitner v. Milwaukee County,* 94 Wis.2d 186, 193-195 (1980); *see also Konerak v. Curative Workshop Adult Rehab Center,* 72 Wis.2d 77, 84 (1976) (finding the Safe Place Statute applies only to unsafe physical conditions of the premises and not to activities conducted on the premises).

In this case, the only allegations against Pabst arise from the work that Decedent and his co-workers did.  There is no allegation that an unsafe condition associated with the facility structure was the cause of Decedent's injuries.  Neither Mr. Wolter's Declaration nor his deposition testimony implicates any structural defect or unsafe condition associated with the structure at Pabst in causing Decedent's injuries.  Likewise, neither Mr. Wolter's Declaration nor his deposition testimony contains any facts suggesting that Pabst failed to repair or maintain its premises to an extent that an unsafe physical condition would arise.

Further, the Safe Place claims against Pabst cannot be maintained because there is no evidence that Pabst supervised or controlled Decedent's work.  In order to have a duty under the statute, a building owner must have the right of supervision and control.  *Hortman v. Becker Constr. Co., Inc.,* 92 Wis.2d 210, 226 (1979).  Mr. Wolter's Declaration is silent as to Pabst's role in the work that he and Decedent did on the premises.  Mr. Wolter's testimony not only establishes that Decedent worked for a contractor, but also that Pabst did not supply any materials to, provide any tools for, pay, or supervise Decedent's work.  (*See Exhibit F* at 72: 16 – 73: 4).  While Plaintiff argues that *Hortman* is distinguishable because it involved the question of whether an independent contractor had sufficient control of a jobsite, *Hortman* itself establishes that "the requirement that a person have control is the same for employers as for owners." *Hortman,* 92 Wis.2d at 227.  Neither Mr. Wolter's Declaration, nor his deposition testimony,

establishes that Pabst asserted any control over the work done by Wolter, Decedent, or any other

independent contractor on the premises.

### C. Plaintiff's Cause of Action Cannot Be Maintained Against Pabst due to Wisconsin's Statute of Repose

Wisconsin's Statute of Repose bars claims of a plaintiff that relate to improvements to

real property after ten years.  *Wis. Stat*. §893.89.  The statute provides in part:

> (1) In this section, "exposure" means the 10 years immediately following the date of substantial completion of the improvement to real property.

> (2) . . . no cause of action may accrue and no action may be commenced against *the owner or occupier of the property or against any person involved in the improvement to real property* after the end of the exposure period, to recover damages for any injury to property . . . .  This subsection does not affect the rights of any person injured as a result of any defect in material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.

*Wis. Stat*. §893.89 (emphasis added).  The court must apply the definition of "improvement to

real property" to determine if the part in question fits – "[A] permanent addition to or betterment

of real property that enhances its capital value and that involves the expenditure of labor or

money and is designed to make the property more useful or valuable as distinguished from

ordinary repairs."  *Kohn v. Darlington Community Schools, EMC,* 283 Wis.2d 1, 698 N.W.2d

794 (citing *Kallas Millwork Corp. v. Square D Co.,* 66 Wis. 2d 382, 386, 225 N.W.2d 454

(1975)).

Wisconsin's Supreme Court scrutinized the betterment of property requirement of the

Statute of Repose to determine whether its 10-year bar to claims applies in a personal injury

case.  In *Kohn v. Darlington Community Schools, EMC,* a four year-old child was injured after

falling fifteen feet through bleachers during a sporting event at the Darlington High School.

*Kohn,* 283 Wis.2d 1 (2005).  A lawsuit was filed against the school district and the manufacturer

of the bleachers and the bleacher manufacturer moved for summary judgment on the grounds that *Wis. Stat.* §893.89 barred the plaintiff's claims. *Id.* at 10-12. The trial court granted summary judgment and the Wisconsin Supreme Court upheld the trial court's dismissal of claims based on the statute of repose. *Id.*

In order for the statute to apply, a court must find that the improvement to real property involved a permanent addition or betterment of real property that enhances its capital value and involved the expenditure of labor or money and is designed to make the property more useful or valuable instead of ordinary repairs. *Id.* at 16. Additionally, the injuries sustained must have occurred within 10 years of the completion of the alleged defect. *Id.* at 46.

In *Kallas,* the court concluded that "a high-pressure water pipe designed for fire protection, as a matter of law, was an 'improvement to real property' . . . ." *Kallas,* 66 Wis.2d at 382. In this case, according to Mr. Wolter's deposition testimony, brewing tanks were being added to the Pabst premises and new pipe was being put in. (*See Exhibit F* at 21: 21-23; 65: 23-25). Mr. Wolter did not provide any testimony that any repair or maintenance work was taking place at Pabst while Decedent was present.

The Statute of Repose expressly applies to "any person involved in the improvement to real property for any injury to the person, or for wrongful death arising out of any deficiency or defect in the design . . . or furnishing of materials for the improvement to real property." *Wis. Stat.* §893.89(1). Therefore, Pabst is entitled to the protections provided by the Statute of Repose in this case.

Plaintiff's Complaint alleges that Decedent was exposed to asbestos in his work until 1980. Mr. Wolter's testimony establishes that he worked with Decedent at Pabst in 1959. (*See Exhibit F* at 76: 7-17). By operation of the Statute of Repose, at the very latest, Plaintiff's

13

Complaint should have been filed in or before 1990.  Plaintiff's Complaint was not filed until February 25, 2010.  As such, Plaintiff's claims are barred.

Although there are four exceptions to the Statute of Repose, none of them apply.  The exceptions are:

1.  Where a person who commits fraud, concealment, or misrepresentation related to a deficiency or defect in the improvement to real property;

2.  Where a person who expressly warrants or guarantees the improvement to real property, for the period of that warranty or guaranty;

3.  Where an owner or occupier of real property for damages resulting from the negligence in the maintenance, operation or inspection of an improvement to real property; and

4.  Where damages were sustained before April 29, 1994.

Wis. Stat. §893.89(4).  No allegations have been made that Pabst acted with fraud, concealment, or misrepresentation related to any defect work performed at a Pabst site.  There are no allegations against Pabst stating that it breached any expressed warranty or guaranty of improvement to real property.  There are no allegations that Pabst was negligent in the maintenance, operation or inspection of improvements to real property.

Likewise, there is no evidence that plaintiff's damages were sustained prior to 1994.  In *Alsteen v. Wauleco, Inc.,* the Court of Appeals dismissed a case filed on behalf of 69 individuals allegedly exposed to carcinogenic chemicals, because "a plaintiff does not have a personal injury claim until he or she has suffered 'actual' injury or damage."  *Alsteen v. Wauleco, Inc.,* 335 Wis.2d 473, 476 (Wis. Ct. App. 2011).  Wisconsin law does not recognize an injury or damage as "actual" until a plaintiff suffers present health problems" associated with exposure.  *Id.* at 484.

14

Plaintiff asserts that Decedent was diagnosed with asbestosis within three years of filing his complaint, but tries to assert that his injury accrued before 1994.  Pursuant to Wisconsin Law, Decedent did not suffer "actual" injury or damage until his diagnosis.

### III. Pabst is Entitled to Summary Judgment No Expert has a Specific Causation Opinion as to Pabst

A plaintiff must show that defendant's conduct "must have been 'a substantial factor in producing the injury.'"  *Dion v. Anchor Packing Co.,* 2011 WL 6926701 (E.D.Pa 2001) (citing to *Horak v. Building Servs. Indus. Sales Co.,* 309 Wis.2d 188, 750 N.W.2d 512 (Wis. Ct. App. 2008)).  Therefore a plaintiff must produce evidence to satisfy the "causal identification requirement," showing what specific product caused his injury.  *Rogers v. AAA Wire Prods., Inc.,* 182 Wis.2d 263, 270-273, 750 N.W.2d 643, 645-646 (Wis. Ct. App. 1994) (affirming summary judgment without identification of a specific manufacturer's or distributor's product).  This burden demands actual evidence and cannot rely on a series of inferences.  *Singer v. Pneumo Abex, LLC,* 339 Wis.2d 490, 809 N.W.2d 900 (Wis. Ct. App. 2012) (reversing and remanding with directions to grant motion for summary judgment where Plaintiff's counsel argued asbestos-containing brake shoes were present at worksite).

None of Plaintiff's disclosed experts, however, has opined that Decedent was exposed to asbestos from any products on a premises owned, operated, or controlled by Pabst.  Nor has any of Plaintiff's disclosed experts opined that any such exposure was a substantial factor in causing Plaintiff's asbestos related disease.  Steven Haber's report is a case specific causation report that does not mention Pabst (*See,* ECF No. 178-1).  Neither Stephen Kenoyer and Kenneth Garza's case specific causation report or their generic report mentions Pabst (*See,* ECF No. 178-2 and ECF No. 178-3).  These experts are the only witnesses, other than Robert Wolter, that Plaintiff

disclosed against Pabst in response to this Court's September 17, 2013 Order.  (*See* Plaintiff's October 1, 2013 disclosure, attached hereto as *Exhibit H*).

To establish liability, a plaintiff must prove the products on a premises owned, operated, or controlled by Pabst was a cause in fact of Decedent's injury, and so "the lack of expert testimony on the question of causation results in an insufficiency of proof where the issue involves technical, scientific or medical matters which are beyond the common knowledge or experience of jurors and the jury could only speculate as to what inference to draw."  *Smith v. Sofamor, S.N.C.,* 21 F. Supp.2d 918, 921 (W.D. Wis. 1998) (quoting *Ollman v. Wisconsin Health Care Liab. Ins. Plan,* 178 Wis.2d 648, 667 (Wis. Ct. Ap. 1993));  *Cali v. Danek Med. Inc.,* 24 F. Supp. 2d 941, 950 (W.D. Wis. 1998) (quoting *Ollman v. Wisconsin Health Care Liab. Ins. Plan,* 178 Wis.2d 648, 667 (Wis. Ct. Ap. 1993)); *Solar v. Kawasaki Motor Corps, USA,* 221 F.Supp.2d 967, 971 (E.D. Wis. 2002) (quoting *Ollman v. Wisconsin Health Care Liab. Ins. Plan,* 178 Wis.2d 648, 667 (Wis. Ct. Ap. 1993)).  In this case, without any expert testimony drawing the causation between Decedent's alleged exposure at a premises owned, operated, or controlled by Pabst and his alleged asbestos related disease, Plaintiff's claims must fail as a matter of law.  *See Id.; Kujawski v. Arbor View Health Care Ctr.,* 407 N.W.2d 249, 252-253 (Wis. 1987).

### IV.    PABST IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM BECAUSE THERE IS NO EVIDENCE THAT PABST ENGAGED IN ANY MALICIOUS CONDUCT OR ACTED WITH INTENTIONAL DISREGARD TO DECEDENT'S RIGHTS

In the event that the Court does not declare summary judgment on behalf of Pabst, Pabst respectfully requests dismissal of the punitive damages claim.  Wisconsin's punitive damages statute provides that "[t]he plaintiff may receive punitive damage if evidence is submitted showing that the defendant acted maliciously or in an intentional disregard to the rights of the plaintiff."  *See Wis. Stat.* §895.043.  The Wisconsin Supreme Court has held that "a person acts

in an intentional disregard of the rights of the plaintiff if the person acts with a purpose to disregard the plaintiff's rights, or is aware that his or her acts are substantially certain to result in the plaintiff's rights being disregarded." *See Strenke v. Hogner,* 279 Wis.2d 52 (2005). According to the court:

> This will require that an act or course of conduct be deliberate. Additionally, the act or conduct must actually disregard the rights of the plaintiff, whether it be a right to safety, health or life, a property right, or some other right. Finally, the act or conduct must be sufficiently aggravated to warrant punishment by punitive damages.

*Id.* The Wisconsin Supreme Court also stated that "a result or consequence is intentional if the person acts with a purpose to cause the result or consequence or is aware that the result or consequence is substantially certain to occur from the person's conduct." *See Id.*

Importantly, there must be deliberate acts, an actual disregard of plaintiff's rights, and "an increased level of consciousness and deliberateness at which the defendant must disregard the plaintiff's rights in order to be subject to punitive damages." *See Id.* The Supreme Court maintained that circuit courts should act as "gatekeepers" and reject punitive damages in cases where the defendant's conduct is merely negligent. *See Id.*

Plaintiff in this case has failed to offer any such evidence of the requisite aggravated conduct to support a claim of punitive damages against Pabst. Plaintiff has made no proof of what Wisconsin law requires, an increased level of consciousness and deliberateness on Pabst's part to disregard the rights of Plaintiff. Accordingly, dismissal of the punitive damages claim is warranted in this case.

## V.    CONCLUSION

Based on the arguments and authorities above, Pabst Brewing Company respectfully requests an order striking the Declaration of Robert Wolter, Barring Plaintiff from relying on the

17

testimony of Robert Wolter for any purpose, and dismissing, with prejudice, Plaintiff's claims against Pabst Brewing Company, along with all cross claims, on the merits and granting it fees and costs, and awarding such further relief as this Court deems just and proper.

Dated: December 4, 2013                              Respectfully submitted,

                                                    HeplerBroom LLC


                                                    By: /s/Michael T. Antikainen_____
                                                    Michael T. Antikainen
                                                    Attorney for Defendant Pabst Brewing Company
                                                    HEPLERBROOM LLC
                                                    30 N. LaSalle Street, Suite 2900
                                                    Chicago, Illinois 60602
                                                    Facsimile:  (312) 230-9201
                                                    E-mail: mantikainen@heplerbroom.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | **MULTI-DISTRICT LITIGATION** |
| **ASBESTOS PRODUCTS** | ) | |
| **LIABILITY LITIGATION** | ) | **NO. MDL 875** |

| | | |
|---|---|---|
| **BEVERLY AHNERT, Individually and on** | ) | |
| **behalf of the Estate of DANIEL AHNERT,** | ) | **Case No.:  10-CV-67443** |
| **deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Transferor District Court** |
| | ) | **Eastern District of Wisconsin** |
| **vs.** | ) | **Case No. 10-00156** |
| | ) | |
| **CBS CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

TO:    Michael P. Cascino
       Cascino Vaughn Law Offices
       220 S. Ashland Avenue
       Chicago, IL 60607

CC:    All Counsel of Record

       The undersigned states that on the 4th day of December**,** 2013, Pabst Brewing Company filed its Combined Motion for Summary Judgment and for an Order Striking Robert Wolter's Declaration and Barring Robert Wolter's Testimony and Memorandum in Support in the above-styled cases.  True and correct copies of these documents were electronically served upon all counsel of record.

                                   HeplerBroom LLC

                                   By: /s/Michael T. Antikainen
                                   Michael T. Antikainen
                                   Attorney for Defendant Pabst Brewing Company
                                   HEPLERBROOM LLC
                                   30 N. LaSalle Street, Suite 2900
                                   Chicago, Illinois 60602
                                   Facsimile:  (312) 230-9201
                                   E-mail: mantikainen@heplerbroom.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | **MULTI-DISTRICT LITIGATION** |
| **ASBESTOS PRODUCTS** | ) | |
| **LIABILITY LITIGATION** | ) | **NO. MDL 875** |

_____

| | | |
|---|---|---|
| **BEVERLY AHNERT, Individually and on** | ) | |
| **behalf of the Estate of DANIEL AHNERT,** | ) | **Case No.:  10-CV-67443** |
| **deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Transferor District Court** |
| | ) | **Eastern District of Wisconsin** |
| **vs.** | ) | **Case No. 10-00156** |
| | ) | |
| **CBS CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**PROPOSED ORDER**

_____

This cause comes on before the Court and the Court being fully advised in the premises;

IT IS HEREBY ORDERED that Pabst Brewing Company's Motion for Summary Judgment be granted.  Plaintiff's claims against Pabst Brewing Company, along with all cross claims are dismissed, with prejudice.

DATED: _____, 2013


_____
Judge


HEPLERBROOM LLC
Michael T. Antikainen
Attorneys for Defendant
30 N. LaSalle Street - Suite 2900
Chicago, IL 60602
Phone: (312) 230-9100
Fax:    (312) 230-9201